UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

HYPER ICE, INC. AND HYPERICE IP
SUBCO, LLC,

                Plaintiffs,

v.

NAMIRSA INC.,

                Defendant.

Action No.:

## <u>VERIFIED COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiffs HYPER ICE INC. and HYPERICE IP SUBCO, LLC ("Plaintiffs" or, collectively, "Hyperice"), by and through undersigned counsel, hereby sues Defendant NAMIRSA INC ("Defendant"). Within this district and throughout the State of Florida, via its website, Defendant is promoting, selling, offering for sale, and importing goods into the United States that infringe at least the following United States Patents owned by Hyperice: U.S. Patent Nos. 10,561,574; 10,912,708; D886,317; D855,822; 11,857,482; 11,938,082; and 12,133,826. Hyperice alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for patent infringement under 35 U.S.C. §§ 271 *et seq.* brought by Hyperice against Defendant for making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Hyperice's U.S. Patent Nos. 10,561,574 ("the '574 Patent"); 10,912,708 ("the '708 Patent"); D886,317 ("the '317 Patent"); D855,822 ("the '822 Patent"); 11,857,482 ("the '482 Patent");

11,938,082 ("the '082 Patent"); and 12,133,826 ("the '826 Patent") (collectively "the Hyperice Patents").

## JURISDICTION AND VENUE

2.    This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 28 U.S.C. § 1338(a).

3.    Defendant is subject to personal jurisdiction in this district because Defendant directs business activities toward and conducts business with customers through the United States, including within the State of Florida and this district, at its physical store and/or through its website accessible throughout the State of Florida.

4.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) because Defendant is a corporation organized and existing under the laws of the State of Florida with an established place of business in the District, namely its physical store, located at The Avenues Mall, 10300 Southside Blvd., Jacksonville, Florida 32256, and, as detailed below, Defendant has committed acts of infringement in the District.

## PLAINTIFF HYPERICE

5.    Plaintiff Hyperice is a California corporation with its principal place of business at 525 Technology Drive, Suite 100, Irvine, California 92618.

6.    Plaintiff Hyperice IP Subco, LLC is a limited liability company organized under the laws of the State of Delaware.

## HYPERICE PATENTS AND PRODUCTS

7.    The '574 Patent is entitled "Battery-Powered Percussive Massage Device" and issued on Feb. 18, 2020, from Application No. 16/656,348, filed on Oct. 17, 2019, claiming priority to

Application No. 15/902,542, filed on Feb. 22, 2018. A true and correct copy of the '574 Patent is attached hereto as Exhibit 1.

8.    The '708 Patent is entitled "Battery-Powered Percussive Massage Device" and issued on Feb. 9, 2021, from Application No. 16/931,860, filed on Jul. 17, 2020, claiming priority to Application No. 15/902,542, filed on Feb. 22, 2018. A true and correct copy of the '708 Patent is attached hereto as Exhibit 2.

9.    The '317 Patent is entitled "Percussive Massage Device" and issued on June 2, 2020, from Application No. 29/716,546, filed on Dec. 10, 2019, claiming priority to Application No. 29/637,855, filed on Feb. 22, 2018. A true and correct copy of the '317 Patent is attached hereto as Exhibit 3.

10.    The '822 Patent is entitled "Percussive Massage Device" and issued on Aug. 6, 2019, from Application No. 29/637,855, filed on Feb. 22, 2018. A true and correct copy of the '822 Patent is attached hereto as Exhibit 4.

11.    The '482 Patent is entitled "Massage Device Having Variable Stroke Length" and issued on January 2, 2024, claiming priority to Application No. 14/317,573, filed on June 27, 2014, and Provisional Application No. 61/841,693, filed on July 1, 2013. A true and correct copy of the '482 Patent is attached hereto as Exhibit 5.

12.    The '082 Patent is entitled "Massage Device Having Variable Stroke Length" and issued on March 26, 2024, claiming priority to Application No. 14/317,573, filed on June 27, 2014, and Provisional Application No. 61/841,693, filed on July 1, 2013. A true and correct copy of the '082 Patent is attached hereto as Exhibit 6.

13.    The '826 Patent is entitled "Massage Device Having Variable Stroke Length" and issued on November 5, 2024, claiming priority to Application No. 18,761,049, filed on July 1, 2014, and

Provisional Application No. 61/841,693, filed on July 1, 2013. A true and correct copy of the '826 Patent is attached hereto as Exhibit 7.

14.    Hyperice IP Subco, LLC, a wholly owned subsidiary of Hyperice, Inc., is the assignee and owner of the Hyperice Patents. Hyper Ice, Inc. is the exclusive licensee that has been granted the express, irrevocable right to, *inter alia*, sublicense, enforce, and defend the Hyperice Patents.

15.    This action arises out of Defendant's direct infringement of the Hyperice Patents.

16.    Since at least 2018, Hyperice has developed, arranged for the manufacture of, offered for sale, and sold the Hypervolt line of battery-powered percussive massage devices, including the Hypervolt, Hypervolt Pro, Hypervolt Go, Hypervolt Go 2, Hypervolt 2, and Hypervolt 2 Pro, all of which are covered by one or more claims of the Hyperice Patents.

17.    Since at least October of 2021, Plaintiff has properly provided constructive notice on its products covered by the Hyperice Patents by virtual patent marking though its website at https://hyperice.com/patents/.

18.    By no later than July 2, 2025, Defendant further personally knew of the Hyperice Patents, and knew, or acted with willful, intentional, and conscious disregard of the objectively high likelihood, that its conduct constitutes infringement of the Hyperice Patents.

19.    Defendant's infringement of the Hyperice Patents has caused, and will continue to cause, significant damage to Hyperice. Hyperice intends to seek damages of no less than $500,000 for Defendant's infringement of the Hyperice Patents.

**THE DEFENDANT**

20.    Defendant is a corporation organized and existing under the laws of the State of Florida.

21.    Defendant directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells products infringing one or more claims of the Hyperice Patents

at its physical store, located at The Avenues Mall, 10300 Southside Blvd., Jacksonville, Florida 32256, through its e-commerce website at https://www.namirsawellness.com/, and via its Instagram account at https://www.instagram.com/namirsawellness/, accessible in this district and throughout the State of Florida.

## COUNT I
## PATENT INFRINGEMENT (35 U.S.C. § 271)

22.    Hyperice incorporates by this reference the allegations contained in the preceding paragraphs 1-21 as if fully set forth herein.

23.    Defendant has infringed and continue to infringe the '574 Patent under the Patent Laws of the United States, 35 U.S.C §§ 271 *et seq*. literally and/or under the doctrine of equivalents by importing, distributing, marketing, offering for sale and/or selling the Namirsa Pro massage gun, a representative image of which is shown below:



24.    Defendant infringes at least Claim 1 of the '574 Patent. The infringing products literally meet the following claim limitations. If any of the limitations are not literally met, the infringing

products meet the limitations under the doctrine of equivalents, because they perform the same function in substantially the same way to achieve substantially the same result, and/or because the relevant structures and functions of the infringing products are insubstantially different from the claimed limitation:

A battery-powered percussive massage device comprising:

a main enclosure extending along a longitudinal axis, the main enclosure having a proximal end and a distal end, the main enclosure including a longitudinal cavity;

a motor having a rotatable shaft;

a reciprocation assembly coupled to the rotatable shaft, the reciprocation assembly including a piston, the reciprocation assembly configured to reciprocate the piston along a reciprocation axis in response to rotation of the rotatable shaft, the reciprocation assembly position within the longitudinal cavity of the main enclosure;

an applicator head having a proximal end removably attachable to the piston, and having a distal end that extends from the distal end of the main enclosure when the proximal end of the applicator is attached to the piston;

a battery assembly receiving enclosure extending from the main enclosure;

a battery assembly receiving tray within the longitudinal cavity of the main enclosure, the battery assembly receiving tray aligned with the battery receiving enclosure, the battery assembly receiving tray having an inner perimeter, the battery assembly receiving tray having at least a first electrical contact and a second electrical contact positioned within the inner perimeter; and

a battery assembly having a free end and a contact end, the contact end of the battery assembly having an outer perimeter, the contact end of the battery assembly having at least

a first electrical contact and a second electrical contact positioned on the outer perimeter to engage the first electrical contact and the second electrical contact respectively of the battery assembly receiving tray, the battery assembly having an outer gripping surface positioned between the contact end and the free end.

25.     Defendant's infringement of the '574 Patent has caused, and will continue to cause, significant damage to Hyperice. As a result, Hyperice is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to 35 U.S.C. §284. Hyperice is also entitled to recover prejudgment interest, post-judgment interest, and costs.

26.     As a result of Defendant's infringement of the '574 Patent, Hyperice has suffered irreparable harm and impairment of the value of its patent rights, and Hyperice will continue to suffer irreparable harm and impairment of the value of its patent rights, unless and until Defendant is permanently enjoined by this Court from infringing the '574 Patent under 35 U.S.C. §283. Hyperice has no adequate remedy at law and is entitled to a permanent injunction against Defendant.

27.     Defendant's infringement of the '574 Patent has been and continues to be willful. As noted above, Defendant has had knowledge of the '574 Patent and knew, or acted with willful, intentional, and conscious disregard of the objectively high likelihood, that its conduct constitutes infringement of the '574 Patent. Nevertheless, Defendant continues to infringe the '574 Patent— wanton, malicious, and egregious conduct that constitutes willful infringement under 35 U.S.C. §284, entitling Hyperice to enhanced damages.

## COUNT II
## PATENT INFRINGEMENT (35 U.S.C. § 271)

28.     Hyperice incorporates by this reference the allegations contained in the preceding paragraphs 1-21 as if fully set forth herein.

29.     Defendant has infringed and continue to infringe the '708 Patent under the Patent Laws of the United States, 35 U.S.C §§ 271 *et seq*. literally and/or under the doctrine of equivalents by importing, distributing, marketing, offering for sale and/or selling the Namirsa Pro massage gun, a representative image of which is shown below:



30.     Defendant infringes at least Claim 1 of the '708 Patent. The infringing products literally meet the following claim limitations. If any of the limitations are not literally met, the infringing products meet the limitations under the doctrine of equivalents, because they perform the same function in substantially the same way to achieve substantially the same result, and/or because the relevant structures and functions of the infringing products are insubstantially different from the claimed limitation:

A battery-powered percussive massage device comprising:

a main enclosure extending along an axis, the main enclosure having a proximal end and a distal end, the main enclosure including a cavity;

a motor having a rotatable shaft;

a reciprocation assembly coupled to the rotatable shaft, the reciprocation assembly including a piston, the reciprocation assembly configured to reciprocate the piston along a reciprocation axis in response to rotation of the rotatable shaft, the reciprocation assembly positioned within the cavity of the main enclosure;

an applicator head having a proximal end removably attachable to the piston, and having a distal end that extends from the distal end of the main enclosure when the proximal end of the applicator is attached to the piston;

a handle attached to the main enclosure, the handle comprising:

a cavity, the cavity housing at least one battery and a printed circuit board, the printed circuit board including a battery controller that receives electrical power via a connector and that selectively charges the at least one battery, the printed circuit board having a mounting surface with a peripheral edge;

an outer gripping surface covering at least a portion of the handle;

a charge indication display, the charge indication display comprising a plurality of light-emitting diodes (LEDs) positioned on the mounting surface of the printed circuit board near the peripheral edge of the mounting surface, the LEDs generating light responsive to a charge condition of the at least one battery, the light emitted outward from the LEDs toward the peripheral edge of the printed circuit board; and

an annular light transmissive ring positioned around the handle in alignment

with the LEDs to propagate light from the LEDs to the outside of the handle.

31.    Defendant's infringement of the '708 Patent has caused, and will continue to cause, significant damage to Hyperice. As a result, Hyperice is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to 35 U.S.C. §284. Hyperice is also entitled to recover prejudgment interest, post-judgment interest, and costs.

32.    As a result of Defendant's infringement of the '708 Patent, Hyperice has suffered irreparable harm and impairment of the value of its patent rights, and Hyperice will continue to suffer irreparable harm and impairment of the value of its patent rights, unless and until Defendant is permanently enjoined by this Court from infringing the '708 Patent under 35 U.S.C. §283. Hyperice has no adequate remedy at law and is entitled to a permanent injunction against Defendant.

33.    Defendant's infringement of the '708 Patent has been and continues to be willful. As noted above, Defendant has had knowledge of the '708 Patent and knew, or acted with willful, intentional, and conscious disregard of the objectively high likelihood, that its conduct constitutes infringement of the '708 Patent. Nevertheless, Defendant continues to infringe the '708 Patent— wanton, malicious, and egregious conduct that constitutes willful infringement under 35 U.S.C. §284, entitling Hyperice to enhanced damages.

## COUNT III
## PATENT INFRINGEMENT (35 U.S.C. § 271)

34.    Hyperice incorporates by this reference the allegations contained in the preceding paragraphs 1-21 as if fully set forth herein.

35.    Defendant has infringed and continue to infringe the '317 Patent under the Patent Laws of the United States, 35 U.S.C §§ 271 *et seq*. literally and/or under the doctrine of equivalents by importing, distributing, marketing, offering for sale and/or selling the Namirsa Pro massage gun, a representative image of which is shown below, and Figure 1 of the '317 Patent:





FIG. 1

36.    Defendant's infringement of the '317 Patent has caused, and will continue to cause, significant damage to Hyperice. As a result, Hyperice is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to 35 U.S.C. §284 and/or disgorgement of Defendant's profits pursuant to 35 U.S.C. §289. Hyperice is also entitled to recover prejudgment interest, post-judgment interest, and costs.

37.    As a result of Defendant's infringement of the '317 Patent, Hyperice has suffered irreparable harm and impairment of the value of its patent rights, and Hyperice will continue to suffer irreparable harm and impairment of the value of its patent rights, unless and until Defendant is permanently enjoined by this Court from infringing the '317 Patent under 35 U.S.C. §283. Hyperice has no adequate remedy at law and is entitled to a permanent injunction against Defendant.

38.     Defendant's infringement of the '317 Patent has been and continues to be willful.  As noted above, Defendant has had knowledge of the '317 Patent and knew, or acted with willful, intentional, and conscious disregard of the objectively high likelihood, that its conduct constitutes infringement of the '317 Patent.  Nevertheless, Defendant continues to infringe the '317 Patent— wanton, malicious, and egregious conduct that constitutes willful infringement under 35 U.S.C. §284, entitling Hyperice to enhanced damages.


## COUNT IV
## PATENT INFRINGEMENT (35 U.S.C. § 271)

39.     Hyperice incorporates by this reference the allegations contained in the preceding paragraphs 1-21 as if fully set forth herein.

40.     Defendant has infringed and continue to infringe the '822 Patent under the Patent Laws of the United States, 35 U.S.C §§ 271 *et seq.* literally and/or under the doctrine of equivalents by importing, distributing, marketing, offering for sale and/or selling the Namirsa Pro massage gun, a representative image of which is shown below, and Figure 1 of the '822 Patent:





FIG. 1

41.    Defendant's infringement of the '822 Patent has caused, and will continue to cause, significant damage to Hyperice. As a result, Hyperice is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to 35 U.S.C. §284 and/or disgorgement of Defendant's profits pursuant to 35 U.S.C. §289. Hyperice is also entitled to recover prejudgment interest, post-judgment interest, and costs.

42.    As a result of Defendant's infringement of the '822 Patent, Hyperice has suffered irreparable harm and impairment of the value of its patent rights, and Hyperice will continue to suffer irreparable harm and impairment of the value of its patent rights, unless and until Defendant is permanently enjoined by this Court from infringing the '822 Patent under 35 U.S.C. §283. Hyperice has no adequate remedy at law and is entitled to a permanent injunction against Defendant.

43.    Defendant's infringement of the '822 Patent has been and continues to be willful. As noted above, Defendant has had knowledge of the '822 Patent and knew, or acted with willful, intentional, and conscious disregard of the objectively high likelihood, that its conduct constitutes infringement of the '822 Patent. Nevertheless, Defendant continues to infringe the '822 Patent— wanton, malicious, and egregious conduct that constitutes willful infringement under 35 U.S.C. §284, entitling Hyperice to enhanced damages.

## COUNT V
## PATENT INFRINGEMENT (35 U.S.C. § 271)

44.    Hyperice incorporates by this reference the allegations contained in the preceding paragraphs 1-21 as if fully set forth herein.

45.     Defendant has infringed and continue to infringe the '482 Patent under the Patent Laws of the United States, 35 U.S.C §§ 271 *et seq.* literally and/or under the doctrine of equivalents by importing, distributing, marketing, offering for sale and/or selling the Namirsa Pro and Namirsa Mini massage guns, representative images of which are shown below:



46.     Defendant infringes at least Claim 1 of the '482 Patent. The infringing products literally meet the following claim limitations. If any of the limitations are not literally met, the infringing products meet the limitations under the doctrine of equivalents, because they perform the same function in substantially the same way to achieve substantially the same result, and/or because the relevant structures and functions of the infringing products are insubstantially different from the claimed limitation:

A percussive massager comprising:

a housing;

a piston having a proximal end and a distal end, the distal end of the piston having a substantially cylindrical bore;

a motor at least partially within the housing and operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed;

a drive mechanism that controls a predetermined stroke length of the piston; and

a quick-connect system comprising the distal end of the piston and a first massaging head, wherein the quick-connect system is configured to secure the first massaging head to the percussive massager by a proximal end of the massaging head being slid into the bore while the piston reciprocates the predetermined stroke length at the first speed.

47.     Defendant's infringement of the '482 Patent has caused, and will continue to cause, significant damage to Hyperice. As a result, Hyperice is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to 35 U.S.C. §284. Hyperice is also entitled to recover prejudgment interest, post-judgment interest, and costs.

48.     As a result of Defendant's infringement of the '482 Patent, Hyperice has suffered irreparable harm and impairment of the value of its patent rights, and Hyperice will continue to suffer irreparable harm and impairment of the value of its patent rights, unless and until Defendant is permanently enjoined by this Court from infringing the '482 Patent under 35 U.S.C. §283. Hyperice has no adequate remedy at law and is entitled to a permanent injunction against Defendant.

49.     Defendant's infringement of the '482 Patent has been and continues to be willful. As noted above, Defendant has had knowledge of the '482 Patent and knew, or acted with willful,

intentional, and conscious disregard of the objectively high likelihood, that its conduct constitutes infringement of the '482 Patent. Nevertheless, Defendant continues to infringe the '482 Patent— wanton, malicious, and egregious conduct that constitutes willful infringement under 35 U.S.C. §284, entitling Hyperice to enhanced damages.

## COUNT VI
## PATENT INFRINGEMENT (35 U.S.C. § 271)

50.     Hyperice incorporates by this reference the allegations contained in the preceding paragraphs 1-21 as if fully set forth herein.

51.     Defendant has infringed and continue to infringe the '082 Patent under the Patent Laws of the United States, 35 U.S.C §§ 271 *et seq.* literally and/or under the doctrine of equivalents by importing, distributing, marketing, offering for sale and/or selling the Namirsa Pro massage gun, a representative image of which is shown below:




52.    Defendant infringes at least Claim 1 of the '082 Patent. The infringing products literally meet the following claim limitations. If any of the limitations are not literally met, the infringing products meet the limitations under the doctrine of equivalents, because they perform the same function in substantially the same way to achieve substantially the same result, and/or because the relevant structures and functions of the infringing products are insubstantially different from the claimed limitation:

A percussive massager comprising:

a housing;

a piston having a proximal end and a distal end, the distal end of the piston having a bore;

a motor operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed;

a drive mechanism that controls a predetermined stroke length of the piston; and

a quick-connect system comprising the distal end of the piston and a first massaging head, wherein the quick-connect system is configured to have a proximal end of the first massaging head inserted into or removed from the bore while the piston reciprocates the predetermined stroke length at the first speed.

53.    Defendant's infringement of the '082 Patent has caused, and will continue to cause, significant damage to Hyperice. As a result, Hyperice is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to 35 U.S.C. §284. Hyperice is also entitled to recover prejudgment interest, post-judgment interest, and costs.

54.    As a result of Defendant's infringement of the '082 Patent, Hyperice has suffered irreparable harm and impairment of the value of its patent rights, and Hyperice will continue to suffer irreparable harm and impairment of the value of its patent rights, unless and until Defendant is permanently enjoined by this Court from infringing the '082 Patent under 35 U.S.C. §283. Hyperice has no adequate remedy at law and is entitled to a permanent injunction against Defendant.

55.    Defendant's infringement of the '082 Patent has been and continues to be willful.  As noted above, Defendant has had knowledge of the '082 Patent and knew, or acted with willful, intentional, and conscious disregard of the objectively high likelihood, that its conduct constitutes infringement of the '082 Patent.  Nevertheless, Defendant continues to infringe the '082 Patent— wanton, malicious, and egregious conduct that constitutes willful infringement under 35 U.S.C. §284, entitling Hyperice to enhanced damages.

## COUNT VII
## PATENT INFRINGEMENT (35 U.S.C. § 271)

56.    Hyperice incorporates by this reference the allegations contained in the preceding paragraphs 1-21 as if fully set forth herein.

57.    Defendant has infringed and continue to infringe the '826 Patent under the Patent Laws of the United States, 35 U.S.C §§ 271 *et seq*. literally and/or under the doctrine of equivalents by importing, distributing, marketing, offering for sale and/or selling the Namirsa Pro massage gun, a representative image of which is shown below:




58.     Defendant infringes at least Claim 1 of the '826 Patent. The infringing products literally

meet the following claim limitations. If any of the limitations are not literally met, the infringing

products meet the limitations under the doctrine of equivalents, because they perform the same

function in substantially the same way to achieve substantially the same result, and/or because the

relevant structures and functions of the infringing products are insubstantially different from the

claimed limitation:

A percussive massager comprising:

a housing;

a piston having a proximal end and a distal end, the distal end of the piston having

a bore;

a motor operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed, and wherein the motor has an output shaft that is configured to rotate about a rotation axis;

a drive mechanism that determines a predetermined stroke length of the piston, wherein the drive mechanism comprises a flywheel operatively connected to the output shaft of the motor to rotate about a flywheel axis, the output shaft extending into the flywheel along the flywheel axis; and

a quick-connect system comprising the distal end of the piston and a first messaging head, wherein the quick-connect system allows a first massaging head to be connected or removed while the piston reciprocates the predetermined stroke length at the first speed.

59.    Defendant's infringement of the '826 Patent has caused, and will continue to cause, significant damage to Hyperice. As a result, Hyperice is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to 35 U.S.C. §284. Hyperice is also entitled to recover prejudgment interest, post-judgment interest, and costs.

60.    As a result of Defendant's infringement of the '826 Patent, Hyperice has suffered irreparable harm and impairment of the value of its patent rights, and Hyperice will continue to suffer irreparable harm and impairment of the value of its patent rights, unless and until Defendant is permanently enjoined by this Court from infringing the '826 Patent under 35 U.S.C. §283. Hyperice has no adequate remedy at law and is entitled to a permanent injunction against Defendant.

61.    Defendant's infringement of the '826 Patent has been and continues to be willful.  As noted above, Defendant has had knowledge of the '826 Patent and knew, or acted with willful,

intentional, and conscious disregard of the objectively high likelihood, that its conduct constitutes infringement of the '826 Patent. Nevertheless, Defendant continues to infringe the '826 Patent—wanton, malicious, and egregious conduct that constitutes willful infringement under 35 U.S.C. §284, entitling Hyperice to enhanced damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on all Counts of this Verified Complaint and an award of equitable and monetary relief against Defendant as follows:

1.      That this Court enter judgment of infringement of the Hyperice Patents in favor of Hyperice and against Defendant;

2.      That this Court enter a permanent injunction against Defendant from infringing the Hyperice Patents;

3.      That this Court award Hyperice compensatory damages for infringement of the Hyperice Patents, as well as interest thereon;

4.      That this Court award Hyperice its costs of this suit;

5.      That this Court award Hyperice increased damages in an amount not less than three times the damages assessed for Defendant's infringement of the Hyperice Patents, in accordance with 35 U.S.C. §284.

6.      That this Court declare this an exceptional case under 35 U.S.C. §285 and award Hyperice its attorneys' fees and any other costs incurred in connection with this action;

7.      That this Court award Hyperice prejudgment and post-judgment interest; and

8.      That this Court grant such further relief as the Court deems just and proper.

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Verified Complaint and, based upon my personal knowledge, the facts set forth therein are true and correct.

Brian G. Arnold
Associate General Counsel & Head of Intellectual Property
Hyper Ice, Inc.

## JURY DEMAND

Hyperice demands a trial by jury of all issues so triable.

Dated: September 12 , 2025

Respectfully submitted,

/s/ Joseph Englander, Esq.
Joseph Englander (FL Bar No. 0935565)
Lewis Brisbois Bisgaard & Smith LLP
110 SE 6th Street
Suite 2600
Fort Lauderdale, FL 33301
Tel: (954) 939-3374
Joseph.Englander@lewisbrisbois.com

*Counsel for Plaintiffs*

# EXHIBIT 1

US010561574B1

(12) **United States Patent**
Marton et al.

(10) Patent No.: **US 10,561,574 B1**
(45) Date of Patent: *\*Feb. 18, 2020**

(54) **BATTERY-POWERED PERCUSSIVE MASSAGE DEVICE**

(71) Applicant: **Hyper Ice, Inc.**, Irvine, CA (US)

(72) Inventors: **Robert Marton**, Yorba Linda, CA (US); **Anthony Katz**, Laguna Niguel, CA (US)

(73) Assignee: **Hyper Ice, Inc.**, Irvine, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/656,348**

(22) Filed: **Oct. 17, 2019**

**Related U.S. Application Data**

(63) Continuation of application No. 16/107,587, filed on Aug. 21, 2018, now Pat. No. 10,492,984, which is a continuation of application No. 15/902,542, filed on Feb. 22, 2018.

(51) **Int. Cl.**
*A61H 23/00*        (2006.01)
*A61H 23/02*        (2006.01)

(52) **U.S. Cl.**
CPC ....... *A61H 23/006* (2013.01); *A61H 23/0254* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/149* (2013.01)

(58) **Field of Classification Search**
CPC .. A61H 23/006; A61H 23/0254; A61H 23/06; A61H 2201/0153; A61H 2201/0157; A61H 2201/149; B25B 21/00
USPC ............. 173/217; 320/107, 112–114; 30/369
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,088,128 A | 5/1978 | Mabuchi | |
| 4,513,737 A | 4/1985 | Mabuchi | |
| 4,549,535 A | 10/1985 | Wing | |
| 4,790,296 A | 12/1988 | Segal | |
| 4,841,955 A | 6/1989 | Evans | |
| 5,656,017 A | 8/1997 | Keller et al. | |
| 5,733,029 A | 3/1998 | Monroe | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 202536467 U | 11/2012 |
| KR | 200311328 Y1 | 5/2003 |
| WO | 2009014727 A1 | 1/2009 |

*Primary Examiner* — Colin W Stuart
*Assistant Examiner* — Douglas Y Sul
(74) *Attorney, Agent, or Firm* — Patterson Intellectual Property Law, P.C.; Jerry Turner Sewell

(57) **ABSTRACT**

A percussive massage device includes an enclosure having a cylindrical bore that extends along a longitudinal axis. A motor has a rotatable shaft that rotates about a central axis perpendicular to the longitudinal axis. A crank coupled to the shaft includes a pivot, which is offset from the central axis of the shaft. A transfer bracket has a first end portion coupled to the pivot of the crank. A flexible transfer linkage has a first end coupled to a second end portion of the transfer bracket. A piston has a first end coupled to a second end of the transfer linkage. The piston is constrained to move within a cylinder along the longitudinal axis of the cylindrical bore. An applicator head has a first end coupled to a second end of the piston and has a second end exposed outside the cylindrical bore for application to a person receiving treatment.

**15 Claims, 21 Drawing Sheets**



US 10,561,574 B1

Page 2

(56)                    **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,769,657 A * | 6/1998 | Kondo | H01M 2/1055 |
| | | | 320/112 |
| 6,228,042 B1 | 5/2001 | Dungan | |
| 6,682,496 B1 | 1/2004 | Pivaroff | |
| 9,889,066 B2 | 2/2018 | Danby et al. | |
| 2006/0293711 A1 | 12/2006 | Keller et al. | |
| 2008/0262399 A1 | 10/2008 | Kovelman et al. | |
| 2010/0274162 A1 | 10/2010 | Evans | |
| 2011/0017742 A1 | 1/2011 | Sausen et al. | |
| 2013/0261516 A1 | 10/2013 | Cilea et al. | |
| 2013/0281897 A1 | 10/2013 | Hoffmann et al. | |
| 2014/0031866 A1 * | 1/2014 | Fuhr | A61H 1/008 |
| | | | 606/239 |
| 2015/0005682 A1 * | 1/2015 | Danby | A61H 23/0254 |
| | | | 601/101 |
| 2016/0367425 A1 | 12/2016 | Wersland | |
| 2017/0027798 A1 | 2/2017 | Wersland | |
| 2017/0333280 A1 | 11/2017 | Black | |
| 2018/0008512 A1 | 1/2018 | Goldstein | |
| 2018/0168913 A1 | 6/2018 | Sedic | |
| 2018/0200141 A1 | 7/2018 | Wersland et al. | |

* cited by examiner



*FIG. 1*



*FIG. 2*



*FIG. 3*



*FIG. 4A*

*FIG. 4B*



*FIG. 5*



*FIG. 6*



*FIG. 7*



*FIG. 8*



*FIG. 9*



FIG. 10



*FIG. 11A*          *FIG. 11B*



*FIG. 12*



*FIG. 13*



FIG. 14



*FIG. 15*



FIG. 17



FIG. 16



FIG. 19



FIG. 18



*FIG. 20*



*FIG. 21*



*FIG. 22*



FIG. 23



*FIG. 24*

US 10,561,574 B1

1

# BATTERY-POWERED PERCUSSIVE MASSAGE DEVICE

## RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 16/107,587, filed on Aug. 21, 2019, which is a continuation of U.S. patent application Ser. No. 15/902,542, filed on Feb. 22, 2018, for "Battery-Powered Percussive Massage Device," which are incorporated herein in their entireties.

## FIELD OF THE INVENTION

The present invention is in the field of therapeutic devices, and, more particularly, is in the field of devices that apply percussive massage to selected portions of a body.

## BACKGROUND OF THE INVENTION

Percussive massage, which is also referred to as tapotement, is the rapid, percussive tapping, slapping and cupping of an area of the human body. Percussive massage is used to more aggressively work and strengthen deep-tissue muscles. Percussive massage increases local blood circulation and can even help tone muscle areas. Percussive massage may be applied by a skilled massage therapist using rapid hand movements; however, the manual force applied to the body varies, and the massage therapist may tire before completing a sufficient treatment regime.

Percussive massage may also be applied by electromechanical percussive massage devices (percussive applicators), which are commercially available. Such percussive applicators may include, for example, an electric motor coupled to drive a reciprocating piston within a cylinder. A variety of percussive heads may be attached to the piston to provide different percussive effects on selected areas of the body. Many of the known percussive applicators are expensive, large, relatively heavy, and tethered to an electrical power source. For example, some percussive applicators may require users to grip the applicators with both hands in order to control the applicators. Some percussive applicators are relatively noisy because of the conventional mechanisms used to convert the rotational energy of an electric motor to the reciprocating motion of the piston.

## SUMMARY OF THE INVENTION

A need exists for an electromechanical percussive massage device that is less costly, is small, has a relatively light weight, and is portable (e.g., untethered to an electrical power source). A further need exists for an electromechanical percussive massage device that is quitter (less noisy) than conventional devices.

One aspect of the embodiments disclosed herein is a percussive massage device that includes an enclosure having a cylindrical bore that extends along a longitudinal axis. A motor has a rotatable shaft that rotates about a central axis perpendicular to the longitudinal axis. A crank coupled to the shaft includes a pivot, which is offset from the central axis of the shaft. A transfer bracket has a first end portion coupled to the pivot of the crank. A flexible transfer linkage has a first end coupled to a second end portion of the transfer bracket. A piston has a first end coupled to a second end of the transfer linkage. The piston is constrained to move within a cylinder along the longitudinal axis of the cylindrical bore. An applicator head has a first end coupled to a second end

2

of the piston and has a second end exposed outside the cylindrical bore for application to a person receiving treatment.

Another aspect of the embodiments disclosed herein is a percussive massage device. The device comprises an enclosure having a cylindrical bore. The cylindrical bore extends along a longitudinal axis. A motor is positioned within the enclosure. The motor has a rotatable shaft having a central axis. The central axis of the shaft is perpendicular to the longitudinal axis of the cylindrical bore. A crank is coupled to the shaft. The crank includes a pivot, which is offset from the central axis of the shaft. A transfer bracket has a first end portion coupled to the pivot of the crank. A flexible transfer linkage has a first end coupled to a second end portion of the transfer bracket. A piston has a first end coupled to a second end of the transfer linkage. The piston is positioned within the cylindrical bore of the enclosure and is constrained to move only along the longitudinal axis of the cylindrical bore. An applicator head has a first end coupled to a second end of the piston. A second end of the applicator head is exposed outside the cylindrical bore. In certain embodiments in accordance with this aspect, the pivot of the crank is rotatable 360 degrees about the central axis of the shaft of the motor. The pivot is substantially aligned with the longitudinal axis of the cylindrical bore at a first rotational position and at a second rotational position. The first and second rotational positions are spaced apart angularly by 180 degrees. The pivot is offset from the longitudinal axis in a first offset direction when the pivot is at a rotational position between the first rotational position and the second rotational position in a first angular direction with respect to the first rotational position. The pivot is offset from the longitudinal axis in a second offset direction when the pivot is at a rotational position between the first rotational position and the second rotational position in a second angular direction opposite the first angular direction. The flexible transfer linkage is substantially straight and is aligned with the longitudinal axis of the cylindrical bore when the pivot of the crank is aligned with the longitudinal axis of the central bore at the first rotational position or at the second rotational position. The flexible transfer linkage bends in a first direction with respect to the longitudinal axis of the cylindrical bore when the pivot of the crank is offset from the longitudinal axis in the first offset direction. The flexible transfer linkage bends in a second direction with respect to the longitudinal axis of the cylindrical bore when the pivot of the crank is offset from the longitudinal axis in the second offset direction. In certain embodiments, the applicator head is removably coupled to the piston. In certain embodiments, the flexible transfer linkage comprises resilient rubber. In certain embodiments, the resilient rubber has a Shore durometer hardness of approximately 50.

Another aspect of the embodiments disclosed herein is a method of operating a percussive massage device. The method comprises rotating a shaft of an electric motor to rotate a pivot of a crank about a centerline of the shaft; coupling the pivot of the crank to a first end of a flexible interconnection linkage of a reciprocation assembly; coupling a second end of the flexible interconnection linkage to a piston constrained to move along a longitudinal centerline; and coupling the piston to an applicator head wherein rotational movement of the pivot of the crank causes reciprocation longitudinal movement of the piston and the applicator head. In certain embodiments of the method, the applicator head is removably coupled to the piston. In certain embodiments of the method, the flexible transfer linkage comprises resilient rubber. In certain embodiments

US 10,561,574 B1

3

of the method, the resilient rubber has a Shore durometer hardness of approximately 50.

Another aspect of the embodiments disclosed herein is a method of assembling a percussive massage device. The method comprises attaching an eccentric crank to the shaft of a motor, the eccentric crank having a pivot; coupling a first portion of a bearing holder to the pivot of the eccentric crank; attaching a first end of a flexible interconnection linkage to a second portion of the bearing holder; attaching a second end of the flexible interconnection linkage to a first end of a piston, the piston constrained to longitudinal movement within a cylinder; and removably attaching an applicator head to a second end of the piston. In certain embodiments of the method, the flexible transfer linkage comprises resilient rubber. In certain embodiments of the method, the resilient rubber has a Shore durometer hardness of approximately 50.

BRIEF DESCRIPTIONS OF THE DRAWINGS

The foregoing aspects and other aspects of the disclosure are described in detail below in connection with the accompanying drawings in which:

FIG. 1 illustrates a bottom perspective view of a portable electromechanical percussive massage applicator that is battery powered and has a single hand grip, the view in FIG. 1 showing the bottom, the left side and the distal end (the end facing away from a user (not shown)) of the applicator;

FIG. 2 illustrates a top perspective view of the portable electromechanical percussive massage applicator of FIG. 1 showing the top, the right side and the proximal end (the end closest to a user (not shown)) of the applicator;

FIG. 3 illustrates an exploded perspective view of the portable electromechanical percussive massage applicator of FIG. 1, the view showing the upper housing, a motor assembly, a reciprocation assembly, and a lower housing with an attached battery assembly;

FIG. 4A illustrates an enlarged proximal end view of the combined upper and lower housing with the endcap of the housing detached and rotated to show the interlocking features, the view further showing a distal view of the main printed circuit board (PCB) positioned within the endcap of the housing;

FIG. 4B illustrates a proximal view of the main PCB isolated from the endcap of the housing;

FIG. 5 illustrates an elevational cross-sectional view of the portable electromechanical percussive massage applicator of FIGS. 1 and 2 taken along the line 5--5 in FIG. 1, the view taken through a set of the mated interconnecting features of the upper and lower housings;

FIG. 6 illustrates an elevational cross-sectional view of the portable electromechanical percussive massage applicator of FIGS. 1 and 2 taken along the line 6--6 in FIG. 1, the view taken through the centerline of the shaft of the motor in the motor assembly of FIG. 3;

FIG. 7 illustrates an elevational cross-sectional view of the portable electromechanical percussive massage applicator of FIGS. 1 and 2 taken along the line 7--7 in FIG. 1, the view taken through the longitudinal centerline of the apparatus;

FIG. 8 illustrates a top plan view of the lower housing of FIG. 3;

FIG. 9 illustrates an exploded perspective view of the lower housing and the battery assembly of FIG. 3;

FIG. 10 illustrates an enlarged perspective view of the lower surface of the battery assembly printed circuit board;

4

FIG. 11A illustrates an exploded top perspective view of the motor assembly of FIG. 3, the view showing the upper surfaces of the elements of the motor assembly;

FIG. 11B illustrates an exploded bottom perspective view of the motor assembly of FIG. 3, the view of FIG. 11B similar to the view of FIG. 11A with the elements of the motor assembly rotated to show the lower surfaces of the elements;

FIG. 12 illustrates a bottom perspective view of the upper housing of the percussive massage applicator viewed from the proximal end;

FIG. 13 illustrates an exploded perspective view of the upper housing of the percussive massage applicator corresponding to the view of FIG. 12 showing the outer sleeve, the cylindrical mounting sleeve and the cylinder body;

FIG. 14 illustrates an exploded perspective view of the reciprocation assembly of FIG. 3, the reciprocation assembly including a crank bracket, a flexible interconnection linkage, a piston and a removably attachable application head;

FIG. 15 illustrates a cross-sectional view of the assembled reciprocation assembly taken along the line 15--15 in FIG. 3;

FIG. 16 illustrates a plan view of the percussive massage applicator of FIGS. 1 and 2 with the lower cover removed, the view looking upward toward the electrical motor of the applicator, the view in FIG. 16 showing the crank in the 12 o'clock position (as viewed in FIG. 16) such the end of the applicator head is extended a first distance from the housing of the applicator;

FIG. 17 illustrates a plan view of the portable electromechanical percussive massage applicator similar to the view of FIG. 16, the view in FIG. 17 showing the crank in the 3 o'clock position (as viewed in FIG. 17) such the applicator head is extended a second distance from the housing of the applicator, wherein the second distance is greater than the first distance of FIG. 16;

FIG. 18 illustrates a plan view of the portable electromechanical percussive massage applicator similar to the views of FIGS. 16 and 17, the view in FIG. 18 showing the crank in the 6 o'clock position (as viewed in FIG. 18) such the applicator head is extended a third distance from the housing of the applicator, wherein the third distance is greater than the second distance of FIG. 17;

FIG. 19 illustrates a plan view of the portable electromechanical percussive massage applicator similar to the views of FIGS. 16, 17 and 18, the view in FIG. 19 showing the crank in the 9 o'clock position (as viewed in FIG. 19) such the applicator head is extended a fourth distance from the housing of the applicator, wherein the fourth distance is substantially equal to the second distance of FIG. 17;

FIG. 20 illustrates a left elevational view of the percussive massage applicator of FIGS. 1 and 2 with the bullet-shaped applicator removed and replaced with a spherical applicator;

FIG. 21 illustrates a left elevational view of the percussive massage applicator of FIGS. 1 and 2 with the bullet-shaped applicator removed and replaced with a convex applicator having a larger surface area than the bullet-shaped applicator;

FIG. 22 illustrates a left elevational view of the percussive massage applicator of FIGS. 1 and 2 with the bullet-shape applicator removed and replaced with a two-pronged applicator having two smaller distal surface areas;

FIG. 23 illustrates a schematic diagram of the battery controller circuit; and

FIG. 24 illustrates a schematic diagram of the motor controller circuit.

US 10,561,574 B1

5

## DESCRIPTION OF ILLUSTRATED EMBODIMENTS

As used throughout this specification, the words "upper," "lower," "longitudinal," "upward," "downward," "proximal," "distal," and other similar directional words are used with respect to the views being described. It should be understood that the percussive massage applicator described herein can be used in various orientations and is not limited to use in the orientations illustrated in the drawing figures.

A portable electromechanical percussive massage applicator ("percussive massage applicator") **100** is illustrated in FIGS. **1-22**. As described below, the percussive massage applicator can be applied to different locations of body to apply percussion to the body to effect percussive treatment. The percussive massage applicator is operable with removably attachable applicator heads to vary the effect of the percussive strokes. The percussive massage applicator operates at a plurality of speeds (e.g., three speeds).

The portable electromechanical percussive massage applicator **100** includes a main body **110**. The main body includes an upper body portion **112** and a lower body portion **114**. The two body portions engage to form a generally cylindrical enclosure about a longitudinal axis **116** (FIG. **2**).

A generally cylindrical motor enclosure **120** extends upward from the upper body portion **112**. The motor enclosure is substantially perpendicular to the upper body portion. The motor enclosure is capped with a motor enclosure endcap **122**. The motor enclosure and the upper body portion house a motor assembly **124** (FIG. **3**). The upper body portion also supports a reciprocation assembly **126** (FIG. **3**), which is coupled to the motor assembly as described below.

A generally cylindrical battery assembly receiving enclosure **130** extends downward from the lower body portion **114** and is substantially perpendicular to the lower body portion. A battery assembly **132** extends from the battery assembly receiving enclosure.

A main body endcap **140** is positioned on a proximal end of the main body **110**. In addition to other functions described below, the main body endcap also serves as a clamping mechanism to hold the respective proximal ends of the upper body portion **112** and the lower body portion **114** together. As illustrated in FIG. **4**A, the endcap includes a plurality of protrusions **142** on an inner perimeter surface **144**. The protrusions are positioned to engage a corresponding plurality of L-shaped notches **146** on the outer perimeters of the proximal ends of the upper body portion and the lower body portion. In the illustrated embodiment, two notches are formed on the upper body portion and two notches are formed on the lower body portion. The protrusions on the endcap are inserted into the proximal ends of the notches until seated against the distal ends of the notches. The endcap is then twisted by a few degrees (e.g., approximately 10 degrees) to lock the endcap to the two body portions. A screw **148** is then inserted through a bore **150** in the endcap to engage the lower body portion to prevent the endcap from rotating to unlock during normal use.

As shown in FIG. **4**A, the main body endcap **140** houses a motor controller (main) printed circuit board (PCB) **160**. As shown in FIG. **4**B, the proximal side of the main PCB supports a central pushbutton switch **162**. The operation of the switch is described below in connection with the electronic circuitry. As shown in FIG. **2**, the switch is surrounded on the endcap by a plurality of bores **164**, which extend perpendicularly from the outer (proximal) surface of the endcap to form a plurality of concentric rows of bores. Selected ones of the bores are through bores, which allow

6

airflow through the endcap. Three of the bores above the switch have respective speed indication light-emitting diodes (LEDs) **166**A, **166**B, **166**C positioned therein. The three LEDs extend from the proximal side of the PCB as shown in FIG. **4**B. The three LEDs provide an indication of the operational state of the percussive massage applicator **100** as described in more detail below. Five of the bores located below the switch have respective battery charge state LEDs **168**A, **168**B, **168**C, **168**D, **168**E positioned therein. The five LEDs also extend from the proximal side of the PCB as shown in FIG. **4**B. The five LEDs provide an indication of the charge state of the battery when the battery assembly **132** is attached and is providing power to the percussive massage applicator. As shown in FIG. **4**A, the distal side of the PCB supports a first plug **170**, which includes three contact pins that are connectable to the battery assembly **132** as described below. The distal side of the PCB also supports a second plug **172**, which includes five contact pins that are connectable to the motor assembly **124** as described below.

As shown in FIGS. **5** and **8**, a distal portion of the lower body portion **114** includes a plurality of through bores **180** (e.g., four through bores) that are aligned with a corresponding plurality of through bores **182** in the upper body portion **112**. When lower body portion is attached to the upper body portion, a plurality of interconnection screws **184** pass through the through bores in the lower body portion and engage the through bores of the upper body portion to further secure the two body portions together. A plurality of plugs **186** are inserted into outer portions of the through bores of the lower body portion to hide the ends of the interconnection screws.

As shown in FIGS. **8** and **9**, the lower body portion **114** includes a battery assembly receiving tray **200**, which is secured to the inside of the lower body portion in alignment with the battery assembly receiving enclosure **130**. The receiving tray is secured to the lower body portion with a plurality of screws **202** (e.g., four screws). The receiving tray includes a plurality of leaf spring contacts **204**A, **204**B, **204**C (e.g., three contacts), which are positioned in a triangular pattern. The three contacts are positioned to engage a corresponding plurality of contacts **206**A, **206**B, **206**C, which are positioned around the top edge of the battery assembly **132** when the battery assembly is positioned in the battery assembly receiving enclosure.

The battery assembly **132** includes a first battery cover half **210** and a second battery cover half **212**, which enclose a battery unit **214**. In the illustrated embodiment, the battery unit comprises six 4.2-volt lithium-ion battery cells connected in series to produce an overall battery voltage of approximately 25.2 volts when fully charged. The battery cells are commercially available from many suppliers, such as, for example, Samsung SDI Co., Ltd., of South Korea. The first battery cover half and the second battery cover half snap together. The two halves are further held together by an outer cylindrical cover **216**, which also serves as a gripping surface when the percussive massage applicator **100** is being used. In the illustrated embodiment, the outer cover extends only over the portion of the battery assembly that does not enter the battery receiving enclosure **132**. In the illustrated embodiment, the outer cover comprises neoprene or another suitable material that combines a cushioning layer with an effective gripping surface.

The upper end of the battery assembly **132** includes a first mechanical engagement tab **220** and a second mechanical engagement tab **222** (FIG. **6**). As shown in FIG. **6**, for example, when the battery assembly is fully inserted into the

US 10,561,574 B1

7

battery assembly receiving enclosure **130**, the first engagement tab engages a first ledge **224** and the second engagement tab engages a second ledge **226** within the battery assembly receiving enclosure to secure the battery assembly within the battery assembly receiving enclosure.

The lower body portion **114** includes a mechanical button **230** in alignment with the first engagement tab **220**. When sufficient pressure is applied to the button, the first engagement tab is pushed away from the first ledge **224** to allow the first engagement tab to move downward with respect to the first ledge and thereby disengage from the ledge. In the illustrated embodiment, the mechanical button is biased by a compression spring **232**. The lower body portion further includes an opening **234** (FIG. **6**) opposite the mechanical button. The opening allows a user to insert a fingertip into the opening to apply pressure to disengage the second engagement tab **222** from the second ledge **226** and at the same time to apply downward pressure to move the second engagement tab downward away from the second ledge and thereby move the battery assembly **132** downward. Once disengaged in this manner, the battery assembly is easily removed from the battery assembly receiving enclosure **130**. In the illustrated embodiment, the opening is covered in part by a flap **236**. The flap may be biased by a compression spring **238**. In alternative embodiments (not shown), a second mechanical button may be included in place of the opening.

The second battery cover half **212** includes an integral printed circuit board support structure **250**, which supports a battery controller printed circuit board (PCB) **252**. The battery controller PCB is shown in more detail in FIG. **10**. In addition to other components, the battery controller PCB includes a charging power adapter input jack **254** and an on/off switch **256**. In the illustrated embodiment, the on/off switch is a slide switch. The battery controller PCB further supports a plurality of light-emitting diodes (LEDs) **260** (e.g., six LEDs), which are mounted around the periphery of the battery controller PCB. In the illustrated embodiment, each LED is a dual-color LED (e.g., red and green), which may be illuminated to display either color. The battery controller PCB is mounted to a battery assembly endcap **262**. A translucent plastic ring **264** is secured between the battery controller PCB and the battery assembly endcap such that the ring generally aligned with the LEDs. Accordingly, light emitted by the LEDs is emitted through the ring. As discussed below, the color of the LEDs may be used to indicate the charged state of the battery assembly **132**. A switch actuator extender **266** is positioned on the actuator of the slide switch and extends through the endcap to enable the slide switch to be manipulated from the outside of the endcap.

As illustrated in FIG. **3**, the motor enclosure **120** houses the electric motor assembly **124**, which is shown in more detail in FIGS. **11**A and **11**B. The electric motor assembly includes a brushless DC electric motor **310** having a central shaft **312** that rotates in response to applied electrical energy. In the illustrated embodiment, the electric motor is a 24-volt brushless DC motor. The electric motor may be a commercially available motor. The diameter and height of the motor enclosure and the mounting structures (described below) are adaptable to receive and secure the electric motor within the motor enclosure.

The electric motor **310** is secured to a motor mounting bracket **320** via a plurality of motor mounting screws **322**. The motor mounting bracket includes a plurality of mounting tabs **324** (e.g., four tabs). Each mounting tab includes a central bore **326**, which receives a respective rubber grom-

8

met **330**, wherein first and second enlarged portions of the grommet are positioned on opposite surfaces of the tab. A respective bracket mounting screw **332** having an integral washer is passed through a respective central hole **334** in each grommet to engage a respective mounting bore **336** in the upper body portion **112**. Two of the four mounting bores are shown in FIG. **12**. The grommets serve as vibration dampers between the motor mounting bracket and the upper body portion.

The central shaft **312** of the electric motor **310** extends through a central opening **350** in the motor mounting bracket **320**. The central shaft engages a central bore **362** of an eccentric crank **360**. The central bore is press-fit onto the central shaft of the electric motor or is secured to the shaft by another suitable technique (e.g., using a setscrew).

The eccentric crank **360** has a circular disk shape. The crank has an inner surface **364** oriented toward the electric motor and an outer surface **366** oriented away from the electric motor. A cylindrical crank pivot **370** is secured to or formed on the outer surface and is offset from the central bore of the crank in a first direction by a selected distance (e.g., 2.8 millimeters in the illustrated embodiment). An arcuate cage **372** extends from the inner surface of the crank and is generally positioned diametrically opposite the crank pivot with reference to the central bore **362** of the crank. A semi-annular weight ring **374** is inserted into the arcuate cage and is secured therein by screws, crimping or by using another suitable technique. The masses of the arcuate cage and the semi-annular weight ring operate to at least partially counterbalance the mass of the crank and the forces applied to the crank, as described below.

As shown in FIGS. **12** and **13**, the distal end of the upper body portion **112** supports a generally cylindrical outer sleeve **400** having a central bore **402**. In the illustrated embodiment, a distal portion **406** proximate to a distal end **404** of the outer sleeve is tapered inward toward the central bore. The outer sleeve has an annular base **408** that is secured to the distal end of the upper body portion by a plurality of screws **410** (e.g., three screws).

The outer sleeve **400** surrounds a generally cylindrical mounting sleeve **420** that is secured within the outer sleeve when the outer sleeve is secured to the upper body portion **112**. The mounting sleeve surrounds a cylinder body **422** that is clamped by the mounting sleeve and is secured in a concentric position with respect to the longitudinal axis **116** of the percussive massage applicator **100**. In addition to securing the cylinder body, the mounting sleeve serves as a vibration damper to reduce vibrations propagating from the cylinder body to the main body **110** of the percussive massage applicator. In the illustrated embodiment, the cylinder body has a length of approximately 25 millimeters and has an inner bore **424**, which has an inner diameter of approximately 25 millimeters. In particular, the inner diameter of the cylinder body is at least 25 millimeters plus a selected clearance fit (e.g., approximately 25 millimeters plus approximately 0.2 millimeters).

As shown in FIG. **3**, the percussive massage applicator **100** includes the reciprocating assembly **126**, which comprises a crank engagement bearing holder **510**, which may also be referred to as a transfer bracket; a flexible interconnection linkage **512**, which may also be referred to as a flexible transfer linkage; a piston **514**; and an applicator head **516**. The reciprocating assembly is shown in more detail in FIGS. **14** and **15**.

The crank engagement bearing holder **510** comprises a bearing housing **530** having an upper end wall **532** that defines the end of a cylindrical cavity **534**. An annular

US 10,561,574 B1

9

bearing **536** fits within the cylindrical cavity. A removably attachable lower end wall **538** is secured to the bearing housing by a plurality of screws **540** (e.g., two screws) to constrain the annual bearing within the cylindrical cavity. The annular bearing includes a central bore **542** that is sized to engage the cylindrical crank pivot **370** of the eccentric crank **360**.

The crank engagement bearing holder **510** further includes an interconnect portion **550** that extends radially from the bearing housing **530**. The interconnect portion includes a disk-shaped interface portion **552** having a threaded longitudinal central bore **554**. The central bore is aligned with a radial line **556** directed toward the center of bearing housing. In the illustrated embodiment, the central bore is threaded with an 8×1.0 metric external thread. The interface portion has an outer surface **558**, which is orthogonal to the radial line. The center of the outer surface of the interface portion is approximately 31 millimeters from the center of the bearing housing. The interface portion has an overall diameter of approximately 28 millimeters and has a thickness of approximately 8 millimeters. A lower portion **560** of the interface portion may be flattened to provide clearance with other components. Selected portions of the interface portion may be removed to form ribs **562** to reduce the overall mass of the interface portion.

A threaded radial bore **564** is formed in the interface portion **552**. The threaded radial bore extends from the outer perimeter of the interface portion to the threaded longitudinal central bore **554**. The threaded radial bore has an internal thread selected to engage a bearing holder setscrew **566** that is inserted into the third threaded bore. The bearing holder setscrew is rotated to a selected depth as described below.

As used herein, "flexible" in connection with the flexible interconnection linkage **512** means that the linkage is capable of bending without breaking. The linkage comprises a resilient rubber material. The linkage may have a Shore A durometer hardness of around 50; however, softer or harder materials in a medium soft Shore hardness range of 35 A to 55 A may be used. The linkage is molded or otherwise formed to have a shape similar to an hourglass. That is, the shape of the linkage is relatively larger at each end and relatively narrower in the middle. In the illustrated embodiment, the linkage has a first disk-shaped end portion **570** and a second disk-shaped end portion **572**. In the illustrated embodiment, the two end portions have similar thicknesses of approximately 4.7 millimeters and have similar outer diameters of approximately 28 millimeters. The material between the two end portions tapers to middle portion **574**, which has a diameter of approximately 18 millimeters. In general, the middle portion has a diameter that is between 50 percent and 75 percent of the diameter of the end portions; however, the middle portion may be relatively smaller or relatively larger to accommodate materials having a greater hardness or a lesser hardness. The linkage has an overall length between the outer surfaces of the two end portions of approximately 34 millimeters. As discussed in more detail below, the smaller diameter middle portion of the linkage allows the linkage to flex easily between the two end portions.

A first threaded interconnect rod **580** extends from the first end portion **570** of the flexible interconnection linkage **512**. A second threaded interconnect rod **582** extends from the second end portion **572** of the linkage. In the illustrated embodiment, the interconnect rods are metallic and are embedded into the respective end portions. For example, in one embodiment, the linkage is molded around the two interconnect rods. In other embodiment, the two intercon-

10

nect rods are adhesively fixed within respective cavities formed in the respective end portions. In a still further embodiment, the two interconnect rods are formed as integral threaded rubber portions of the linkage.

The first interconnect rod **580** of the flexible interconnection linkage **512** has an external thread selected to engage with the internal thread of the threaded longitudinal central bore **554** of the crank engagement bearing holder **510** (e.g., an 8×1.0 metric external thread). When the thread of the first interconnect rod is fully engaged with the thread of the longitudinal central bore, the bearing holder setscrew **566** is rotated to cause the inner end of the setscrew to engage the thread of the first interconnect rod within the longitudinal central bore to inhibit the first interconnect rod from rotating out of the longitudinal central bore.

In the illustrated embodiment, the second interconnect rod **582** of the flexible interconnection linkage **512** has an external thread similar to the thread of the first interconnect rod **580** (e.g., an 8×1.0 metric external thread). In other embodiments, the threads of the two interconnect rods may be different.

In the illustrated embodiment, the piston **514** comprises stainless steel or another suitable material. The piston has an outer diameter that is selected to fit snugly within the inner bore **424** of the cylinder body **422** described above. For example, the outer diameter of the illustrated piston is no greater than approximately 25 millimeters. As discussed above, the inner diameter of the inner bore of the cylinder body is at least 25 millimeters plus a selected minimum clearance allowance (e.g., approximately 0.2 millimeter). Thus, with the outer diameter of the piston being no more than 25 millimeters, the piston has sufficient clearance with respect to the cylinder body that the piston is able to move smoothly within the cylinder body without interference. The maximum clearance is selected such that no significant play exists between the two parts.

In the illustrated embodiment, the piston **514** comprises a cylinder having an outer wall **600** that extends for a length of approximately 41.2 millimeters between a first end **602** and a second end **604**. A first bore **606** is formed in the piston for a selected distance from the first end toward the second end. For example, in the illustrated embodiment, the first bore has a depth (e.g., length toward the second end) of approximately 31.2 millimeters and has a base diameter of approximately 18.773 millimeters. A first portion **608** (FIG. **15**) of the first bore is threaded to form a 20×1.0 metric internal thread to a depth of approximately 20 millimeters in the first bore.

A second bore **610** (FIG. **15**) is formed from the second end **604** of the piston **514** toward the first end. The second bore has a base diameter of approximately 6.917 millimeters and has a length sufficient to extend the second bore to the cavity formed by the first bore (e.g., a length of approximately 10 millimeters in the illustrated embodiment). The second bore is threaded for its entire length to form an internal thread in the second bore. The internal thread of the second bore engages the external thread of the second interconnect rod **582** of the interconnection linkage **512**. Accordingly, in the illustrated embodiment, the second bore has an 8×1.0 metric internal thread.

A third bore **620** is formed in the piston **514** near the second end **604** of the piston. The third threaded bore extends radially inward from the outer wall **600** of the piston to the second threaded bore. In the illustrated embodiment, the third bore is threaded for the entire length of the bore. The third bore has an internal thread selected to engage a piston setscrew **622**, which is inserted into the third threaded

US 10,561,574 B1

11

bore. When the external thread of the second interconnect rod **582** of the flexible interconnection linkage **512** is fully engaged with the internal thread of the second bore **610** of the piston, the piston setscrew is rotated to cause the inner end of the setscrew to engage the external thread of the second interconnect rod within the second bore to inhibit the second interconnect rod from rotating out of engagement with the thread of the second bore.

The applicator head **516** of the reciprocating assembly **500** can be configured in a variety of shapes to enable a user to apply different types of percussive massage. The illustrated applicator head is "bullet-shaped" and is useful for apply percussive massage to selected relatively small surface areas of a body such as, for example, trigger points. In the illustrated embodiment, the applicator head comprises a medium hard to hard rubber material. The applicator head has an overall length from a first distal (application) end **650** to a second proximal (mounting) end **652** of approximately 55 millimeters. The applicator head has an outer diameter of approximately 25 millimeters for a length of approximately 32 millimeters along a main body portion **654**. An engagement portion **656** at the proximal (mounting) end of the applicator head has a length of approximately 11 millimeters and is threaded for a distance of approximately 9 millimeters to form an external 20×1.0 metric thread that is configured to engage the internal thread of the first bore **606** of the piston **514**. The thread of the applicator head is removably engageable with the thread of the piston to allow the applicator head to be removed and replaced with a different applicator head as described below. The distal (applicator) end of the applicator has a length of approximately 12 millimeters and tapers from the diameter of the main body portion (e.g., approximately 25 millimeters to a blunt rounded portion **658** having the shape of a truncated spherical cap. The spherical cap extends distally for approximately 3.9 millimeters. The spherical cap has a longitudinal of approximately 10 millimeters and a lateral radius of approximately 7.9 millimeters. In the illustrated embodiment, the applicator head has a hollow cavity **660** for a portion of the length from the proximal mounting end **652**. The cavity reduces the overall mass of the applicator head to reduce the energy required to reciprocate the applicator head as described below.

In the illustrated embodiment, percussive massage applicator **100** is assembled by positioning and securing the motor assembly **124** in the upper body portion **112** as described above. A cable (not shown) from the motor **310** in the motor assembly is connected to the five-pin second plug **172**.

After installing the motor assembly **300**, the reciprocation assembly **126** is installed in the enclosure **110** by first attaching the flexible interconnection linkage **512** to the crank engagement bearing holder **510** by threading the first threaded interconnect rod **580** into the longitudinal central bore **554**. The first threaded interconnect rod is secured within the longitudinal central bore by engaging the bearing holder setscrew **566** into the threaded radial bore **564**. The annular bearing **536** is installed within the cylindrical cavity **534** of the bearing bracket and is secured therein by positioning the lower end wall **538** over the bearing and securing the lower end wall with the screws **548**. It should be understood that the annular bearing can be installed either before or after the bearing bracket is attached to the flexible linkage.

The crank engagement bearing holder **510** and the connected flexible interconnection linkage **512** are installed by positioning the central bore **542** of the annular bearing **536**

12

over the cylindrical crank pivot **370** of the eccentric crank **360** with the flexible interconnection linkage aligned with the longitudinal axis **116**. The second threaded interconnect rod **582** is directed toward the bore **424** of the cylinder body **422** within the cylindrical outer sleeve **400** at the distal end of the percussive massage applicator **100**.

The applicator head **516** is attached to the piston **514** by threading the engagement portion **656** of the applicator head into the threaded first portion **608** of the piston. The interconnected applicator head and piston are then installed through the bore **424** of the cylinder body **422** to engage the second bore **610** of the piston with the second threaded interconnector rod **582** of the flexible interconnection linkage **512**. The interconnected applicator head and the piston are rotated within the bore of the cylinder body to thread the second bore of the piston onto the second threaded interconnect rod. When the second bore and the second threaded interconnector rod are fully engaged as shown in FIG. **7**, for example, the piston setscrew **622** is threaded into the third bore **620** of the piston to engage the threads of the second threaded interconnect rod of the flexible linkage to secure the piston to the flexible linkage. In the illustrated embodiment, the interconnected threads of the piston and the second threaded interconnect rod are configured such that the third bore of the piston is directed generally downward as shown in FIG. **7** and is thereby accessible to tighten the piston setscrew within the third bore. After the piston is secured to the flexible linkage, the applicator head may be unthreaded from the piston without unthreading the piston from the flexible linkage to allow the applicator head to be removed and replaced without having to remove the piston.

After installing the reciprocation assembly **126**, as described above, the lower body portion **114** is installed by aligning the lower body portion with the upper body portion **112** and securing the two body portions together using the screws **184** (FIG. **5**). The main body endcap **140** is then placed over the proximal ends of the two body portions to engage the protrusions **142** of the endcap with the L-shaped notches **146** of the two body portions. The endcap is then secured to prevent inadvertent removal by inserting the screw **148** through the bore **150** and into the material of the lower body portion.

The battery assembly **132** is installed in the battery assembly receiving enclosure **130** of the lower body portion **114** of the percussive massage applicator **100** and electrically and mechanically engaged as described above. The battery assembly may be charged while installed; or the battery assembly may be charged while removed from the percussive massage applicator.

The operation of the percussive massage applicator **100** is illustrated in FIGS. **16-19**, which are views looking up at the motor assembly in the upper body portion **112** with the lower cover **114** and the battery assembly **132** removed. In FIG. **16**, the eccentric crank **360** attached to the shaft **312** of the motor **310** is shown at a first reference position, which is designated as the 12 o'clock position. In this first reference position, the cylindrical crank pivot **370** on the outer surface **366** of the eccentric crank is at a most proximal location (nearest the top of the illustration in FIG. **16**). The crank pivot is positioned in alignment with the longitudinal axis **116**. The crank engagement bearing holder **510**, the flexible interconnection linkage **512**, the piston **514** and the applicator head **516** are all aligned with the longitudinal axis. In this first position, the distal end of the applicator head extends by a first distance D1 from the distal end of the outer sleeve **400**.

US 10,561,574 B1

13

In FIG. **17**, the shaft **312** of the motor **300** has rotated the eccentric crank **360** clockwise 90 degrees (as viewed in FIGS. **16-19**). Accordingly, the cylindrical crank pivot **370** on the eccentric crank is now positioned to the right of the shaft of the motor at a second position designated as the 3 o'clock position. The central bore **542** of the annular bearing **536** within the crank engagement bearing holder **510** must move to the right because of the engagement with the cylindrical crank pivot. The piston **514** is constrained by the bore **424** of the cylinder body **422** (FIGS. **12-13**) to remain aligned with the longitudinal axis **116**. The second end **572** of the flexible interconnection linkage **512** remains aligned with the piston because of the second threaded interconnect rod **582**. The first end **570** of the flexible interconnection linkage remains aligned with the crank engagement bearing holder **510** because of the first threaded interconnect rod **580**. The smaller middle portion **574** of the flexible interconnection linkage allows the flexible interconnection to bend to the right to allow the crank engagement bearing holder to tilt to the right as shown. In addition to moving to the right and away from the longitudinal axis, the cylindrical crank pivot has also moved distally away from the proximal end of the percussive massage applicator **100**, which causes the crank engagement bearing holder to also move distally. The distal movement of the crank engagement bearing holder is coupled to the piston via the flexible interconnector to push the piston longitudinally within the cylinder. The longitudinal movement of the piston causes the applicator head **516** to extend further outward to a second distance D2 from the distal end of the outer sleeve **400**. The second distance D2 is greater than the first distance D1.

In FIG. **18**, the shaft **312** of the motor **310** has rotated the eccentric crank **360** clockwise an additional 90 degrees to a position designated as the 6 o'clock position. Accordingly, the cylindrical crank pivot **370** is again aligned with the longitudinal axis **116**. The crank engagement bearing holder **510** and the flexible interconnection linkage **512** have returned to the initial straight-line configuration in alignment with the piston **514**. The cylindrical crank pivot has moved further from the proximal end of the percussive massage applicator **100**. Thus, the crank engagement bearing holder and the flexible interconnection linkage push the piston longitudinally within the bore **424** of the cylinder body **422** to cause the applicator head **516** to extend further outward to a third distance D3 from the distal end of the outer sleeve **400**. The third distance D3 is greater than the second distance D2.

In FIG. **19**, the shaft **312** of the motor **310** has rotated the eccentric crank **360** clockwise an additional 90 degrees. Accordingly, the cylindrical crank pivot **370** is now positioned to the left of the shaft of the motor at a fourth position designated as the 9 o'clock position. The piston **514** is constrained by the bore **424** of the cylinder body **422** to remain aligned with the longitudinal axis **116**. The smaller middle portion **574** of the flexible interconnection linkage **512** allows the flexible interconnection linkage to bend to the left to allow the crank engagement bearing holder **510** to tilt to the left as shown. In addition to moving to the left and away from the longitudinal axis, the cylindrical crank pivot has also moved proximally toward the proximal end of the percussive massage applicator **100**. The proximal movement pulls the piston longitudinally within the cylinder to cause the applicator head **516** to retreat proximally to a fourth distance D4 from the distal end of the outer sleeve **400**. The fourth distance D4 is less than the third distance D2 and is substantially the same as the second distance D2.

14

A further rotation of the shaft **312** of the motor **310** by an additional 90 degrees clockwise returns the eccentric crank **360** to the original 12 o'clock position shown in FIG. **16** to return the cylindrical crank pivot **370** to the most proximal location. This further rotation causes the distal end of the applicator head **516** to retreat to the original first distance D1 from the outer sleeve **400**. Continued rotation of the shaft of the motor causes the distal end of the applicator head to repeatedly extend and retreat with respect to the outer sleeve. By placing the distal end of the applicator head on a body part to be massaged, the applicator head applies percussive treatment to the selected body part.

In the illustrated embodiment, the axis of the cylindrical crank pivot **370** is located approximately 2.8 millimeters from the axis of the shaft **312** of the motor **310**. Accordingly, the cylindrical crank pivot moves a total longitudinal distance of approximately 5.6 millimeters from the 12 o'clock position of FIG. **16** to the 6 o'clock position of FIG. **18**. This results in a 5.6-millimeter stroke distance of the distal end of the applicator head **516** from the fully retracted first distance D1 to the fully extended third distance D3.

Conventional linkage systems between a crank and a piston have two sets of bearings. A first bearing (or set of bearings) couples a first end of a drive rod to a rotating crank. A second bearing (or set of bearings) couples a second end of a drive rod to a reciprocating piston. When the piston reaches each of the two extremes of the reciprocating motion, the piston must abruptly change directions. The stresses caused by the abrupt changes in direction are applied against the bearings at each end of the drive rod as well as to the other components in the linkage system. The abrupt changes of direction also tend to generate substantial noise.

The reciprocating linkage system **126** described herein eliminates a second bearing (or set of bearings) at the piston **514**. The piston is linked to the other components of the linkage via the flexible interconnection linkage **512**, which bends as the cylindrical crank pivot **370** rotates about the centerline of the shaft **312** of the motor **300**. The flexible interconnect cushions the abrupt changes in direction at each end of the piston stroke. For example, as the applicator head **516** and the piston reverse direction from distal movement to proximal movement at the 6 o'clock position, the flexible interconnect may stretch by a small amount during the transition. The stretching of the flexible interconnect reduces the coupling of energy through the linkage system to the bearing **536** (FIG. **14**) and the cylindrical crank pivot. Similarly, as the applicator head and the piston reverse direction from proximal movement to distal movement at the 12 o'clock position, the flexible interconnect may compress by a small amount during the transition. The compression of the flexible interconnect reduces the coupling of energy though the linkage system to the bearing and the cylindrical crank pivot. Thus, in addition to eliminating the bearing at the piston end of the linkage system, the flexible interconnect also reduces the stress on the bearing at the crank end of the linkage system.

The flexible interconnection linkage **512** in the linkage assembly **126** also reduces the noise of the operating percussive massage applicator **100**. The effectively silent stretching and compressing of the flexible interconnect when the reciprocation reverses direction at the 6 o'clock and 12 o'clock positions, respectively, eliminates the conventional metal-to-metal interaction that would occur if the linkage system were coupled to the piston **514** with a conventional bearing.

US 10,561,574 B1

15

As discussed above, the bullet-shaped applicator head 516 is removably threaded onto the piston 514. The bullet-shaped applicator head may be unscrewed from the piston and replaced with a spherical-shaped applicator head 700, shown in FIG. 20. A spherical-shaped distal end portion 702 of the applicator head extends from an applicator main body portion 704, which corresponds to the main body portion 654 of the bullet-shaped applicator head. The spherical-shaped applicator head includes an engagement portion (not shown) corresponding to the engagement portion 656 of the bullet-shaped applicator head. The spherical-shaped applicator head may be used to apply percussive massage to larger areas of the body to reduce the force on the treated area and to allow the angle of application to be varied.

The bullet-shaped applicator head 516 may also be unscrewed and replaced with a disk-shaped applicator head 720 shown in FIG. 21. A disk-shaped distal end portion 722 of the applicator head extends from an applicator main body portion 724, which corresponds to the main body portion 654 of the bullet-shaped applicator head. The disk-shaped applicator head includes an engagement portion (not shown) corresponding to the engagement portion 656 of the bullet-shaped applicator head. The disk-shaped applicator head may be used to apply percussive massage to a larger area of the body to reduce the force on the treated area.

The bullet-shaped applicator head 516 may also be unscrewed and replaced with a Y-shaped applicator head 740 shown in FIG. 22. A Y-shaped distal end portion 742 of the applicator head extends from an applicator main body portion 744, which corresponds to the main body portion 654 of the bullet-shaped applicator head. The Y-shaped applicator head includes an engagement portion (not shown) corresponding to the engagement portion 656 of the bullet-shaped applicator head. The Y-shaped applicator head includes an applicator base 750. A first finger 752 and a second finger 752 extend from the applicator base and are spaced apart as shown. The two fingers of the Y-shaped applicator head may be used to apply percussive massage to muscles on both sides of the spine without applying direct pressure to the spine.

The portable electromechanical percussive massage applicator 100 may be provided with power and controlled in a variety of manners. FIG. 23 illustrates an exemplary battery control circuit 800, which comprises in part the circuitry mounted on the battery controller PCB 252. In FIG. 23, previously identified elements are numbered with like numbers as before.

The battery control circuit 800 includes the power adapter input jack 254. In the illustrated embodiment, the input power provided to the jack as a DC input voltage of approximately 30 volts DC. Other voltages may be used in other embodiments. The input voltage is provided with respect to a circuit ground reference 810. The input voltage is applied across a voltage divider circuit comprising a first voltage divider resistor 820 and a second voltage divider resistor 822. The resistances of the two resistors are selected to provide a signal voltage of approximately 5 volts when the DC input voltage is present. The signal voltage is provided through a high resistance voltage divider output resistor 824 as a DCIN signal.

The DC input voltage is provided through a rectifier diode 830 and a series resistor 832 to a DC input bus 834. The rectifier diode prevents damage to the circuitry if the polarity of the DC input voltage is inadvertently reversed. The voltage on the DC input bus is filtered by an electrolytic capacitor 836.

16

The DC input voltage on the DC input bus 834 is provided through a 10-volt Zener diode 840 and a series resistor 842 to the voltage input of a voltage regulator 844. The input of the voltage regulator is filtered by a filter capacitor 846. In the illustrated embodiment, the voltage regulator is a HT7550-1 voltage regulator, which is commercially available from Holtek Semiconductor, Inc., of Taiwan. The voltage regulator provides an output voltage of approximately 5 volts on a VCC bus 848, which is filtered by a filter capacitor 850.

The voltage on the VCC bus is provided to a battery charger controller 860. The controller receives the DCIN signal from the voltage divider output resistor 824. The battery charger controller is responsive to the active high state of the DCIN signal to operate in the manner described below to control the charging of the battery unit 214. When the DCIN signal is low to indicate that the charging voltage is not present, the controller does not operate.

The battery charger controller 860 provides a pulse width modulation (PWM) output signal to the input of a buffer circuit 870, which comprises a PNP bipolar transistor 872 having a collector connected to the circuit ground reference 810. The PNP transistor has an emitter connected to the emitter of an NPN bipolar transistor 874. The bases of the two transistors are interconnected and form the input to the buffer circuit. The two transistor bases are connected to receive the PWM output signal from the controller. The commonly connected bases are also connected to the commonly connected emitters via a base-emitter resistor 876. The collector of the NPN connected to the VCC bus 848.

The commonly connected emitters of the PNP transistor 872 and the NPN transistor 874 are connected to an anode of a protection diode 878. A cathode of the protection diode is connected to the VCC bus 848. The protection diode prevents the voltage on the commonly connected emitters from exceeding the voltage on the VCC bus by more than one forward diode drop (e.g., approximately 0.7 volt). The commonly connected emitters of the two transistors are also connected through a resistor 880 to a first terminal of a coupling capacitor 882. A second terminal of the coupling capacitor is connected to a gate terminal of a power metal oxide semiconductor transistor (MOSFET) 884. In the illustrated embodiment, the MOSFET comprises an STP9527 P-Channel Enhancement Mode MOSFET, which is commercially available from Stanson Technology in Mountain View, Calif. The gate terminal of the MOSFET is also connected to an anode of a protection diode 886, which has a cathode connected a source (S) terminal of the MOSFET. The protection diode prevents the voltage on the gate terminal from exceeding the voltage on the source terminal by more than the forward diode voltage of the protection diode (e.g., approximately 0.7 volt). The gate terminal of the MOSFET is also connected to the source terminal of the MOSFET by a pull-up resistor 888. The source of the MOSFET is connected to the DC input bus 834.

A drain (D) of the MOSFET 884 is connected to an input node 892 of a buck converter 890. The buck converter further includes an inductor 894 connected between the input node and an output node 896. The output node (also identified as VBAT) is connected to a positive terminal of the battery unit 214. A negative terminal of the battery unit is connected to the circuit ground 810 via a low-resistance current sensing resistor 900. The input node is further connected to a cathode of a free-wheeling diode 902, which has an anode connected to the circuit ground. A first terminal of a resistor 904 is also connected to the input node. A second terminal of the resistor is connected to a first terminal

17

of a capacitor 906. A second terminal of the capacitor is connected to the circuit ground. Accordingly, a complete circuit path is provided from the circuit ground, through the free-wheeling diode, through the inductor, through the battery unit, and through the current sensing resistor back to the circuit ground.

The battery charger controller 860 controls the operation of the buck converter 890 by applying an active low pulse on the PWM output connected to the buffer circuit 870, which responds by pulling down the voltage on the commonly connected emitters of the two transistors 872, 874 to a voltage near the ground reference potential. The low transition to the ground reference potential is coupled through the resistor 880 and the coupling capacitor 882 to the gate terminal of the MOSFET 884 to turn on the MOSFET and couple the DC voltage on the DC input bus 834 to the input node 892 of the buck converter 890. The DC voltage causes current to flow though the inductor 894 to the battery unit 214 to charge the battery unit. When the PWM signal from the battery charger controller is turned off (returned to an inactive high state), the MOSFET is turned off and no longer provides a DC voltage to the input node of the buck converter; however, the current flowing in the inductor continues to flow through the battery unit and back through the free-wheeling diode as the inductor discharges to continue charging the battery unit until the inductor is discharged. The width and repetition rate of the active low pulses generated by the battery charger controller determine the current applied to charge the battery unit in a known manner. In the illustrated embodiment, the PWM signal has a nominal repetition frequency of approximately 62.5 kHz.

The battery charger controller 860 controls the width and repetition rate of the pulses applied to the MOSFET 894 in response to feedback signals from the battery unit 214. A battery voltage sensing circuit 920 comprises a first voltage feedback resistor 922 and a second voltage feedback resistor 924. The two resistors are connected in series from the output node 896 to the circuit ground 810 and are thus connected across the battery unit. A common voltage sensing node 926 of the two resistors is connected to a voltage sensing (VSENSE) input of the controller. The battery charger controller monitors the voltage sensing input to determine the voltage across the battery unit to determine when the battery unit is at or near a maximum voltage of approximately 25.2 volts such that the charging rate should be reduced. In the illustrated embodiment, a filter capacitor 928 is connected from the voltage sensing node to the circuit ground to reduce noise on the voltage sensing node.

As described above, the negative terminal of the battery unit 214 is connected to the circuit ground 810 via the low-resistance current sensing resistor 900, which may have a resistance of, for example, 0.1 ohm. A voltage develops across the current sensing resistor proportional to the current flowing through the battery unit when charging. The voltage is provided as an input to a current sensing (ISENSE) input of the battery charger controller 860 via a high-resistance (e.g., 20,000-ohm) resistor 930. The current sensing input is filtered by a filter capacitor 932. The battery charger controller monitors the current flowing through the battery unit and thus through the current sensing resistor to determine when the current flow decreases as the charge on the battery unit nears a maximum charge. The battery charger controller may also respond to a large current through the battery unit and reduce the pulse width modulation to avoid exceeding a maximum magnitude for the charging current.

The output node 896 of the buck converter 890 is also the positive voltage node of the battery unit 214. The positive

18

battery voltage node is connected to a first terminal 940 of the on-off switch 256. A second terminal 942 of the on-off switch is connected to a voltage output terminal 944, which is identified as VOUT. The voltage output terminal is connected to the first contact 206A of the battery assembly 132. The first contact of the battery assembly engages the first leaf spring contact 204A when the battery assembly is inserted into the battery receiving tray 200. When the switch is closed, the first terminal and the second terminal of the switch are electrically connected to couple the battery voltage to the voltage output terminal. The voltage output terminal is coupled to an output voltage sensing circuit 950, which comprises a first voltage divider resistor 952 and a second voltage divider resistor 954 connected in series between the voltage output terminal and the circuit ground. A common node 956 between the two resistors is connected to a VOUT sensing input of the battery charger controller 860. The common node is also connected to the circuit ground by a Zener diode 958, which clamps the voltage at the common node to no more than 4.7 volts. The resistances of the two resistors are selected such that when the switch is closed and the output voltage is applied to the output terminal, the voltage on the common node and the VOUT sensing input of the controller is approximately 4.7 volts to indicate that the switch is closed and that the battery voltage is being provided to the selected terminal of the battery assembly.

A second contact 206B of the battery assembly 132 is connected to a battery charge (CHRG) output signal of the battery charger controller 860 via a signal line 960. The battery charge output signal is an analog signal having a magnitude indicative of the charging state of the battery unit 214. The second battery assembly contact engages the second leaf spring contact 204B when the battery assembly is inserted into the battery receiving tray 200.

A third contact 206C of the battery assembly 132 is connected to the negative terminal of the battery unit 214 via a line 970 and is identified as the battery ground (GND) that is provided to the motor control PCB 160 as described below. Note that the battery ground is coupled to the circuit ground by the 0.1-ohm current sensing resistor 900. The current flowing out of the positive terminal of the battery unit to the motor control PCB and back to the negative terminal of the battery unit does not flow through the current sensing resistor. The third battery assembly contact engages the third leaf spring contact 204C when the battery assembly is inserted into the battery receiving tray 200.

The battery charger controller 860 drives the dual-color LEDs 260 on the battery controller PCB. The controller includes a first output (LEDR) that drives the red-emitting LEDs in the dual-color LEDs and includes a second output (LEDG) that drives the green-emitting LED in the dual-color LEDs. A first current limiting resistor 980 couples the first output to the anodes of the red-emitting LEDs in a first set of three dual-color LEDs. A second current limiting resistor 982 couples the second output to the anodes of the green-emitting LEDs in the first set of three dual-color LEDs. A third current limiting resistor 984 couples the first output to the anodes of the red-emitting LEDs in a second set of three dual-color LEDs. A fourth current limiting resistor 986 couples the second output to the anodes of the green-emitting LEDs in the second set of three dual-color LEDs.

In the illustrated embodiment, the dual-color LEDs 260 are driven with different duty cycles to indicate the present state of charge of the battery unit 214. For example, in a first state, the first output (LEDR) of the controller 860 is driven with a 100 percent duty cycle and the second output (LEDG)

US 10,561,574 B1

19

of the controller is not driven such that only the red-emitting LEDs are illuminated to indicate that the battery unit needs be charged. In a second state, the first output is driven with a 75 percent duty cycle and the second output is driven with a 25 percent duty cycle such that the resulting perceived color is a mixture of red and green. In a third state, the first output and the second output are both driven with a respective 50 percent duty cycle. In a fourth state, the first output is driven with a 25 percent duty cycle and the second output is driven with a 75 percent duty cycle. In a fifth state, the first output is not driven and the second output is driven with a 100 percent duty cycle such that the color is entirely green to indicate that the battery unit is at or near a fully charged state. The duty cycles at which the two outputs are driven may be interleaved such that the two outputs are not on at the same time. Other than at the first state, the duty cycles are repeated at a rate sufficiently high that the enabled LEDs appear to be on at all times without a perceptible flicker. When the battery controller is in the first state, the battery controller may blink the red-emitting LEDS on and off at a perceptible rate to remind the user that the charge on the battery is low and should be charged before continuing to use the percussive massage applicator 100. In certain embodiments, the first state may be further segmented into two charge ranges. In a first range of charges within the first state, the red LEDs are driven with a constant illumination to indicate that the charge on the charge on the battery unit is low and that the battery unit should be charged soon. In a second range of charges, the red LEDs are blinked to indicate that the charge in the battery unit is very low and that the battery unit should be charged promptly.

FIG. 24 illustrates an exemplary motor controller circuit 1000, which comprises in part the circuitry mounted on the motor controller PCB 160. In FIG. 24, previously identified elements are numbered with like numbers as before. As described above, the battery assembly 132 provides the positive battery output voltage VOUT on the first leaf spring contact 204A of the receiving tray 200 when the battery assembly is inserted into the receiving tray. The positive battery output voltage is identified as VBAT in FIG. 24. The CHRG signal from the battery assembly is provided to the second leaf spring contact 204B when the battery assembly is inserted into the receiving tray. The battery ground (GND) is provided to the third leaf spring contact 204C when the battery assembly is inserted into the receiving tray. The DC voltage, the battery ground and the CHRG signal are coupled via a three-wire cable 1010 to a cable jack 1012. The first plug 170 on the motor controller PCB plugs into the cable jack to receive the DC voltage on a first pin 1020, to receive the CHRG signal on a second pin 1022, and to receive the battery ground (GND) on a third pin 1024. The battery ground (GND) from the third pin of the first plug is electrically connected to a local circuit ground 1026.

The DC voltage (VBAT) on the first pin 1020 of the first plug 170 is filtered by a filter capacitor 1030 connected between the first pin of the first plug and the local circuit ground 1026. The DC voltage is also provided to a first terminal of a current limiting resistor 1032. A second terminal of the current limiting resistor is provided to the voltage input terminal of a voltage regulator 1040. The voltage regulator receives the battery voltage and converts the battery voltage to 5 volts. The 5-volt output of the voltage regulator is provided on a local VCC bus 1042. The local VCC bus is filtered by a filter capacitor 1044, which is connected between the local VCC bus and the local circuit ground. In the illustrated embodiment, the voltage regulator is a 78L05 three-terminal regulator, which is commercially

20

available from a number of manufacturers, such as, for example, National Semiconductor Corporation of Santa Clara, Calif.

The CHRG signal on the second pin 1022 of the first plug 170 is provided to a charge (CHRG) input of a motor controller 1050 via a series resistor 1052. The charge input to the motor controller is filtered by a filter capacitor 1054. The motor controller receives the 5 volt supply voltage from the VCC bus 1042

The DC voltage from the first pin 1020 of the first plug is also provided directly to a first pin 1060 of the five-pin second plug 172. The second plug 172 is connectable to a second jack 1070 having a corresponding number of contacts. The second jack is connected via a five-wire cable 1072 to the motor 310.

A second pin 1080 of the second plug is a tachometer (TACH) pin, which receives a tachometer signal from the motor 310 indicative of the present angular velocity of the motor. For example, the tachometer signal may comprise one pulse for every revolution of the shaft 312 of the motor or one pulse per partial revolution. The tachometer signal is provided to a first terminal of a first resistor 1084 in a voltage divider circuit 1082. A second terminal of the first resistor is connected to a first terminal of a second resistor 1086 in the voltage divider circuit. A second terminal of the second resistor is connected to the local circuit ground. A common node 1088 between the first and second resistors in the voltage divider circuit is connected to the base of an NPN bipolar transistor 1090. An emitter of the NPN transistor is connected to ground. A collector of the NPN transistor is connected to the VCC bus 1042 via a pull-up resistor 1092. The NPN transistor inverts and buffers the tachometer signal from the motor and provides the buffered signal to a TACH input of the motor controller. The buffered signal varies between +5 volts (VCC) and the local circuit ground potential. The tachometer signal varies between the local circuit ground potential and the DC voltage potential from the battery.

A third pin 1100 of the second plug 172 is a clockwise/counterclockwise (CW/CCW) signal generated by the motor controller 1050 and coupled to the third pin via a current limiting resistor 1102. The state of the CW/CCW signal determines the rotational direction of the motor 310. In the illustrated embodiment, the CW/CCW signal is maintained at a state to cause clockwise rotation; however, the rotation can be changed to the opposite direction in other embodiments.

A fourth pin 1110 of the second plug 172 is connected to the local circuit ground 1026, which corresponds to the battery ground connected to the negative terminal of the battery unit 214 in FIG. 23.

A fifth pin 1120 of the second plug 172 receives a pulse width modulation (PWM) signal generated by the motor controller 1050. The PWM signal is coupled to the fifth pin via a current limiting resistor 1122. The motor 310 is responsive to the duty cycle and the frequency of the PWM signal to rotate at a selected angular velocity. As described below, the motor controller controls the PWM signal to maintain the angular velocity at one of three selected rotational speeds.

The motor controller 1050 has a switch-in (SWIN) input that receives an input signal from the pushbutton switch 162. The pushbutton switch has a first contact connect to the local circuit ground 1026 and has a second contact connected to the VCC bus 1042 via a pull-up resistor 1130. The second contact is also connected to the local circuit ground via a filter capacitor 1132. The second is also connected to the

US 10,561,574 B1

21

SWIN input of the motor controller. The input signal is held high by the pull-up resistor until the switch contacts are closed by actuating the pushbutton switch. When the switch is actuated to close the contacts, the input signal is pulled to 0 volts (e.g., the potential on the local circuit ground). The filter capacitor reduces the switch contact bounce noise. The motor controller may include internal debounce circuitry to eliminate the effects of the switch contact bounce. The motor controller is initialized in an off-state wherein no PWM signal is provided to the motor **310**, and the motor does not rotate. The motor controller is responsive to a first activation of the switch to advance from the off-state to a first on-state wherein the PWM signal provided to the motor is selected to cause the motor to rotate at a first (low) speed. A subsequent activation of the switch advances the motor controller to a second on-state wherein the PWM signal provided to the motor is selected to cause the motor to rotate at a second (medium) speed. A subsequent activation of the switch advances the motor controller to a third on-state wherein the PWM signal provided to the motor is selected to cause the motor to rotate at a third (high) speed. A subsequent activation of the switch returns the motor controller to the initial off-state wherein no PWM signal is provided to the motor and the motor does not rotate. In the illustrated embodiment, the three rotational speeds of the motor are 2,000 rpm (low), 2,600 rpm (medium) and 3,000 rpm (high).

The motor controller **1050** generates a nominal PWM signal associated with the currently selected on-state (e.g., low, medium or high speed). Each on-state corresponds to a selected rotational speed as described above. The motor controller monitors the tachometer signal (TACH) received from the pin **1080** of the five-pin plug **172** via the voltage divider **1082** and the NPN transistor **1100**. If the received tachometer signal indicates that the motor speed is below the selected speed, the motor controller adjusts the PWM signal (e.g. increases the pulse width or increases the repetition rate or both) to increase the motor speed. If the received tachometer signal indicates that the motor speed is above the selected speed, the motor controller adjusts the PWM signal (e.g. decreases the pulse width or decreases the repetition rate or both) to decrease the motor speed.

The motor controller **1050** generates a first set of three LED control signals (LEDS**1**, LEDS**2**, LEDS**3**). The first signal (LEDS**1**) in the first set is coupled via a current limiting resistor **1150** to the first speed indication LED **166**A. The first signal in the first set is activated to illuminate the first speed indication LED when the motor controller is in the first on-state to drive the motor at the first (low) speed. The second signal (LEDS**2**) in the first set is coupled via a current limiting resistor **1152** to the second speed indication LED **166**B. The second signal in the first set is activated to illuminate the second speed indication LED when the motor controller is in the second on-state to drive the motor at the second (medium) speed. The third signal (LEDS**3**) in the first set is coupled via a current limiting resistor **1154** to the third speed indication LED **166**C. The third signal in the first set is activated to illuminate the third speed indication LED when the motor controller is in the third on-state to drive the motor at the third (high) speed.

The motor controller **1050** is further responsive to the CHRG signal from the input plug **170**. As discussed above, the CHRG signal is generated by the battery charger controller **860** to indicate the state of charge of the battery unit **214**. The motor controller determines the present state of charge of the battery unit from the CHRG input signal and displays the state of charge on the five battery charge state

22

LEDs **168**A, **168**B, **168**C, **168**D, **168**E which are visible through the main body endcap **140**. The motor controller generates a second set of five LED control signals (LEDC**1**, LEDC**2**, LEDC**3**, LEDC**4**, LEDC**5**). The first signal (LEDC**1**) in the second set is coupled via a current limiting resistor **1170** to the first charge LED **168**A. The first signal in the second set is activated to illuminate the first charge indication LED when the battery unit has a lowest range of charge. The motor controller may blink the first charge indication LED at a perceptible rate to indicate the lowest range of charge. The color (e.g., red) of the light emitted by the first charge LED may differ from the color (e.g., green) of the light emitted by the other LEDS to further indicate the lowest range of charge (e.g., no more than 20 percent of charge remaining). The second signal (LEDC**2**) in the second set is coupled via a current limiting resistor **1172** to the second charge indication LED **168**B. The second signal in the second set is activated to illuminate the second charge indication LED when the battery unit has a second range of charge (e.g., 21-40 percent of charge remaining). The third signal (LEDC**3**) in the second set is coupled via a current limiting resistor **1174** to the third charge indication LED **168**C. The third signal in the second set is activated to illuminate the third charge indication LED when the battery unit has a third range of charge (e.g., 41-60 percent of charge remaining). The fourth signal (LEDC**4**) in the second set is coupled via a current limiting resistor **1176** to the fourth charge indication LED **168**D. The fourth signal in the second set is activated to illuminate the fourth charge indication LED when the battery unit has a fourth range of charge (e.g., 61-80 percent of charge remaining). The fifth signal (LEDC**5**) in the second set is coupled via a current limiting resistor **1178** to the fifth charge indication LED **168**B. The fifth signal in the second set is activated to illuminate the fifth charge indication LED when the battery unit has a fifth range of charge (e.g., 81-100 percent of charge remaining). It should be understood that the ranges of charge are only approximations and are provided as examples.

The portable electromechanical percussive massage applicator **100** described herein advantageously allows a massage therapist to effectively apply percussion massage over an extended time duration without excessive tiring and without being tethered to an electrical power cord. The reduced noise level of the portable electromechanical percussive massage applicator described herein allows the device to be used in quiet environment such that the person being treated with the device is able to relax and enjoy any ambient music or other soothing sounds provided in the treatment room.

As various changes could be made in the above constructions without departing from the scope of the invention, it is intended that all the matter contained in the above description or shown in the accompanying drawings shall be interpreted as illustrative and not in a limiting sense.

What is claimed is:
1. A battery-powered percussive massage device comprising:
    a main enclosure extending along a longitudinal axis, the main enclosure having a proximal end and a distal end, the main enclosure including a longitudinal cavity;
    a motor having a rotatable shaft;
    a reciprocation assembly coupled to the rotatable shaft, the reciprocation assembly including a piston, the reciprocation assembly configured to reciprocate the piston along a reciprocation axis in response to rotation

US 10,561,574 B1

23

of the rotatable shaft, the reciprocation assembly position within the longitudinal cavity of the main enclosure;

an applicator head having a proximal end removably attachable to the piston, and having a distal end that extends from the distal end of the main enclosure when the proximal end of the applicator is attached to the piston;

a battery assembly receiving enclosure extending from the main enclosure;

a battery assembly receiving tray within the longitudinal cavity of the main enclosure, the battery assembly receiving tray aligned with the battery receiving enclosure, the battery assembly receiving tray having an inner perimeter, the battery assembly receiving tray having at least a first electrical contact and a second electrical contact positioned within the inner perimeter; and

a battery assembly having a free end and a contact end, the contact end of the battery assembly having an outer perimeter, the contact end of the battery assembly having at least a first electrical contact and a second electrical contact positioned on the outer perimeter to engage the first electrical contact and the second electrical contact respectively of the battery assembly receiving tray, the battery assembly having an outer gripping surface positioned between the contact end and the free end.

**2**. The battery-powered percussive massage device of claim **1**, wherein the battery assembly extends from the battery assembly receiving enclosure when the battery assembly is engaged with the battery assembly receiving tray.

**3**. The battery-powered percussive massage device of claim **2**, wherein the battery assembly extends in a direction perpendicular to the reciprocation axis.

**4**. The battery-powered percussive massage device of claim **1**, wherein the outer gripping surface of the battery assembly is cylindrical.

**5**. The battery-powered percussive massage device of claim **1**, wherein the free end of the battery assembly includes a power switch, the power switch operable to selectively connect and to selectively disconnect electrical power from the battery assembly to the main enclosure.

**6**. The battery-powered percussive massage device of claim **1**, wherein proximal end of the main enclosure includes a control switch, the control switch operable to select between at least a first rotational speed and a second rotational speed of the motor.

**7**. The battery-powered percussive massage device of claim **1**, wherein proximal end of the main enclosure includes at least a first display and a second display, the first display displaying an indication of a rotational speed of the motor, the second display displaying an indication of a charging state of the battery assembly.

**8**. The battery-powered percussive massage device of claim **7**, wherein the first display comprises a first plurality of light-emitting diodes (LEDs) and the second display comprises a second plurality of LEDs.

**9**. The battery-powered percussive massage device of claim **1**, wherein the battery assembly includes a charging indicator between the outer gripping surface and the free end, the charging indicator having at least a first display state to indicate a first charge condition of the battery assembly and a second display state to indicate a second charge state of the battery assembly.

24

**10**. A method of massaging a body part using a battery-powered portable massage device having a main enclosure that houses a motor, the main enclosure having a proximal end and a distal end, the main enclosure including a longitudinal cavity, the massage device having a piston that reciprocates along a reciprocation axis within the longitudinal cavity of the main enclosure in response to operation of the motor, the method comprising:

coupling a removable applicator head to the piston via the distal end of the main enclosure;

inserting a contact end of a battery assembly through a battery assembly receiving enclosure extending from the main enclosure;

engaging at least a first contact and a second contact on the contact end of the battery assembly with at least a respective first contact and a respective second contact of a battery assembly receiving tray within the longitudinal cavity of the main enclosure;

activating a power switch on a free end of the battery assembly to provide power to the main enclosure;

selectively activating a control switch on the proximal end of the main enclosure to select a rotational speed for the motor; and

gripping an outer gripping surface of the battery assembly between the contact end and the free end of the battery assembly, the outer gripping surface providing a handle to direct the application of the applicator head to a body part to be massaged.

**11**. The method of claim **10**, wherein the outer gripping surface of the battery assembly is cylindrical.

**12**. The method of claim **10**, wherein the outer gripping surface comprises neoprene.

**13**. The method of claim **10**, wherein the battery assembly extends perpendicularly to the reciprocation axis.

**14**. A battery-powered percussive massage device comprising:

a main housing that encloses a motor, the main housing extending between a proximal end and a distal end, the main housing including a longitudinal cavity, the main housing enclosing a piston that reciprocates along a reciprocation axis within the longitudinal cavity in response to operation of the motor;

an applicator head positioned at the distal end of the main housing and removably coupled to the piston, at least a portion of the applicator head exposed outside the distal end of the main housing;

a battery assembly receiving enclosure extending from the main housing at an angle with respect to the reciprocation axis;

a battery assembly receiving tray positioned within the longitudinal cavity of the main housing in alignment with the battery assembly receiving enclosure, the battery assembly receiving tray having at least a first electrical contact and a second electrical contact; and

a battery assembly having a contact end and a free end, the contact end positionable though the battery assembly receiving enclosure to engage the battery assembly receiving tray, the contact end supporting at least a respective first electrical contact to engage the first electrical contact of the battery assembly receiving tray and a respective second electrical contact to engage the second electrical contact of the battery assembly receiving tray, the battery assembly including an outer gripping surface positioned between the contact end and the free end, the outer gripping surface configured to be gripped by one hand.

US 10,561,574 B1

25

26

**15**. The battery-powered percussive massage device of claim **14**, wherein the battery assembly extends from the battery assembly receiving enclosure when the battery assembly is engaged with the battery assembly receiving tray within the main housing.

\*   \*   \*   \*   \*

# EXHIBIT 2

US010912708B2

(12) **United States Patent**　　(10) **Patent No.:　US 10,912,708 B2**
Marton et al.　　(45) **Date of Patent:　*Feb. 9, 2021**

---

(54) **BATTERY-POWERED PERCUSSIVE MASSAGE DEVICE**

(71) Applicant: **Hyper Ice, Inc.**, Irvine, CA (US)

(72) Inventors: **Robert Marton**, Yorba Linda, CA (US); **Anthony Katz**, Laguna Niguel, CA (US)

(73) Assignee: **Hyper Ice, Inc.**, Irvine, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/931,860**

(22) Filed: **Jul. 17, 2020**

(65) **Prior Publication Data**

US 2020/0352823 A1　Nov. 12, 2020

**Related U.S. Application Data**

(63) Continuation of application No. 15/902,542, filed on Feb. 22, 2018.

(51) **Int. Cl.**
*A61H 23/00*　(2006.01)
*A61H 23/02*　(2006.01)

(52) **U.S. Cl.**
CPC ....... *A61H 23/006* (2013.01); *A61H 23/0254* (2013.01); *A61H 2201/0153* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .. A61H 23/006; A61H 23/0254; A61H 23/06; A61H 2201/1669;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,088,128 A　5/1978　Mabuchi
4,513,737 A　4/1985　Mabuchi
(Continued)

FOREIGN PATENT DOCUMENTS

CN　2144503 Y　10/1993
CN　2540948 Y　3/2003
(Continued)

*Primary Examiner* — Colin W Stuart
*Assistant Examiner* — Douglas Y Sul
(74) *Attorney, Agent, or Firm* — Patterson Intellectual Property Law, P.C.; Jerry Turner Sewell

(57)　　**ABSTRACT**

A percussive massage device includes an enclosure having a cylindrical bore that extends along a longitudinal axis. A motor has a rotatable shaft that rotates about a central axis perpendicular to the longitudinal axis. A crank coupled to the shaft includes a pivot, which is offset from the central axis of the shaft. A transfer bracket has a first end portion coupled to the pivot of the crank. A flexible transfer linkage has a first end coupled to a second end portion of the transfer bracket. A piston has a first end coupled to a second end of the transfer linkage. The piston is constrained to move within a cylinder along the longitudinal axis of the cylindrical bore. An applicator head has a first end coupled to a second end of the piston and has a second end exposed outside the cylindrical bore for application to a person receiving treatment.

**18 Claims, 21 Drawing Sheets**



US 10,912,708 B2

Page 2

(52) **U.S. Cl.**
CPC ................ *A61H 2201/0157* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/149* (2013.01); *A61H 2201/1436* (2013.01); *A61H 2201/1669* (2013.01)

(58) **Field of Classification Search**
CPC ...... A61H 2201/0153; A61H 2201/149; A61H 2201/1215; A61H 2201/1436; A61H 2201/0157; A61H 2201/5043; A61H 2201/5046
USPC ................... 173/217; 320/DIG. 18–DIG. 21
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,549,535 A | 10/1985 | Wing | |
| 4,726,430 A | 2/1988 | Hendrikx et al. | |
| 4,790,296 A | 12/1988 | Segal | |
| 4,841,955 A | 6/1989 | Evans et al. | |
| 5,656,017 A | 8/1997 | Keller et al. | |
| 5,733,029 A | 3/1998 | Monroe | |
| 5,769,657 A | 6/1998 | Kondo et al. | |
| 6,228,042 B1 | 5/2001 | Dungan | |
| 6,682,496 B1 * | 1/2004 | Pivaroff ................. A61H 7/005 601/101 |
| 8,826,547 B2 | 9/2014 | Oberheim | |
| 8,841,871 B2 * | 9/2014 | Yang ................. G01R 31/3646 318/400.08 |
| 9,364,626 B2 * | 6/2016 | Carter ................. H01M 10/488 |
| 9,889,066 B2 | 2/2018 | Danby et al. | |
| 10,314,762 B1 | 6/2019 | Marton et al. | |
| 10,456,325 B2 | 10/2019 | Fan | |
| 10,492,984 B2 * | 12/2019 | Marton ............. A61H 23/0254 |
| 10,561,574 B1 * | 2/2020 | Marton ............. A61H 23/0263 |
| 2004/0254507 A1 | 12/2004 | Off | |
| 2006/0211961 A1 | 9/2006 | Meyer et al. | |
| 2006/0293711 A1 | 12/2006 | Keller et al. | |
| 2008/0262399 A1 | 10/2008 | Kovelman et al. | |
| 2009/0270915 A1 | 10/2009 | Tsai et al. | |
| 2010/0164434 A1 * | 7/2010 | Cacioppo ............. G06F 3/03545 320/115 |

| | | | |
|---|---|---|---|
| 2010/0274162 A1 | 10/2010 | Evans | |
| 2011/0017742 A1 | 1/2011 | Sausen et al. | |
| 2012/0038483 A1 * | 2/2012 | Du ........................... G08B 5/36 340/636.1 |
| 2012/0215141 A1 | 8/2012 | Peddicord | |
| 2012/0281392 A1 * | 11/2012 | Workman ............... H02J 7/35 362/183 |
| 2012/0296244 A1 | 11/2012 | Ceoldo et al. | |
| 2013/0261516 A1 | 10/2013 | Cilea | |
| 2013/0281897 A1 | 10/2013 | Hoffmann et al. | |
| 2014/0031866 A1 * | 1/2014 | Fuhr ..................... A61H 1/008 606/239 |
| 2015/0005682 A1 * | 1/2015 | Danby ............... A61H 23/0254 601/101 |
| 2015/0107383 A1 | 4/2015 | Duesselberg et al. | |
| 2015/0182415 A1 | 7/2015 | Olkowski et al. | |
| 2016/0151238 A1 * | 6/2016 | Crunick ............. A61H 23/0263 601/2 |
| 2016/0278436 A1 * | 9/2016 | Verleur ................. A24F 47/008 |
| 2016/0354277 A1 | 12/2016 | Fima | |
| 2016/0367425 A1 | 12/2016 | Wersland | |
| 2017/0027798 A1 | 2/2017 | Wersland | |
| 2017/0087379 A1 | 3/2017 | Sedic | |
| 2017/0333280 A1 | 11/2017 | Black | |
| 2018/0008512 A1 * | 1/2018 | Goldstein ............. A61N 2/002 |
| 2018/0168913 A1 | 6/2018 | Sedic | |
| 2018/0200141 A1 | 7/2018 | Wersland et al. | |
| 2020/0093945 A1 * | 3/2020 | Jeong ....................... A61L 2/26 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 2694966 Y | 4/2005 |
| CN | 101801326 A | 8/2010 |
| CN | 202459196 U | 10/2012 |
| CN | 202536467 U | 11/2012 |
| CN | 103655142 A | 3/2014 |
| CN | 205017429 U | 2/2016 |
| CN | 205268525 U | 6/2016 |
| CN | 206381389 U | 8/2017 |
| KR | 200311328 Y1 | 5/2003 |
| TW | M543692 U | 6/2017 |
| WO | 2009014727 A1 | 1/2009 |

* cited by examiner



FIG. 1



**FIG. 2**



*FIG. 3*



*FIG. 4A*

*FIG. 4B*



*FIG. 5*



*FIG. 6*



*FIG. 7*



*FIG. 8*



*FIG. 9*



*FIG. 10*



*FIG. 11A*          *FIG. 11B*



FIG. 12



*FIG. 13*



FIG. 14



FIG. 15



FIG. 17



FIG. 16



FIG. 19



FIG. 18



*FIG. 20*



*FIG. 21*



*FIG. 22*



FIG. 23



*FIG. 24*

US 10,912,708 B2

**1**

# BATTERY-POWERED PERCUSSIVE MASSAGE DEVICE

## RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 15/902,542, filed on Feb. 22, 2018, for "Battery-Powered Percussive Massage Device," which is incorporated herein in its entirety.

## FIELD OF THE INVENTION

The present invention is in the field of therapeutic devices, and, more particularly, is in the field of devices that apply percussive massage to selected portions of a body.

## BACKGROUND OF THE INVENTION

Percussive massage, which is also referred to as tapotement, is the rapid, percussive tapping, slapping and cupping of an area of the human body. Percussive massage is used to more aggressively work and strengthen deep-tissue muscles. Percussive massage increases local blood circulation and can even help tone muscle areas. Percussive massage may be applied by a skilled massage therapist using rapid hand movements; however, the manual force applied to the body varies, and the massage therapist may tire before completing a sufficient treatment regime.

Percussive massage may also be applied by electromechanical percussive massage devices (percussive applicators), which are commercially available. Such percussive applicators may include, for example, an electric motor coupled to drive a reciprocating piston within a cylinder. A variety of percussive heads may be attached to the piston to provide different percussive effects on selected areas of the body. Many of the known percussive applicators are expensive, large, relatively heavy, and tethered to an electrical power source. For example, some percussive applicators may require users to grip the applicators with both hands in order to control the applicators. Some percussive applicators are relatively noisy because of the conventional mechanisms used to convert the rotational energy of an electric motor to the reciprocating motion of the piston.

## SUMMARY OF THE INVENTION

A need exists for an electromechanical percussive massage device that is less costly, is small, has a relatively light weight, and is portable (e.g., untethered to an electrical power source). A further need exists for an electromechanical percussive massage device that is quitter (less noisy) than conventional devices.

One aspect of the embodiments disclosed herein is a percussive massage device that includes an enclosure having a cylindrical bore that extends along a longitudinal axis. A motor has a rotatable shaft that rotates about a central axis perpendicular to the longitudinal axis. A crank coupled to the shaft includes a pivot, which is offset from the central axis of the shaft. A transfer bracket has a first end portion coupled to the pivot of the crank. A flexible transfer linkage has a first end coupled to a second end portion of the transfer bracket. A piston has a first end coupled to a second end of the transfer linkage. The piston is constrained to move within a cylinder along the longitudinal axis of the cylindrical bore. An applicator head has a first end coupled to a second end

**2**

of the piston and has a second end exposed outside the cylindrical bore for application to a person receiving treatment.

Another aspect of the embodiments disclosed herein is a percussive massage device. The device comprises an enclosure having a cylindrical bore. The cylindrical bore extends along a longitudinal axis. A motor is positioned within the enclosure. The motor has a rotatable shaft having a central axis. The central axis of the shaft is perpendicular to the longitudinal axis of the cylindrical bore. A crank is coupled to the shaft. The crank includes a pivot, which is offset from the central axis of the shaft. A transfer bracket has a first end portion coupled to the pivot of the crank. A flexible transfer linkage has a first end coupled to a second end portion of the transfer bracket. A piston has a first end coupled to a second end of the transfer linkage. The piston is positioned within the cylindrical bore of the enclosure and is constrained to move only along the longitudinal axis of the cylindrical bore. An applicator head has a first end coupled to a second end of the piston. A second end of the applicator head is exposed outside the cylindrical bore. In certain embodiments in accordance with this aspect, the pivot of the crank is rotatable 360 degrees about the central axis of the shaft of the motor. The pivot is substantially aligned with the longitudinal axis of the cylindrical bore at a first rotational position and at a second rotational position. The first and second rotational positions are spaced apart angularly by 180 degrees. The pivot is offset from the longitudinal axis in a first offset direction when the pivot is at a rotational position between the first rotational position and the second rotational position in a first angular direction with respect to the first rotational position. The pivot is offset from the longitudinal axis in a second offset direction when the pivot is at a rotational position between the first rotational position and the second rotational position in a second angular direction opposite the first angular direction. The flexible transfer linkage is substantially straight and is aligned with the longitudinal axis of the cylindrical bore when the pivot of the crank is aligned with the longitudinal axis of the central bore at the first rotational position or at the second rotational position. The flexible transfer linkage bends in a first direction with respect to the longitudinal axis of the cylindrical bore when the pivot of the crank is offset from the longitudinal axis in the first offset direction. The flexible transfer linkage bends in a second direction with respect to the longitudinal axis of the cylindrical bore when the pivot of the crank is offset from the longitudinal axis in the second offset direction. In certain embodiments, the applicator head is removably coupled to the piston. In certain embodiments, the flexible transfer linkage comprises resilient rubber. In certain embodiments, the resilient rubber has a Shore durometer hardness of approximately 50.

Another aspect of the embodiments disclosed herein is a method of operating a percussive massage device. The method comprises rotating a shaft of an electric motor to rotate a pivot of a crank about a centerline of the shaft; coupling the pivot of the crank to a first end of a flexible interconnection linkage of a reciprocation assembly; coupling a second end of the flexible interconnection linkage to a piston constrained to move along a longitudinal centerline; and coupling the piston to an applicator head wherein rotational movement of the pivot of the crank causes reciprocation longitudinal movement of the piston and the applicator head. In certain embodiments of the method, the applicator head is removably coupled to the piston. In certain embodiments of the method, the flexible transfer linkage comprises resilient rubber. In certain embodiments

US 10,912,708 B2

3

of the method, the resilient rubber has a Shore durometer hardness of approximately 50.

Another aspect of the embodiments disclosed herein is a method of assembling a percussive massage device. The method comprises attaching an eccentric crank to the shaft of a motor, the eccentric crank having a pivot; coupling a first portion of a bearing holder to the pivot of the eccentric crank; attaching a first end of a flexible interconnection linkage to a second portion of the bearing holder; attaching a second end of the flexible interconnection linkage to a first end of a piston, the piston constrained to longitudinal movement within a cylinder; and removably attaching an applicator head to a second end of the piston. In certain embodiments of the method, the flexible transfer linkage comprises resilient rubber. In certain embodiments of the method, the resilient rubber has a Shore durometer hardness of approximately 50.

## BRIEF DESCRIPTIONS OF THE DRAWINGS

The foregoing aspects and other aspects of the disclosure are described in detail below in connection with the accompanying drawings in which:

FIG. **1** illustrates a bottom perspective view of a portable electromechanical percussive massage applicator that is battery powered and has a single hand grip, the view in FIG. **1** showing the bottom, the left side and the distal end (the end facing away from a user (not shown)) of the applicator;

FIG. **2** illustrates a top perspective view of the portable electromechanical percussive massage applicator of FIG. **1** showing the top, the right side and the proximal end (the end closest to a user (not shown)) of the applicator;

FIG. **3** illustrates an exploded perspective view of the portable electromechanical percussive massage applicator of FIG. **1**, the view showing the upper housing, a motor assembly, a reciprocation assembly, and a lower housing with an attached battery assembly;

FIG. **4A** illustrates an enlarged proximal end view of the combined upper and lower housing with the endcap of the housing detached and rotated to show the interlocking features, the view further showing a distal view of the main printed circuit board (PCB) positioned within the endcap of the housing;

FIG. **4B** illustrates a proximal view of the main PCB isolated from the endcap of the housing;

FIG. **5** illustrates an elevational cross-sectional view of the portable electromechanical percussive massage applicator of FIGS. **1** and **2** taken along the line **5-5** in FIG. **1**, the view taken through a set of the mated interconnecting features of the upper and lower housings;

FIG. **6** illustrates an elevational cross-sectional view of the portable electromechanical percussive massage applicator of FIGS. **1** and **2** taken along the line **6-6** in FIG. **1**, the view taken through the centerline of the shaft of the motor in the motor assembly of FIG. **3**;

FIG. **7** illustrates an elevational cross-sectional view of the portable electromechanical percussive massage applicator of FIGS. **1** and **2** taken along the line **7-7** in FIG. **1**, the view taken through the longitudinal centerline of the apparatus;

FIG. **8** illustrates a top plan view of the lower housing of FIG. **3**;

FIG. **9** illustrates an exploded perspective view of the lower housing and the battery assembly of FIG. **3**;

FIG. **10** illustrates an enlarged perspective view of the lower surface of the battery assembly printed circuit board;

4

FIG. **11A** illustrates an exploded top perspective view of the motor assembly of FIG. **3**, the view showing the upper surfaces of the elements of the motor assembly;

FIG. **11B** illustrates an exploded bottom perspective view of the motor assembly of FIG. **3**, the view of FIG. **11B** similar to the view in FIG. **11A** with the elements of the motor assembly rotated to show the lower surfaces of the elements;

FIG. **12** illustrates a bottom perspective view of the upper housing of the percussive massage applicator viewed from the proximal end;

FIG. **13** illustrates an exploded perspective view of the upper housing of the percussive massage applicator corresponding to the view of FIG. **12** showing the outer sleeve, the cylindrical mounting sleeve and the cylinder body;

FIG. **14** illustrates an exploded perspective view of the reciprocation assembly of FIG. **3**, the reciprocation assembly including a crank bracket, a flexible interconnection linkage, a piston and a removably attachable application head;

FIG. **15** illustrates a cross-sectional view of the assembled reciprocation assembly taken along the line **15-15** in FIG. **3**;

FIG. **16** illustrates a plan view of the percussive massage applicator of FIGS. **1** and **2** with the lower cover removed, the view looking upward toward the electrical motor of the applicator, the view in FIG. **16** showing the crank in the 12 o'clock position (as viewed in FIG. **16**) such the end of the applicator head is extended a first distance from the housing of the applicator;

FIG. **17** illustrates a plan view of the portable electromechanical percussive massage applicator similar to the view of FIG. **16**, the view in FIG. **17** showing the crank in the 3 o'clock position (as viewed in FIG. **17**) such the applicator head is extended a second distance from the housing of the applicator, wherein the second distance is greater than the first distance of FIG. **16**;

FIG. **18** illustrates a plan view of the portable electromechanical percussive massage applicator similar to the views of FIGS. **16** and **17**, the view in FIG. **18** showing the crank in the 6 o'clock position (as viewed in FIG. **18**) such the applicator head is extended a third distance from the housing of the applicator, wherein the third distance is greater than the second distance of FIG. **17**;

FIG. **19** illustrates a plan view of the portable electromechanical percussive massage applicator similar to the views of FIGS. **16,17** and **18**, the view in FIG. **19** showing the crank in the 9 o'clock position (as viewed in FIG. **19**) such the applicator head is extended a fourth distance from the housing of the applicator, wherein the fourth distance is substantially equal to the second distance of FIG. **17**;

FIG. **20** illustrates a left elevational view of the percussive massage applicator of FIGS. **1** and **2** with the bullet-shaped applicator removed and replaced with a spherical applicator;

FIG. **21** illustrates a left elevational view of the percussive massage applicator of FIGS. **1** and **2** with the bullet-shaped applicator removed and replaced with a convex applicator having a larger surface area than the bullet-shaped applicator;

FIG. **22** illustrates a left elevational view of the percussive massage applicator of FIGS. **1** and **2** with the bullet-shape applicator removed and replaced with a two-pronged applicator having two smaller distal surface areas;

FIG. **23** illustrates a schematic diagram of the battery controller circuit; and

5

FIG. 24 illustrates a schematic diagram of the motor controller circuit.

## DESCRIPTION OF ILLUSTRATED EMBODIMENTS

As used throughout this specification, the words "upper," "lower," "longitudinal," "upward," "downward," "proximal," "distal," and other similar directional words are used with respect to the views being described. It should be understood that the percussive massage applicator described herein can be used in various orientations and is not limited to use in the orientations illustrated in the drawing figures.

A portable electromechanical percussive massage applicator ("percussive massage applicator") 100 is illustrated in FIGS. 1-22. As described below, the percussive massage applicator can be applied to different locations of body to apply percussion to the body to effect percussive treatment. The percussion massage applicator is operable with removably attachable applicator heads to vary the effect of the percussive strokes. The percussive massage applicator operates at a plurality of speeds (e.g., three speeds).

The portable electromechanical percussive massage applicator 100 includes a main body 110. The main body includes an upper body portion 112 and a lower body portion 114. The two body portions engage to form a generally cylindrical enclosure about a longitudinal axis 116 (FIG. 2).

A generally cylindrical motor enclosure 120 extends upward from the upper body portion 112. The motor enclosure is substantially perpendicular to the upper body portion. The motor enclosure is capped with a motor enclosure endcap 122. The motor enclosure and the upper body portion house a motor assembly 124 (FIG. 3). The upper body portion also supports a reciprocation assembly 126 (FIG. 3), which is coupled to the motor assembly as described below.

A generally cylindrical battery assembly receiving enclosure 130 extends downward from the lower body portion 114 and is substantially perpendicular to the lower body portion. A battery assembly 132 extends from the battery assembly receiving enclosure.

A main body endcap 140 is positioned on a proximal end of the main body 110. In addition to other functions described below, the main body endcap also serves as a clamping mechanism to hold the respective proximal ends of the upper body portion 112 and the lower body portion 114 together. As illustrated in FIG. 4A, the endcap includes a plurality of protrusions 142 on an inner perimeter surface 144. The protrusions are positioned to engage a corresponding plurality of L-shaped notches 146 on the outer perimeters of the proximal ends of the upper body portion and the lower body portion. In the illustrated embodiment, two notches are formed on the upper body portion and two notches are formed on the lower body portion. The protrusions on the endcap are inserted into the proximal ends of the notches until seated against the distal ends of the notches. The endcap is then twisted by a few degrees (e.g., approximately 10 degrees) to lock the endcap to the two body portions. A screw 148 is then inserted through a bore 150 in the endcap to engage the lower body portion to prevent the endcap from rotating to unlock during normal use.

As shown in FIG. 4A, the main body endcap 140 houses a motor controller (main) printed circuit board (PCB) 160. As shown in FIG. 4B, the proximal side of the main PCB supports a central pushbutton switch 162. The operation of the switch is described below in connection with the electronic circuitry. As shown in FIG. 2, the switch is surrounded on the endcap by a plurality of bores 164, which extend

6

perpendicularly from the outer (proximal) surface of the endcap to form a plurality of concentric rows of bores. Selected ones of the bores are through bores, which allow airflow through the endcap. Three of the bores above the switch have respective speed indication light-emitting diodes (LEDs) 166A, 166B, 166C positioned therein. The three LEDs extend from the proximal side of the PCB as shown in FIG. 4B. The three LEDs provide an indication of the operational state of the percussive massage applicator 100 as described in more detail below. Five of the bores located below the switch have respective battery charge state LEDs 168A, 168B, 168C, 168D, 168E positioned therein. The five LEDs also extend from the proximal side of the PCB as shown in FIG. 4B. The five LEDs provide an indication of the charge state of the battery when the battery assembly 132 is attached and is providing power to the percussive massage applicator. As shown in FIG. 4A, the distal side of the PCB supports a first plug 170, which includes three contact pins that are connectable to the battery assembly 132 as described below. The distal side of the PCB also supports a second plug 172, which includes five contact pins that are connectable to the motor assembly 124 as described below.

As shown in FIGS. 5 and 8, a distal portion of the lower body portion 114 includes a plurality of through bores 180 (e.g., four through bores) that are aligned with a corresponding plurality of through bores 182 in the upper body portion 112. When lower body portion is attached to the upper body portion, a plurality of interconnection screws 184 pass through the through bores in the lower body portion and engage the through bores of the upper body portion to further secure the two body portions together. A plurality of plugs 186 are inserted into outer portions of the through bores of the lower body portion to hide the ends of the interconnection screws.

As shown in FIGS. 8 and 9, the lower body portion 114 includes a battery assembly receiving tray 200, which is secured to the inside of the lower body portion in alignment with the battery assembly receiving enclosure 130. The receiving tray is secured to the lower body portion with a plurality of screws 202 (e.g., four screws). The receiving tray includes a plurality of leaf spring contacts 204A, 204B, 204C (e.g., three contacts), which are positioned in a triangular pattern. The three contacts are positioned to engage a corresponding plurality of contacts 206A, 206B, 206C, which are positioned around the top edge of the battery assembly 132 when the battery assembly is positioned in the battery assembly receiving enclosure.

The battery assembly 132 includes a first battery cover half 210 and a second battery cover half 212, which enclose a battery unit 214. In the illustrated embodiment, the battery unit comprises six 4.2-volt lithium-ion battery cells connected in series to produce an overall battery voltage of approximately 25.2 volts when fully charged. The battery cells are commercially available from many suppliers, such as, for example, Samsung SDI Co., Ltd., of South Korea. The first battery cover half and the second battery cover half snap together. The two halves are further held together by an outer cylindrical cover 216, which also serves as a gripping surface when the percussive massage applicator 100 is being used. In the illustrated embodiment, the outer cover extends only over the portion of the battery assembly that does not enter the battery receiving enclosure 132. In the illustrated embodiment, the outer cover comprises neoprene or another suitable material that combines a cushioning layer with an effective gripping surface.

US 10,912,708 B2

7

The upper end of the battery assembly **132** includes a first mechanical engagement tab **220** and a second mechanical engagement tab **222** (FIG. **6**). As shown in FIG. **6**, for example, when the battery assembly is fully inserted into the battery assembly receiving enclosure **130**, the first engagement tab engages a first ledge **224** and the second engagement tab engages a second ledge **226** within the battery assembly receiving enclosure to secure the battery assembly within the battery assembly receiving enclosure.

The lower body portion **114** includes a mechanical button **230** in alignment with the first engagement tab **220**. When sufficient pressure is applied to the button, the first engagement tab is pushed away from the first ledge **224** to allow the first engagement tab to move downward with respect to the first ledge and thereby disengage from the ledge. In the illustrated embodiment, the mechanical button is biased by a compression spring **232**. The lower body portion further includes an opening **234** (FIG. **6**) opposite the mechanical button. The opening allows a user to insert a fingertip into the opening to apply pressure to disengage the second engagement tab **222** from the second ledge **226** and at the same time to apply downward pressure to move the second engagement tab downward away from the second ledge and thereby move the battery assembly **132** downward. Once disengaged in this manner, the battery assembly is easily removed from the battery assembly receiving enclosure **130**. In the illustrated embodiment, the opening is covered in part by a flap **236**. The flap may be biased by a compression spring **238**. In alternative embodiments (not shown), a second mechanical button may be included in place of the opening.

The second battery cover half **212** includes an integral printed circuit board support structure **250**, which supports a battery controller printed circuit board (PCB) **252**. The battery controller PCB is shown in more detail in FIG. **10**. In addition to other components, the battery controller PCB includes a charging power adapter input jack **254** and an on/off switch **256**. In the illustrated embodiment, the on/off switch is a slide switch. The battery controller PCB further supports a plurality of light-emitting diodes (LEDs) **260** (e.g., six LEDs), which are mounted around the periphery of the battery controller PCB. In the illustrated embodiment, each LED is a dual-color LED (e.g., red and green), which may be illuminated to display either color. The battery controller PCB is mounted to a battery assembly endcap **262**. A translucent plastic ring **264** is secured between the battery controller PCB and the battery assembly endcap such that the ring generally aligned with the LEDs. Accordingly, light emitted by the LEDs is emitted through the ring. As discussed below, the color of the LEDs may be used to indicate the charged state of the battery assembly **132**. A switch actuator extender **264** is positioned on the actuator of the slide switch and extends through the endcap to enable the slide switch to be manipulated from the outside of the endcap.

As illustrated in FIG. **3**, the motor enclosure **120** houses the electric motor assembly **124**, which is shown in more detail in FIGS. **11**A and **11**B. The electric motor assembly includes a brushless DC electric motor **310** having a central shaft **312** that rotates in response to applied electrical energy. In the illustrated embodiment, the electric motor is a 24-volt brushless DC motor. The electric motor may be a commercially available motor. The diameter and height of the motor enclosure and the mounting structures (described below) are adaptable to receive and secure the electric motor within the motor enclosure.

8

The electric motor **310** is secured to a motor mounting bracket **320** via a plurality of motor mounting screws **322**. The motor mounting bracket includes a plurality of mounting tabs **324** (e.g., four tabs). Each mounting tab includes a central bore **326**, which receives a respective rubber grommet **330**, wherein first and second enlarged portions of the grommet are positioned on opposite surfaces of the tab. A respective bracket mounting screw **332** having an integral washer is passed through a respective central hole **334** in each grommet to engage a respective mounting bore **336** in the upper body portion **112**. Two of the four mounting bores are shown in FIG. **12**. The grommets serve as vibration dampers between the motor mounting bracket and the upper body portion.

The central shaft **312** of the electric motor **310** extends through a central opening **350** in the motor mounting bracket **320**. The central shaft engages a central bore **362** of an eccentric crank **360**. The central bore is press-fit onto the central shaft of the electric motor or is secured to the shaft by another suitable technique (e.g., using a setscrew).

The eccentric crank **360** has a circular disk shape. The crank has an inner surface **364** oriented toward the electric motor and an outer surface **366** oriented away from the electric motor. A cylindrical crank pivot **370** is secured to or formed on the outer surface and is offset from the central bore of the crank in a first direction by a selected distance (e.g., 2.8 millimeters in the illustrated embodiment). An arcuate cage **372** extends from the inner surface of the crank and is generally positioned diametrically opposite the crank pivot with reference to the central bore **362** of the crank. A semi-annular weight ring **374** is inserted into the arcuate cage and is secured therein by screws, crimping or by using another suitable technique. The masses of the arcuate cage and the semi-annular weight ring operate to at least partially counterbalance the mass of the crank and the forces applied to the crank, as described below.

As shown in FIGS. **12** and **13**, the distal end of the upper body portion **112** supports a generally cylindrical outer sleeve **400** having a central bore **402**. In the illustrated embodiment, a distal portion **406** proximate to a distal end **404** of the outer sleeve is tapered inward toward the central bore. The outer sleeve has an annular base **408** that is secured to the distal end of the upper body portion by a plurality of screws **410** (e.g., three screws).

The outer sleeve **400** surrounds a generally cylindrical mounting sleeve **420** that is secured within the outer sleeve when the outer sleeve is secured to the upper body portion **112**. The mounting sleeve surrounds a cylinder body **422** that is clamped by the mounting sleeve and is secured in a concentric position with respect to the longitudinal axis **116** of the percussive massage applicator **100**. In addition to securing the cylinder body, the mounting sleeve serves as a vibration damper to reduce vibrations propagating from the cylinder body to the main body **110** of the percussive massage applicator. In the illustrated embodiment, the cylinder body has a length of approximately 25 millimeters and has an inner bore **424**, which has an inner diameter of approximately 25 millimeters. In particular, the inner diameter of the cylinder body is at least 25 millimeters plus a selected clearance fit (e.g., approximately 25 millimeters plus approximately 0.2 millimeters).

As shown in FIG. **3**, the percussive massage applicator **100** includes the reciprocating assembly **126**, which comprises a crank engagement bearing bracket **510**, which may also be referred to as a transfer bracket; a flexible interconnection linkage **512**, which may also be referred to as a

US 10,912,708 B2

9

10

flexible transfer linkage; a piston **514**; and an applicator head **516**. The reciprocating assembly is shown in more detail in FIGS. **14** and **15**.

The crank engagement bearing holder **510** comprises a bearing housing **530** having an upper end wall **532** that defines the end of a cylindrical cavity **534**. An annular bearing **536** fits within the cylindrical cavity. A removably attachable lower end wall **538** is secured to the bearing housing by a plurality of screws **540** (e.g., two screws) to constrain the annual bearing within the cylindrical cavity. The annular bearing includes a central bore **542** that is sized to engage the cylindrical crank pivot **370** of the eccentric crank **360**.

The crank engagement bearing holder **510** further includes an interconnect portion **550** that extends radially from the bearing housing **530**. The interconnect portion includes a disk-shaped interface portion **552** having a threaded longitudinal central bore **554**. The central bore is aligned with a radial line **556** directed toward the center of bearing housing. In the illustrated embodiment, the central bore is threaded with an 8×1.0 metric external thread. The interface portion has an outer surface **558**, which is orthogonal to the radial line. The center of the outer surface of the interface portion is approximately 31 millimeters from the center of the bearing housing. The interface portion has an overall diameter of approximately 28 millimeters and has a thickness of approximately 8 millimeters. A lower portion **560** of the interface portion may be flattened to provide clearance with other components. Selected portions of the interface portion may be removed to form ribs **562** to reduce the overall mass of the interface portion.

A threaded radial bore **564** is formed in the interface portion **552**. The threaded radial bore extends from the outer perimeter of the interface portion to the threaded longitudinal central bore **554**. The threaded radial bore has an internal thread selected to engage a bearing holder setscrew **566** that is inserted into the third threaded bore. The bearing holder setscrew is rotated to a selected depth as described below.

As used herein, "flexible" in connection with the flexible interconnection linkage **512** means that the linkage is capable of bending without breaking. The linkage comprises a resilient rubber material. The linkage may have a Shore A durometer hardness of around 50; however, softer or harder materials in a medium soft Shore hardness range of 35A to 55A may be used. The linkage is molded or otherwise formed to have a shape similar to an hourglass. That is, the shape of the linkage is relatively larger at each end and relatively narrower in the middle. In the illustrated embodiment, the linkage has a first disk-shaped end portion **570** and a second disk-shaped end portion **572**. In the illustrated embodiment, the two end portions have similar thicknesses of approximately 4.7 millimeters and have similar outer diameters of approximately 28 millimeters. The material between the two end portions tapers to middle portion **574**, which has a diameter of approximately 18 millimeters. In general, the middle portion has a diameter that is between 50 percent and 75 percent of the diameter of the end portions; however, the middle portion may be relatively smaller or relatively larger to accommodate materials having a greater hardness or a lesser hardness. The linkage has an overall length between the outer surfaces of the two end portions of approximately 34 millimeters. As discussed in more detail below, the smaller diameter middle portion of the linkage allows the linkage to flex easily between the two end portions.

A first threaded interconnect rod **580** extends from the first end portion **570** of the flexible interconnection linkage

**512**. A second threaded interconnect rod **582** extends from the second end portion **572** of the linkage. In the illustrated embodiment, the interconnect rods are metallic and are embedded into the respective end portions. For example, in one embodiment, the linkage is molded around the two interconnect rods. In other embodiment, the two interconnect rods are adhesively fixed within respective cavities formed in the respective end portions. In a still further embodiment, the two interconnect rods are formed as integral threaded rubber portions of the linkage.

The first interconnect rod **580** of the flexible interconnection linkage **512** has an external thread selected to engage with the internal thread of the threaded longitudinal central bore **554** of the crank engagement bearing holder **510** (e.g., an 8×1.0 metric external thread). When the thread of the first interconnect rod is fully engaged with the thread of the longitudinal central bore, the bearing holder setscrew **566** is rotated to cause the inner end of the setscrew to engage the thread of the first interconnect rod within the longitudinal central bore to inhibit the first interconnect rod from rotating out of the longitudinal central bore.

In the illustrated embodiment, the second interconnect rod **582** of the flexible interconnection linkage **512** has an external thread similar to the thread of the first interconnect rod **580** (e.g., an 8×1.0 metric external thread). In other embodiments, the threads of the two interconnect rods may be different.

In the illustrated embodiment, the piston **514** comprises stainless steel or another suitable material. The piston has an outer diameter that is selected to fit snugly within the inner bore **424** of the cylinder body **422** described above. For example, the outer diameter of the illustrated piston is no greater than approximately 25 millimeters. As discussed above, the inner diameter of the inner bore of the cylinder body is at least 25 millimeters plus a selected minimum clearance allowance (e.g., approximately 0.2 millimeter). Thus, with the outer diameter of the piston being no more than 25 millimeters, the piston has sufficient clearance with respect to the cylinder body that the piston is able to move smoothly within the cylinder body without interference. The maximum clearance is selected such that no significant play exists between the two parts.

In the illustrated embodiment, the piston **514** comprises a cylinder having an outer wall **600** that extends for a length of approximately 41.2 millimeters between a first end **602** and a second end **604**. A first bore **606** is formed in the piston for a selected distance from the first end toward the second end. For example, in the illustrated embodiment, the first bore has a depth (e.g., length toward the second end) of approximately 31.2 millimeters and has a base diameter of approximately 18.773 millimeters. A first portion **608** (FIG. **15**) of the first bore is threaded to form a 20×1.0 metric internal thread to a depth of approximately 20 millimeters in the first bore.

A second bore **610** (FIG. **15**) is formed from the second end **604** of the piston **514** toward the first end. The second bore has a base diameter of approximately 6.917 millimeters and has a length sufficient to extend the second bore to the cavity formed by the first bore (e.g., a length of approximately 10 millimeters in the illustrated embodiment). The second bore is threaded for its entire length to form an internal thread in the second bore. The internal thread of the second bore engages the external thread of the second interconnect rod **582** of the interconnection linkage **512**. Accordingly, in the illustrated embodiment, the second bore has an 8×1.0 metric internal thread.

US 10,912,708 B2

11

A third bore 620 is formed in the piston 514 near the second end 604 of the piston. The third threaded bore extends radially inward from the outer wall 600 of the piston to the second threaded bore. In the illustrated embodiment, the third bore is threaded for the entire length of the bore. The third bore has an internal thread selected to engage a piston setscrew 622, which is inserted into the third threaded bore. When the external thread of the second interconnect rod 582 of the flexible interconnection linkage 512 is fully engaged with the internal thread of the second bore 610 of the piston, the piston setscrew is rotated to cause the inner end of the setscrew to engage the external thread of the second interconnect rod within the second bore to inhibit the second interconnect rod from rotating out of engagement with the thread of the second bore.

The applicator head 516 of the reciprocating assembly 500 can be configured in a variety of shapes to enable a user to apply different types of percussive massage. The illustrated applicator head is "bullet-shaped" and is useful for apply percussive massage to selected relatively small surface areas of a body such as, for example, trigger points. In the illustrated embodiment, the applicator head comprises a medium hard to hard rubber material. The applicator head has an overall length from a first distal (application) end 650 to a second proximal (mounting) end 652 of approximately 55 millimeters. The applicator head has an outer diameter of approximately 25 millimeters for a length of approximately 32 millimeters along a main body portion 654. An engagement portion 656 at the proximal (mounting) end of the applicator head has a length of approximately 11 millimeters and is threaded for a distance of approximately 9 millimeters to form an external 20×1.0 metric thread that is configured to engage the internal thread of the first bore 606 of the piston 514. The thread of the applicator head is removably engageable with the thread of the piston to allow the applicator head to be removed and replaced with a different applicator head as described below. The distal (applicator) end of the applicator has a length of approximately 12 millimeters and tapers from the diameter of the main body portion (e.g., approximately 25 millimeters to a blunt rounded portion 658 having the shape of a truncated spherical cap. The spherical cap extends distally for approximately 3.9 millimeters. The spherical cap has a longitudinal of approximately 10 millimeters and a lateral radius of approximately 7.9 millimeters. In the illustrated embodiment, the applicator head has a hollow cavity 660 for a portion of the length from the proximal mounting end 652. The cavity reduces the overall mass of the applicator head to reduce the energy required to reciprocate the applicator head as described below.

In the illustrated embodiment, percussive massage applicator 100 is assembled by positioning and securing the motor assembly 124 in the upper body portion 112 as described above. A cable (not shown) from the motor 310 in the motor assembly is connected to the five-pin second plug 172.

After installing the motor assembly 300, the reciprocation assembly 126 is installed in the enclosure 110 by first attaching the flexible interconnection linkage 512 to the crank engagement bearing holder 510 by threading the first threaded interconnect rod 580 into the longitudinal central bore 554. The first threaded interconnect rod is secured within the longitudinal central bore by engaging the bearing holder setscrew 566 into the threaded radial bore 564. The annular bearing 536 is installed within the cylindrical cavity 534 of the bearing bracket and is secured therein by positioning the lower end wall 538 over the bearing and securing

12

the lower end wall with the screws 548. It should be understood that the annular bearing can be installed either before or after the bearing bracket is attached to the flexible linkage.

The crank engagement bearing holder 510 and the connected flexible interconnection linkage 512 are installed by positioning the central bore 542 of the annular bearing 536 over the cylindrical crank pivot 370 of the eccentric crank 360 with the flexible interconnection linkage aligned with the longitudinal axis 116. The second threaded interconnect rod 582 is directed toward the bore 424 of the cylinder body 422 within the cylindrical outer sleeve 400 at the distal end of the percussive massage applicator 100.

The applicator head 516 is attached to the piston 514 by threading the engagement portion 656 of the applicator head into the threaded first portion 608 of the piston. The interconnected applicator head and piston are then installed through the bore 424 of the cylinder body 422 to engage the second bore 610 of the piston with the second threaded interconnector rod 582 of the flexible interconnection linkage 512. The interconnected applicator had and the piston are rotated within the bore of the cylinder body to thread the second bore of the piston onto the second threaded interconnect rod. When the second bore and the second threaded interconnector rod are fully engaged as shown in FIG. 7, for example, the piston setscrew 622 is threaded into the third bore 620 of the piston to engage the threads of the second threaded interconnect rod of the flexible linkage to secure the piston to the flexible linkage. In the illustrated embodiment, the interconnected threads of the piston and the second threaded interconnect rod are configured such that the third bore of the piston is directed generally downward as shown in FIG. 7 and is thereby accessible to tighten the piston setscrew within the third bore. After the piston is secured to the flexible linkage, the applicator head may be unthreaded from the piston without unthreading the piston from the flexible linkage to allow the applicator head to be removed and replaced without having to remove the piston.

After installing the reciprocation assembly 126, as described above, the lower body portion 114 is installed by aligning the lower body portion with the upper body portion 112 and securing the two body portions together using the screws 184 (FIG. 5). The main body endcap 140 is then placed over the proximal ends of the two body portions to engage the protrusions 142 of the endcap with the L-shaped notches 146 of the two body portions. The endcap is then secured to prevent inadvertent removal by inserting the screw 148 through the bore 150 and into the material of the lower body portion.

The battery assembly 132 is installed in the battery assembly receiving enclosure 130 of the lower body portion 114 of the percussive massage applicator 100 and electrically and mechanically engaged as described above. The battery assembly may be charged while installed; or the battery assembly may be charged while removed from the percussive massage applicator.

The operation of the percussive massage applicator 100 is illustrated in FIGS. 16-19, which are views looking up at the motor assembly in the upper body portion 112 with the lower cover 114 and the battery assembly 132 removed. In FIG. 16, the eccentric crank 360 attached to the shaft 312 of the motor 310 is shown at a first reference position, which is designated as the 12 o'clock position. In this first reference position, the cylindrical crank pivot 370 on the outer surface 366 of the eccentric crank is at a most proximal location (nearest the top of the illustration in FIG. 16). The crank pivot is positioned in alignment with the longitudinal axis

US 10,912,708 B2

13

116. The crank engagement bearing holder 510, the flexible interconnection linkage 512, the piston 514 and the applicator head 516 are all aligned with the longitudinal axis. In this first position, the distal end of the applicator head extends by a first distance D1 from the distal end of the outer sleeve 400.

In FIG. 17, the shaft 312 of the motor 300 has rotated the eccentric crank 360 clockwise 90 degrees (as viewed in FIGS. 16-19). Accordingly, the cylindrical crank pivot 370 on the eccentric crank is now positioned to the right of the shaft of the motor at a second position designated as the 3 o'clock position. The central bore 542 of the annular bearing 536 within the crank engagement bearing holder 510 must move to the right because of the engagement with the cylindrical crank pivot. The piston 514 is constrained by the bore 424 of the cylinder body 422 (FIGS. 12-13) to remain aligned with the longitudinal axis 116. The second end 572 of the flexible interconnection linkage 512 remains aligned with the piston because of the second threaded interconnect rod 582. The first end 570 of the flexible interconnection linkage remains aligned with the crank engagement bearing holder 510 because of the first threaded interconnect rod 580. The smaller middle portion 574 of the flexible interconnection linkage allows the flexible interconnection to bend to the right to allow the crank engagement bearing holder to tilt to the right as shown. In addition to moving to the right and away from the longitudinal axis, the cylindrical crank pivot has also moved distally away from the proximal end of the percussive massage applicator 100, which causes the crank engagement bearing holder to also move distally. The distal movement of the crank engagement bearing holder is coupled to the piston via the flexible interconnector to push the piston longitudinally within the cylinder. The longitudinal movement of the piston causes the applicator head 516 to extend further outward to a second distance D2 from the distal end of the outer sleeve 400. The second distance D2 is greater than the first distance D1.

In FIG. 18, the shaft 312 of the motor 310 has rotated the eccentric crank 360 clockwise an additional 90 degrees to a position designated as the 6 o'clock position. Accordingly, the cylindrical crank pivot 370 is again aligned with the longitudinal axis 116. The crank engagement bearing holder 510 and the flexible interconnection linkage 512 have returned to the initial straight-line configuration in alignment with the piston 514. The cylindrical crank pivot has moved further from the proximal end of the percussive massage applicator 100. Thus, the crank engagement bearing holder and the flexible interconnection linkage push the piston longitudinally within the bore 424 of the cylinder body 422 to cause the applicator head 516 to extend further outward to a third distance D3 from the distal end of the outer sleeve 400. The third distance D3 is greater than the second distance D2.

In FIG. 19, the shaft 312 of the motor 310 has rotated the eccentric crank 360 clockwise an additional 90 degrees. Accordingly, the cylindrical crank pivot 370 is now positioned to the left of the shaft of the motor at a fourth position designated as the 9 o'clock position. The piston 514 is constrained by the bore 424 of the cylinder body 422 to remain aligned with the longitudinal axis 116. The smaller middle portion 574 of the flexible interconnection linkage 512 allows the flexible interconnection linkage to bend to the left to allow the crank engagement bearing holder 510 to tilt to the left as shown. In addition to moving to the left and away from the longitudinal axis, the cylindrical crank pivot has also moved proximally toward the proximal end of the percussive massage applicator 100. The proximal movement

14

pulls the piston longitudinally within the cylinder to cause the applicator head 516 to retreat proximally to a fourth distance D4 from the distal end of the outer sleeve 400. The fourth distance D4 is less than the third distance D2 and is substantially the same as the second distance D2.

A further rotation of the shaft 312 of the motor 310 by an additional 90 degrees clockwise returns the eccentric crank 360 to the original 12 o'clock position shown in FIG. 16 to return the cylindrical crank pivot 370 to the most proximal location. This further rotation causes the distal end of the applicator head 516 to retreat to the original first distance D1 from the outer sleeve 400. Continued rotation of the shaft of the motor causes the distal end of the applicator head to repeatedly extend and retreat with respect to the outer sleeve. By placing the distal end of the applicator head on a body part to be massaged, the applicator head applies percussive treatment to the selected body part.

In the illustrated embodiment, the axis of the cylindrical crank pivot 370 is located approximately 2.8 millimeters from the axis of the shaft 312 of the motor 310. Accordingly, the cylindrical crank pivot moves a total longitudinal distance of approximately 5.6 millimeters from the 12 o'clock position of FIG. 16 to the 6 o'clock position of FIG. 18. This results in a 5.6-millimeter stroke distance of the distal end of the applicator head 516 from the fully retreated first distance D1 to the fully extended third distance D3.

Conventional linkage systems between a crank and a piston have two sets of bearings. A first bearing (or set of bearings) couples a first end of a drive rod to a rotating crank. A second bearing (or set of bearings) couples a second end of a drive rod to a reciprocating piston. When the piston reaches each of the two extremes of the reciprocating motion, the piston must abruptly change directions. The stresses caused by the abrupt changes in direction are applied against the bearings at each end of the drive rod as well as to the other components in the linkage system. The abrupt changes of direction also tend to generate substantial noise.

The reciprocating linkage system 126 described herein eliminates a second bearing (or set of bearings) at the piston 514. The piston is linked to the other components of the linkage via the flexible interconnection linkage 512, which bends as the cylindrical crank pivot 370 rotates about the centerline of the shaft 312 of the motor 300. The flexible interconnect cushions the abrupt changes in direction at each end of the piston stroke. For example, as the applicator head 516 and the piston reverse direction from distal movement to proximal movement at the 6 o'clock position, the flexible interconnect may stretch by a small amount during the transition. The stretching of the flexible interconnect reduces the coupling of energy through the linkage system to the bearing 536 (FIG. 14) and the cylindrical crank pivot. Similarly, as the applicator head and the piston reverse direction from proximal movement to distal movement at the 12 o'clock position, the flexible interconnect may compress by a small amount during the transition. The compression of the flexible interconnect reduces the coupling of energy though the linkage system to the bearing and the cylindrical crank pivot. Thus, in addition to eliminating the bearing at the piston end of the linkage system, the flexible interconnect also reduces the stress on the bearing at the crank end of the linkage system.

The flexible interconnection linkage 512 in the linkage assembly 126 also reduces the noise of the operating percussive massage applicator 100. The effectively silent stretching and compressing of the flexible interconnect when the reciprocation reverses direction at the 6 o'clock and 12

US 10,912,708 B2

15

o'clock positions, respectively, eliminates the conventional metal-to-metal interaction that would occur if the linkage system were coupled to the piston **514** with a conventional bearing.

As discussed above, the bullet-shaped applicator head **516** is removably threaded onto the piston **514**. The bullet-shaped applicator head may be unscrewed from the piston and replaced with a spherical-shaped applicator head **700**, shown in FIG. **20**. A spherical-shaped distal end portion **702** of the applicator head extends from an applicator main body portion **704**, which corresponds to the main body portion **654** of the bullet-shaped applicator head. The spherical-shaped applicator head includes an engagement portion (not shown) corresponding to the engagement portion **656** of the bullet-shaped applicator head. The spherical-shaped applicator head may be used to apply percussive massage to larger areas of the body to reduce the force on the treated area and to allow the angle of application to be varied.

The bullet-shaped applicator head **516** may also be unscrewed and replaced with a disk-shaped applicator head **720** shown in FIG. **21**. A disk-shaped distal end portion **722** of the applicator head extends from an applicator main body portion **724**, which corresponds to the main body portion **654** of the bullet-shaped applicator head. The disk-shaped applicator head includes an engagement portion (not shown) corresponding to the engagement portion **656** of the bullet-shaped applicator head. The disk-shaped applicator head may be used to apply percussive massage to a larger area of the body to reduce the force on the treated area.

The bullet-shaped applicator head **516** may also be unscrewed and replaced with a Y-shaped applicator head **740** shown in FIG. **22**. A Y-shaped distal end portion **742** of the applicator head extends from an applicator main body portion **744**, which corresponds to the main body portion **654** of the bullet-shaped applicator head. The Y-shaped applicator head includes an engagement portion (not shown) corresponding to the engagement portion **656** of the bullet-shaped applicator head. The Y-shaped applicator head includes an applicator base **750**. A first finger **752** and a second finger **752** extend from the applicator base and are spaced apart as shown. The two fingers of the Y-shaped applicator head may be used to apply percussive massage to muscles on both sides of the spine without applying direct pressure to the spine.

The portable electromechanical percussive massage applicator **100** may be provided with power and controlled in a variety of manners. FIG. **23** illustrates an exemplary battery control circuit **800**, which comprises in part the circuitry mounted on the battery controller PCB **252**. In FIG. **23**, previously identified elements are numbered with like numbers as before.

The battery control circuit **800** includes the power adapter input jack **254**. In the illustrated embodiment, the input power provided to the jack as a DC input voltage of approximately 30 volts DC. Other voltages may be used in other embodiments. The input voltage is provided with respect to a circuit ground reference **810**. The input voltage is applied across a voltage divider circuit comprising a first voltage divider resistor **820** and a second voltage divider resistor **822**. The resistances of the two resistors are selected to provide a signal voltage of approximately 5 volts when the DC input voltage is present. The signal voltage is provided through a high resistance voltage divider output resistor **824** as a DCIN signal.

The DC input voltage is provided through a rectifier diode **830** and a series resistor **832** to a DC input bus **834**. The rectifier diode prevents damage to the circuitry if the polarity

16

of the DC input voltage is inadvertently reversed. The voltage on the DC input bus is filtered by an electrolytic capacitor **836**.

The DC input voltage on the DC input bus **834** is provided through a 10-volt Zener diode **840** and a series resistor **842** to the voltage input of a voltage regulator **844**. The input of the voltage regulator is filtered by a filter capacitor **846**. In the illustrated embodiment, the voltage regulator is a HT7550-1 voltage regulator, which is commercially available from Holtek Semiconductor, Inc., of Taiwan. The voltage regulator provides an output voltage of approximately 5 volts on a VCC bus **848**, which is filtered by a filter capacitor **850**.

The voltage on the VCC bus is provided to a battery charger controller **860**. The controller receives the DCIN signal from the voltage divider output resistor **824**. The battery charger controller is responsive to the active high state of the DCIN signal to operate in the manner described below to control the charging of the battery unit **214**. When the DCIN signal is low to indicate that the charging voltage is not present, the controller does not operate.

The battery charger controller **860** provides a pulse width modulation (PWM) output signal to the input of a buffer circuit **870**, which comprises a PNP bipolar transistor **872** having a collector connected to the circuit ground reference **810**. The PNP transistor has an emitter connected to the emitter of an NPN bipolar transistor **874**. The bases of the two transistors are interconnected and form the input to the buffer circuit. The two transistor bases are connected to receive the PWM output signal from the controller. The commonly connected bases are also connected to the commonly connected emitters via a base-emitter resistor **876**. The collector of the NPN connected to the VCC bus **848**.

The commonly connected emitters of the PNP transistor **872** and the NPN transistor **874** are connected to an anode of a protection diode **878**. A cathode of the protection diode is connected to the VCC bus **848**. The protection diode prevents the voltage on the commonly connected emitters from exceeding the voltage on the VCC bus by more than one forward diode drop (e.g., approximately 0.7 volt). The commonly connected emitters of the two transistors are also connected through a resistor **880** to a first terminal of a coupling capacitor **882**. A second terminal of the coupling capacitor is connected to a gate terminal of a power metal oxide semiconductor direct current transistor (MOSFET) **884**. In the illustrated embodiment, the MOSFET comprises an STP9527 P-Channel Enhancement Mode MOSFET, which is commercially available from Stanson Technology in Mountain View, Calif. The gate terminal of the MOSFET is also connected to an anode of a protection diode **886**, which has a cathode connected a source (S) terminal of the MOSFET. The protection diode prevents the voltage on the gate terminal from exceeding the voltage on the source terminal by more than the forward diode drop of the protection diode (e.g., approximately 0.7 volt). The gate terminal of the MOSFET is also connected to the source terminal of the MOSFET by a pull-up resistor **888**. The source of the MOSFET is connected to the DC input bus **834**.

A drain (D) of the MOSFET **884** is connected to an input node **892** of a buck converter **890**. The buck converter further includes an inductor **894** connected between the input node and an output node **896**. The output node (also identified as VBAT) is connected to a positive terminal of the battery unit **214**. A negative terminal of the battery unit is connected to the circuit ground **810** via a low-resistance current sensing resistor **900**. The input node is further connected to a cathode of a free-wheeling diode **902**, which

US 10,912,708 B2

17

has an anode connected to the circuit ground. A first terminal of a resistor 904 is also connected to the input node. A second terminal of the resistor is connected to a first terminal of a capacitor 906. A second terminal of the capacitor is connected to the circuit ground. Accordingly, a complete circuit path is provided from the circuit ground, through the free-wheeling diode, through the inductor, through the battery unit, and through the current sensing resistor back to the circuit ground.

The battery charger controller 860 controls the operation of the buck converter 890 by applying an active low pulse on the PWM output connected to the buffer circuit 870, which responds by pulling down the voltage on the commonly connected emitters of the two transistors 872, 874 to a voltage near the ground reference potential. The low transition to the ground reference potential is coupled through the resistor 880 and the coupling capacitor 882 to the gate terminal of the MOSFET 884 to turn on the MOSFET and couple the DC voltage on the DC input bus 834 to the input node 892 of the buck converter 890. The DC voltage causes current to flow though the inductor 894 to the battery unit 214 to charge the battery unit. When the PWM signal from the battery charger controller is turned off (returned to an inactive high state), the MOSFET is turned off and no longer provides a DC voltage to the input node of the buck converter; however, the current flowing in the inductor continues to flow through the battery unit and back through the free-wheeling diode as the inductor discharges to continue charging the battery unit until the inductor is discharged. The width and repetition rate of the active low pulses generated by the battery charger controller determine the current applied to charge the battery unit in a known manner. In the illustrated embodiment, the PWM signal has a nominal repetition frequency of approximately 62.5 kHz.

The battery charger controller 860 controls the width and repetition rate of the pulses applied to the MOSFET 894 in response to feedback signals from the battery unit 214. A battery voltage sensing circuit 920 comprises a first voltage feedback resistor 922 and a second voltage feedback resistor 924. The two resistors are connected in series from the output node 896 to the circuit ground 810 and are thus connected across the battery unit. A common voltage sensing node 926 of the two resistors is connected to a voltage sensing (VSENSE) input of the controller. The battery charger controller monitors the voltage sensing input to determine the voltage across the battery unit to determine when the battery unit is at or near a maximum voltage of approximately 25.2 volts such that the charging rate should be reduced. In the illustrated embodiment, a filter capacitor 928 is connected from the voltage sensing node to the circuit ground to reduce noise on the voltage sensing node.

As described above, the negative terminal of the battery unit 214 is connected to the circuit ground 810 via the low-resistance current sensing resistor 900, which may have a resistance of, for example, 0.1 ohm. A voltage develops across the current sensing resistor proportional to the current flowing through the battery unit when charging. The voltage is provided as an input to a current sensing (ISENSE) input of the battery charger controller 860 via a high-resistance (e.g., 20,000-ohm) resistor 930. The current sensing input is filtered by a filter capacitor 932. The battery charger controller monitors the current flowing through the battery unit and thus through the current sensing resistor to determine when the current flow decreases as the charge on the battery unit nears a maximum charge. The battery charger controller may also respond to a large current through the battery unit

18

and reduce the pulse width modulation to avoid exceeding a maximum magnitude for the charging current.

The output node 896 of the buck converter 890 is also the positive voltage node of the battery unit 214. The positive battery voltage node is connected to a first terminal 940 of the on-off switch 256. A second terminal 942 of the on-off switch is connected to a voltage output terminal 944, which is identified as VOUT. The voltage output terminal is connected to the first contact 206A of the battery assembly 132. The first contact of the battery assembly engages the first leaf spring contact 204A when the battery assembly is inserted into the battery receiving tray 200. When the switch is closed, the first terminal and the second terminal of the switch are electrically connected to couple the battery voltage to the voltage output terminal. The voltage output terminal is coupled to an output voltage sensing circuit 950, which comprises a first voltage divider resistor 952 and a second voltage divider resistor 954 connected in series between the voltage output terminal and the circuit ground. A common node 956 between the two resistors is connected to a VOUT sensing input of the battery charger controller 860. The common node is also connected to the circuit ground by a Zener diode 958, which clamps the voltage at the common node to no more than 4.7 volts. The resistances of the two resistors are selected such that when the switch is closed and the output voltage is applied to the output terminal, the voltage on the common node and the VOUT sensing input of the controller is approximately 4.7 volts to indicate that the switch is closed and that the battery voltage is being provided to the selected terminal of the battery assembly.

A second contact 206B of the battery assembly 132 is connected to a battery charge (CHRG) output signal of the battery charger controller 860 via a signal line 960. The battery charge output signal is an analog signal having a magnitude indicative of the charging state of the battery unit 214. The second battery assembly contact engages the second leaf spring contact 204B when the battery assembly is inserted into the battery receiving tray 200.

A third contact 206C of the battery assembly 132 is connected to the negative terminal of the battery unit 214 via a line 970 and is identified as the battery ground (GND) that is provided to the motor control PCB 160 as described below. Note that the battery ground is coupled to the circuit ground by the 0.1-ohm current sensing resistor 900. The current flowing out of the positive terminal of the battery unit to the motor control PCB and back to the negative terminal of the battery unit does not flow through the current sensing resistor. The third battery assembly contact engages the third leaf spring contact 204C when the battery assembly is inserted into the battery receiving tray 200.

The battery charger controller 860 drives the dual-color LEDs 260 on the battery controller PCB. The controller includes a first output (LEDR) that drives the red-emitting LEDs in the dual-color LEDs and includes a second output (LEDG) that drives the green-emitting LED in the dual-color LEDs. A first current limiting resistor 980 couples the first output to the anodes of the red-emitting LEDs in a first set of three dual-color LEDs. A second current limiting resistor 982 couples the second output to the anodes of the green-emitting LEDs in the first set of three dual-color LEDs. A third current limiting resistor 984 couples the first output to the anodes of the red-emitting LEDs in a second set of three dual-color LEDs. A fourth current limiting resistor 986 couples the second output to the anodes of the green-emitting LEDs in the second set of three dual-color LEDs.

US 10,912,708 B2

19

In the illustrated embodiment, the dual-color LEDs **260** are driven with different duty cycles to indicate the present state of charge of the battery unit **214**. For example, in a first state, the first output (LEDR) of the controller **860** is driven with a 100 percent duty cycle and the second output (LEDG) of the controller is not driven such that only the red-emitting LEDs are illuminated to indicate that the battery unit needs be charged. In a second state, the first output is driven with a 75 percent duty cycle and the second output is driven with a 25 percent duty cycle such that the resulting perceived color is a mixture of red and green. In a third state, the first output and the second output are both driven with a respective 50 percent duty cycle. In a fourth state, the first output is driven with a 25 percent duty cycle and the second output is driven with a 75 percent duty cycle. In a fifth state, the first output is not driven and the second output is driven with a 100 percent duty cycle such that the color is entirely green to indicate that the battery unit is at or near a fully charged state. The duty cycles at which the two outputs are driven may be interleaved such that the two outputs are not on at the same time. Other than at the first state, the duty cycles are repeated at a rate sufficiently high that the enabled LEDs appear to be on at all times without a perceptible flicker. When the battery controller is in the first state, the battery controller may blink the red-emitting LEDS on and off at a perceptible rate to remind the user that the charge on the battery is low and should be charged before continuing to use the percussive massage applicator **100**. In certain embodiments, the first state may be further segmented into two charge ranges. In a first range of charges within the first state, the red LEDs are driven with a constant illumination to indicate that the charge on the charge on the battery unit is low and that the battery unit should be charged soon. In a second range of charges, the red LEDs are blinked to indicate that the charge in the battery unit is very low and that the battery unit should be charged promptly.

FIG. **24** illustrates an exemplary motor controller circuit **1000**, which comprises in part the circuitry mounted on the motor controller PCB **160**. In FIG. **24**, previously identified elements are numbered with like numbers as before. As described above, the battery assembly **132** provides the positive battery output voltage VOUT on the first leaf spring contact **204**A of the receiving tray **200** when the battery assembly is inserted into the receiving tray. The positive battery output voltage is identified as VBAT in FIG. **24**. The CHRG signal from the battery assembly is provided to the second leaf spring contact **204**B when the battery assembly is inserted into the receiving tray. The battery ground (GND) is provided to the third leaf spring contact **204**C when the battery assembly is inserted into the receiving tray. The DC voltage, the battery ground and the CHRG signal are coupled via a three-wire cable **1010** to a cable jack **1012**. The first plug **170** on the motor controller PCB plugs into the cable jack to receive the DC voltage on a first pin **1020**, to receive the CHRG signal on a second pin **1022**, and to receive the battery ground (GND) on a third pin **1024**. The battery ground (GND) from the third pin of the first plug is electrically connected to a local circuit ground **1026**.

The DC voltage (VBAT) on the first pin **1020** of the first plug **170** is filtered by a filter capacitor **1030** connected between the first pin of the first plug and the local circuit ground **1026**. The DC voltage is also provided to a first terminal of a current limiting resistor **1032**. A second terminal of the current limiting resistor is provided to the voltage input terminal of a voltage regulator **1040**. The voltage regulator receives the battery voltage and converts the battery voltage to 5 volts. The 5-volt output of the

20

voltage regulator is provided on a local VCC bus **1042**. The local VCC bus is filtered by a filter capacitor **1044**, which is connected between the local VCC bus and the local circuit ground. In the illustrated embodiment, the voltage regulator is a 78L05 three-terminal regulator, which is commercially available from a number of manufacturers, such as, for example, National Semiconductor Corporation of Santa Clara, Calif.

The CHRG signal on the second pin **1022** of the first plug **170** is provided to a charge (CHRG) input of a motor controller **1050** via a series resistor **1052**. The charge input to the motor controller is filtered by a filter capacitor **1054**. The motor controller receives the 5-volt supply voltage from the VCC bus **1042**

The DC voltage from the first pin **1020** of the first plug is also provided directly to a first pin **1060** of the five-pin second plug **172**. The second plug **172** is connectable to a second jack **1070** having a corresponding number of contacts. The second jack is connected via a five-wire cable **1072** to the motor **310**.

A second pin **1080** of the second plug is a tachometer (TACH) pin, which receives a tachometer signal from the motor **310** indicative of the present angular velocity of the motor. For example, the tachometer signal may comprise one pulse for every revolution of the shaft **312** of the motor or one pulse per partial revolution. The tachometer signal is provided to a first terminal of a first resistor **1084** in a voltage divider circuit **1082**. A second terminal of the first resistor is connected to a first terminal of a second resistor **1086** in the voltage divider circuit. A second terminal of the second resistor is connected to the local circuit ground. A common node **1088** between the first and second resistors in the voltage divider circuit is connected to the base of an NPN bipolar transistor **1090**. An emitter of the NPN transistor is connected to ground. A collector of the NPN transistor is connected to the VCC bus **1042** via a pull-up resistor **1092**. The NPN transistor inverts and buffers the tachometer signal from the motor and provides the buffered signal to a TACH input of the motor controller. The buffered signal varies between +5 volts (VCC) and the local circuit ground potential when the tachometer signal varies between the local circuit ground potential and the DC voltage potential from the battery.

A third pin **1100** of the second plug **172** is a clockwise/counterclockwise (CW/CCW) signal generated by the motor controller **1050** and coupled to the third pin via a current limiting resistor **1102**. The state of the CW/CCW signal determines the rotational direction of the motor **310**. In the illustrated embodiment, the CW/CCW signal is maintained at a state to cause clockwise rotation; however, the rotation can be changed to the opposite direction in other embodiments.

A fourth pin **1110** of the second plug **172** is connected to the local circuit ground **1026**, which corresponds to the battery ground connected to the negative terminal of the battery unit **214** in FIG. **23**.

A fifth pin **1120** of the second plug **172** receives a pulse width modulation (PWM) signal generated by the motor controller **1050**. The PWM signal is coupled to the fifth pin via a current limiting resistor **1122**. The motor **310** is responsive to the duty cycle and the frequency of the PWM signal to rotate at a selected angular velocity. As described below, the motor controller controls the PWM signal to maintain the angular velocity at one of three selected rotational speeds.

The motor controller **1050** has a switch-in (SWIN) input that receives an input signal from the pushbutton switch **162**.

21                                         22

The pushbutton switch has a first contact connect to the local circuit ground **1026** and has a second contact connected to the VCC bus **1042** via a pull-up resistor **1130**. The second contact is also connected to the local circuit ground via a filter capacitor **1132**. The second is also connected to the SWIN input of the motor controller. The input signal is held high by the pull-up resistor until the switch contacts are closed by actuating the pushbutton switch. When the switch is actuated to close the contacts, the input signal is pulled to 0 volts (e.g., the potential on the local circuit ground). The filter capacitor reduces the switch contact bounce noise. The motor controller may include internal debounce circuitry to eliminate the effects of the switch contact bounce. The motor controller is initialized in an off state wherein no PWM signal is provided to the motor **310**, and the motor does not rotate. The motor controller is responsive to a first activation of the switch to advance from the off-state to a first on-state wherein the PWM signal provided to the motor is selected to cause the motor to rotate at a first (low) speed. A subsequent activation of the switch advances the motor controller to a second on-state wherein the PWM signal provided to the motor is selected to cause the motor to rotate at a second (medium) speed. A subsequent activation of the switch advances the motor controller to a third on-state wherein the PWM signal provided to the motor is selected to cause the motor to rotate at a third (high) speed. A subsequent activation of the switch returns the motor controller to the initial off-state wherein no PWM signal is provided to the motor and the motor does not rotate. In the illustrated embodiment, the three rotational speeds of the motor are 2,000 rpm (low), 2,600 rpm (medium) and 3,000 rpm (high).

The motor controller **1050** generates a nominal PWM signal associated with the currently selected on-state (e.g., low, medium or high speed). Each on-state corresponds to a selected rotational speed as described above. The motor controller monitors the tachometer signal (TACH) received from the pin **1080** of the five-pin plug **172** via the voltage divider **1082** and the NPN transistor **1090**. If the received tachometer signal indicates that the motor speed is below the selected speed, the motor controller adjusts the PWM signal (e.g. increases the pulse width or increases the repetition rate or both) to increase the motor speed. If the received tachometer signal indicates that the motor speed is above the selected speed, the motor controller adjusts the PWM signal (e.g. decreases the pulse width or decreases the repetition rate or both) to decrease the motor speed.

The motor controller **1050** generates a first set of three LED control signals (LEDS**1**, LEDS**2**, LEDS**3**). The first signal (LEDS**1**) in the first set is coupled via a current limiting resistor **1150** to the first speed indication LED **166**A. The first signal in the first set is activated to illuminate the first speed indication LED when the motor controller is in the first on-state to drive the motor at the first (low) speed. The second signal (LEDS**2**) in the first set is coupled via a current limiting resistor **1152** to the second speed indication LED **166**B. The second signal in the first set is activated to illuminate the second speed indication LED when the motor controller is in the second on-state to drive the motor at the second (medium) speed. The third signal (LEDS**3**) in the first set is coupled via a current limiting resistor **1154** to the third speed indication LED **166**C. The third signal in the first set is activated to illuminate the third speed indication LED when the motor controller is in the third on-state to drive the motor at the third (high) speed.

The motor controller **1050** is further responsive to the CHRG signal from the input plug **170**. As discussed above,

the CHRG signal is generated by the battery charger controller **860** to indicate the state of charge of the battery unit **214**. The motor controller determines the present state of charge of the battery unit from the CHRG input signal and displays the state of charge on the five battery charge state LEDs **168**A, **168**B, **168**C, **168**D, **168**E which are visible through the main body endcap **140**. The motor controller generates a second set of five LED control signals (LEDC**1**, LEDC**2**, LEDC**3**, LEDC**4**, LEDC**5**). The first signal (LEDC**1**) in the second set is coupled via a current limiting resistor **1170** to the first charge LED **168**A. The first signal in the second set is activated to illuminate the first charge indication LED when the battery unit has a lowest range of charge. The motor controller may blink the first charge indication LED at a perceptible rate to indicate the lowest range of charge. The color (e.g., red) of the light emitted by the first charge LED may differ from the color (e.g., green) of the light emitted by the other LEDS to further indicate the lowest range of charge (e.g., no more than 20 percent of charge remaining). The second signal (LEDC**2**) in the second set is coupled via a current limiting resistor **1172** to the second charge indication LED **168**B. The second signal in the second set is activated to illuminate the second charge indication LED when the battery unit has a second range of charge (e.g., 21-40 percent of charge remaining). The third signal (LEDC**3**) in the second set is coupled via a current limiting resistor **1174** to the third charge indication LED **168**C. The third signal in the second set is activated to illuminate the third charge indication LED when the battery unit has a third range of charge (e.g., 41-60 percent of charge remaining). The fourth signal (LEDC**4**) in the second set is coupled via a current limiting resistor **1176** to the fourth charge indication LED **168**D. The fourth signal in the second set is activated to illuminate the fourth charge indication LED when the battery unit has a fourth range of charge (e.g., 61-80 percent of charge remaining). The fifth signal (LEDC**5**) in the second set is coupled via a current limiting resistor **1178** to the fifth charge indication LED **168**B. The fifth signal in the second set is activated to illuminate the fifth charge indication LED when the battery unit has a fifth range of charge (e.g., 81-100 percent of charge remaining). It should be understood that the ranges of charge are only approximations and are provided as examples.

The portable electromechanical percussive massage applicator **100** described herein advantageously allows a massage therapist to effectively apply percussion massage over an extended time duration without excessive tiring and without being tethered to an electrical power cord. The reduced noise level of the portable electromechanical percussive massage applicator described herein allows the device to be used in quiet environment such that the person being treated with the device is able to relax and enjoy any ambient music or other soothing sounds provided in the treatment room.

As various changes could be made in the above constructions without departing from the scope of the invention, it is intended that all the matter contained in the above description or shown in the accompanying drawings shall be interpreted as illustrative and not in a limiting sense.

What is claimed is:
1. A battery-powered percussive massage device comprising:
   a main enclosure extending along an axis, the main enclosure having a proximal end and a distal end, the main enclosure including a cavity;
   a motor having a rotatable shaft;

US 10,912,708 B2

23

a reciprocation assembly coupled to the rotatable shaft, the reciprocation assembly including a piston, the reciprocation assembly configured to reciprocate the piston along a reciprocation axis in response to rotation of the rotatable shaft, the reciprocation assembly positioned within the cavity of the main enclosure;

an applicator head having a proximal end removably attachable to the piston, and having a distal end that extends from the distal end of the main enclosure when the proximal end of the applicator is attached to the piston;

a handle attached to the main enclosure, the handle comprising:

a cavity, the cavity housing at least one battery and a printed circuit board, the printed circuit board including a battery controller that receives electrical power via a connector and that selectively charges the at least one battery, the printed circuit board having a mounting surface with a peripheral edge;

an outer gripping surface covering at least a portion of the handle;

a charge indication display, the charge indication display comprising a plurality of light-emitting diodes (LEDs) positioned on the mounting surface of the printed circuit board near the peripheral edge of the mounting surface, the LEDs generating light responsive to a charge condition of the at least one battery, the light emitted outward from the LEDs toward the peripheral edge of the printed circuit board; and

an annular light transmissive ring positioned around the handle in alignment with the LEDs to propagate light from the LEDs to the outside of the handle.

**2.** The battery-powered percussive massage device of claim **1**, wherein the light transmissive ring is circular.

**3.** The battery-powered percussive massage device of claim **1**, wherein the light transmissive ring is translucent.

**4.** The battery-powered percussive massage device of claim **1**, wherein the LEDs are multi-colored LEDs.

**5.** The battery-powered percussive massage device of claim **4**, wherein the multi-colored LEDs are dual-color LEDs, each LED having a green input terminal to receive a green intensity control signal and a red input terminal to receive a red intensity control signal, and wherein the green intensity control signal and the red intensity control signal are selectively controlled to provide at least four color combinations.

**6.** The battery-powered percussive massage device of claim **1**, wherein the outer gripping surface of the handle is cylindrical.

**7.** A battery-powered percussive massage device comprising:

a main enclosure extending along an axis, the main enclosure having a proximal end and a distal end, the main enclosure including a cavity;

a motor having a rotatable shaft;

a reciprocation assembly coupled to the rotatable shaft, the reciprocation assembly including a piston, the reciprocation assembly configured to reciprocate the piston along a reciprocation axis in response to rotation of the rotatable shaft, the reciprocation assembly positioned within the cavity of the main enclosure;

an applicator head having a proximal end removably attachable to the piston, and having a distal end that extends from the distal end of the main enclosure when the proximal end of the applicator is attached to the piston;

a handle having an outer gripping surface;

24

a battery unit housed at least partially within the handle;

a printed circuit board positioned within the handle, the printed circuit board including a battery controller that receives electrical power via a connector and that selectively charges the at least one battery, the printed circuit board having a mounting surface with a peripheral edge

a charge indication display, the charge indication display comprising a plurality of light-emitting diodes (LEDs) positioned on the mounting surface of the printed circuit board near the peripheral edge of the mounting surface, the LEDs generating light responsive to a charge condition of the at least one battery unit, the light emitted outward from the LEDs toward the peripheral edge of the printed circuit board; and

an annular light transmissive ring positioned around the handle in alignment with the LEDs to propagate light from the LEDs to the outside of the handle.

**8.** The battery-powered percussive massage device of claim **7**, wherein the light transmissive ring is circular.

**9.** The battery-powered percussive massage device of claim **7**, wherein the light transmissive ring is translucent.

**10.** The battery-powered percussive massage device of claim **7**, wherein the LEDs are multi-colored LEDs.

**11.** The battery-powered percussive massage device of claim **10**, wherein the multi-colored LEDs are dual-color LEDs, each LED having a green input terminal to receive a green intensity control signal and a red input terminal to receive a red intensity control signal, and wherein the green intensity control signal and the red intensity control signal are selectively controlled to provide at least four color combinations.

**12.** The battery-powered percussive massage device of claim **7**, wherein the outer gripping surface of the handle is cylindrical.

**13.** A battery assembly for a battery-powered percussive massage device comprising:

an outer cover forming a cavity, the outer cover having a first end and a second end, the first end supporting a plurality of electrical contacts;

at least one battery unit housed within the cavity;

an outer gripping surface positioned over the outer cover;

a printed circuit board secured to the outer cover, the printed circuit board including a battery controller, the battery controller receiving electrical power via a connector and selectively charging the at least one battery, the printed circuit board having a mounting surface with a peripheral edge;

a charge indication display, the charge indication display comprising a plurality of light-emitting diodes (LEDs) positioned on the mounting surface of the printed circuit board near the peripheral edge of the mounting surface, the LEDs generating light responsive to a charge condition of the at least one battery unit, the light emitted outward from the LEDs toward the peripheral edge of the printed circuit board; and

an annular light transmissive ring positioned around the peripheral edge of the printed circuit board in alignment with the LEDs to propagate light from the LEDs.

**14.** The battery assembly of claim **13**, wherein the light transmissive ring is circular.

**15.** The battery assembly of claim **13**, wherein the light transmissive ring is translucent.

**16.** The battery assembly of claim **13**, wherein the LEDs are multi-colored LEDs.

**17.** The battery assembly of claim **16**, wherein the multi-colored LEDs are dual-color LEDs, each LED having a

US 10,912,708 B2

25

26

green input terminal to receive a green intensity control signal and a red input terminal to receive a red intensity control signal, and wherein the green intensity control signal and the red intensity control signal are selectively controlled to provide at least four color combinations.

**18**. The battery assembly of claim **13**, wherein the outer cover is cylindrical.

*   *   *   *   *

# EXHIBIT 3

US00D886317S

(12) **United States Design Patent**          (10) Patent No.:          **US D886,317 S**

Marton et al.                                 (45) Date of Patent:      **       Jun. 2, 2020**

(54) **PERCUSSIVE MASSAGE DEVICE**

(71) Applicant: **Hyper Ice, Inc.**, Irvine, CA (US)

(72) Inventors: **Robert Marton**, Yorba Linda, CA (US); **Anthony Katz**, Laguna Niguel, CA (US)

(73) Assignee: **Hyper Ice, Inc.**, Irvine, CA (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/716,546**

(22) Filed: **Dec. 10, 2019**

**Related U.S. Application Data**

(60) Continuation of application No. 29/690,791, filed on May 10, 2019, now Pat. No. Des. 874,015, which is a division of application No. 29/637,855, filed on Feb. 22, 2018, now Pat. No. Des. 855,822.

(51) **LOC (12) Cl.** .............................................. **28-03**
(52) **U.S. Cl.**
      USPC ...................................................... **D24/215**
(58) **Field of Classification Search**
      USPC ...... D24/133, 200, 211, 212, 213, 214, 215; D8/14.1
      CPC .. A61H 23/0254; A61H 1/008; A61H 23/006; A61H 7/007
      See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,594,636 | A | * | 8/1926 | Smith ..................... A61H 23/02 601/154 |
| 1,784,301 | A | * | 12/1930 | Mekler ................... A61H 9/005 601/112 |
| 3,968,789 | A | * | 7/1976 | Simoncini ............... A46B 13/04 601/95 |
| 4,691,693 | A | * | 9/1987 | Sato ...................... A61H 7/003 601/115 |
| 4,989,613 | A | * | 2/1991 | Finkenberg .......... A61B 5/4504 600/552 |
| D323,034 | S | | 1/1992 | Reinstein |
| D329,291 | S | | 9/1992 | Wollman |
| D329,292 | S | | 9/1992 | Wollman |
| D331,467 | S | * | 12/1992 | Wollman .................... D24/200 |
| D335,073 | S | | 4/1993 | Anthony et al. |
| D378,338 | S | | 3/1997 | Acciville et al. |
| D388,175 | S | | 12/1997 | Lie |
| D403,220 | S | | 12/1998 | Kimata et al. |
| D407,498 | S | | 3/1999 | Cooper |

(Continued)

OTHER PUBLICATIONS

Amazon, "Hyperice_Portable Massage Device", Sep. 7, 2018. http://www.amazon.com/Hyperice_Hypervolt-Portable-Massage-Device/dp/B07BDLGRTN/ref=sr_1_3?crid=ZKGJ454VRAV9&keywords=hyperice+portable+massage+device&qid=1553098&s=gateway&sprefix=hyperice+portable+%2Caps%2C122&sr=8-3. Shown on p. 1. (Year: 2018).

*Primary Examiner* — Cynthia Ramirez
*Assistant Examiner* — Michael A Maharajh
(74) *Attorney, Agent, or Firm* — Patterson Intellectual Property Law, P.C.; Jerry Turner Sewell

(57)          **CLAIM**

The ornamental design for a "percussive massage device," as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of a percussive massage device, showing our new design;
FIG. **2** is a rear perspective view thereof;
FIG. **3** is a left side view thereof;
FIG. **4** is a right side view thereof;
FIG. **5** is a rear view thereof;
FIG. **6** is a front view thereof;
FIG. **7** is a bottom view thereof; and,
FIG. **8** is a top view thereof.
The broken lines in the drawings are for the purposes of illustrating portions of the percussive massage device, which form no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



## US D886,317 S

Page 2

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,925,002 A * | 7/1999 | Wollman | A61H 23/0263 601/46 |
| D430,938 S * | 9/2000 | Lee | D24/214 |
| D448,852 S * | 10/2001 | Engelen | D24/215 |
| D449,892 S | 10/2001 | Lie | |
| 6,401,289 B1 * | 6/2002 | Herbert | A61H 7/005 15/97.1 |
| D471,986 S | 3/2003 | Lie | |
| 6,581,596 B1 | 6/2003 | Truitt et al. | |
| D476,746 S * | 7/2003 | Harris | D24/214 |
| 6,682,496 B1 | 1/2004 | Pivaroff | |
| D487,219 S | 3/2004 | Chudy et al. | |
| D526,417 S | 8/2006 | Masuda | |
| D531,733 S * | 11/2006 | Burout, III | D24/215 |
| D553,252 S * | 10/2007 | Masuda | D24/214 |
| D583,639 S | 12/2008 | Axinte et al. | |
| D606,192 S * | 12/2009 | Summerer | D24/133 |
| D627,035 S | 11/2010 | Evar | |
| D649,657 S * | 11/2011 | Petersen | D24/215 |
| D658,759 S * | 5/2012 | Marescaux | D24/133 |
| 8,435,194 B2 * | 5/2013 | Dverin | A61B 18/14 601/112 |
| D703,337 S | 4/2014 | Fuhr et al. | |
| D706,433 S | 6/2014 | Fuhr et al. | |
| D708,742 S * | 7/2014 | Dallemagne | D24/133 |
| D725,978 S | 4/2015 | Uematsu et al. | |
| D734,863 S * | 7/2015 | Hennessey | D24/214 |
| D735,348 S * | 7/2015 | Hennessey | D24/211 |
| D738,516 S | 9/2015 | Karim | |
| D757,953 S | 5/2016 | Philips | |
| D759,237 S * | 6/2016 | Heath | D24/133 |
| D759,238 S * | 6/2016 | Heath | D24/133 |
| D759,831 S | 6/2016 | Levi et al. | |
| D763,442 S * | 8/2016 | Price | D24/133 |
| D778,439 S * | 2/2017 | Hakansson | D24/133 |
| 9,889,066 B2 | 2/2018 | Danby et al. | |
| D819,221 S * | 5/2018 | Lei | D24/200 |
| D823,478 S | 7/2018 | Park | |
| D825,073 S | 8/2018 | Lenke | |
| D827,842 S | 9/2018 | Bainton et al. | |
| D827,843 S | 9/2018 | Bainton et al. | |
| D837,395 S * | 1/2019 | Gan | D24/214 |
| D838,378 S | 1/2019 | Cao | |
| D840,547 S | 2/2019 | Harle et al. | |
| D842,491 S | 3/2019 | Fleming et al. | |

| | | | |
|---|---|---|---|
| D843,656 S * | 3/2019 | Zhang | D28/44.1 |
| D844,896 S * | 4/2019 | Levi | D28/44.1 |
| D847,362 S | 4/2019 | Tang | |
| D847,364 S * | 4/2019 | Lee | D24/215 |
| D847,990 S * | 5/2019 | Kimball | D24/145 |
| D848,013 S | 5/2019 | Fuhner et al. | |
| 10,314,762 B1 | 6/2019 | Marton et al. | |
| 10,357,425 B2 * | 7/2019 | Wersland | A61H 15/0085 |
| D855,822 S | 8/2019 | Marton et al. | |
| 10,492,984 B2 * | 12/2019 | Marton | A61H 1/00 |
| D874,015 S * | 1/2020 | Marton | D24/215 |
| 2002/0177975 A1 * | 11/2002 | Frye | A61H 1/008 601/84 |
| 2002/0188233 A1 * | 12/2002 | Denyes | A61H 19/34 601/46 |
| 2003/0195443 A1 * | 10/2003 | Miller | A61H 1/008 601/108 |
| 2005/0113725 A1 | 5/2005 | Masuda | |
| 2005/0131461 A1 * | 6/2005 | Tucek | A61H 1/008 606/239 |
| 2006/0116614 A1 * | 6/2006 | Jones | A61H 15/0085 601/80 |
| 2006/0211961 A1 * | 9/2006 | Meyer | A61H 7/005 601/73 |
| 2010/0145242 A1 * | 6/2010 | Tsai | A61H 7/004 601/108 |
| 2010/0160841 A1 * | 6/2010 | Wu | A61H 7/004 601/135 |
| 2010/0274162 A1 | 10/2010 | Evans | |
| 2010/0312156 A1 | 12/2010 | Wu | |
| 2011/0009783 A1 | 1/2011 | Dverin et al. | |
| 2012/0197357 A1 * | 8/2012 | Dewey | A61B 18/203 607/89 |
| 2013/0030506 A1 * | 1/2013 | Bartolone | A61N 5/0616 607/89 |
| 2014/0221887 A1 * | 8/2014 | Wu | A61H 15/0092 601/112 |
| 2015/0119771 A1 | 4/2015 | Roberts | |
| 2016/0074641 A1 | 3/2016 | Mehta | |
| 2016/0367425 A1 | 12/2016 | Wersland | |
| 2017/0304145 A1 | 10/2017 | Pepe | |
| 2018/0154141 A1 * | 6/2018 | Ahn | A61H 39/08 |
| 2018/0200141 A1 * | 7/2018 | Wersland | A61H 1/008 |
| 2018/0361137 A1 | 12/2018 | Kern et al. | |
| 2019/0175434 A1 * | 6/2019 | Zhang | A61H 1/008 |
| 2019/0254921 A1 * | 8/2019 | Marton | A61H 23/006 |
| 2019/0254922 A1 | 8/2019 | Marton et al. | |

* cited by examiner



*FIG. 1*



*FIG. 2*



*FIG. 4*

*FIG. 3*



*FIG. 8*



*FIG. 7*



*FIG. 6*



*FIG. 5*

# EXHIBIT 4

US00D855822S

(12) **United States Design Patent** (10) Patent No.: **US D855,822 S**

Marton et al. (45) Date of Patent: ** **Aug. 6, 2019**

(54) **PERCUSSIVE MASSAGE DEVICE**

(71) Applicant: **Hyper Ice, Inc.,** Irvine, CA (US)

(72) Inventors: **Robert Marton**, Yorba Linda, CA (US); **Anthony Katz**, Laguna Niguel, CA (US)

(73) Assignee: **Hyper Ice, Inc.,** Irvine, CA (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/637,855**

(22) Filed: **Feb. 22, 2018**

(51) **LOC (12) Cl.** ............................................ **28-03**

(52) **U.S. Cl.**
USPC ................................................. **D24/215**

(58) **Field of Classification Search**
USPC .. 601/15, 18, 19, 27, 28–32, 46, 47, 48, 52, 601/72, 99, 112, 113, 118, 135, 137, 601/DIG. 12, DIG. 14, DIG. 15, DIG. 16, 601/DIG. 17; D24/200, 211, 212, 213, D24/214, 215; D30/160; D8/61, 68; 600/38, 39, 40, 41
CPC ........................ A61H 2015/0042; A61H 23/00
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D323,034 | S | * | 1/1992 | Reinstein .................... D24/200 |
| D329,291 | S | * | 9/1992 | Wollman .................... D24/200 |
| D329,292 | S | * | 9/1992 | Wollman .................... D24/200 |
| D335,073 | S | * | 4/1993 | Anthony ....................... D8/61 |
| D388,175 | S | * | 12/1997 | Lie ............................ D24/215 |
| D403,220 | S | * | 12/1998 | Kimata ......................... D8/68 |
| 6,401,289 | B1 | * | 6/2002 | Herbert ............... A61H 7/005 601/137 |
| 6,581,596 | B1 | * | 6/2003 | Truitt ................... A61M 16/00 128/204.18 |
| 6,682,496 | B1 | | 1/2004 | Pivaroff |
| D487,174 | S | * | 3/2004 | Chudy ........................... D8/68 |
| D703,337 | S | * | 4/2014 | Fuhr ........................... D24/200 |
| D706,433 | S | * | 6/2014 | Fuhr ........................... D24/200 |
| D738,516 | S | * | 9/2015 | Karim ........................ D24/200 |
| D757,953 | S | * | 5/2016 | Philips ....................... D24/200 |
| D759,831 | S | * | 6/2016 | Levi .......................... D24/200 |
| 9,889,066 | B2 | | 2/2018 | Danby et al. |
| D823,478 | S | * | 7/2018 | Park .......................... D24/215 |
| D825,073 | S | * | 8/2018 | Lenke ........................ D24/215 |
| D827,842 | S | * | 9/2018 | Bainton ...................... D24/200 |
| D827,843 | S | * | 9/2018 | Bainton ...................... D24/200 |

(Continued)

OTHER PUBLICATIONS

Amazon, "Hyperice_Portable Massage Device", Sep. 7, 2018.https:// www.amazon.com/Hyperice-Hypervolt-Portable-Massage-Device/ dp/B07BDLGRTN/ref=sr_1_3?crid=ZKGJ454VRAV9&keywords= hyperice+portable+massage+device&qid=1553098108&s=gateway &sprefix=hyperice+portable+%2Caps%2C122&sr=8-3. Shown on p. 1. (Year: 2018).*

*Primary Examiner* — Cynthia Ramirez
*Assistant Examiner* — Michael A Maharajh
(74) *Attorney, Agent, or Firm* — Patterson Intellectual Property Law, P.C.; Jerry Turner Sewell

(57) **CLAIM**

The ornamental design for a "percussive massage device," as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of a percussive massage device, showing our new design;
FIG. **2** is a rear perspective view thereof;
FIG. **3** is a left side view thereof;
FIG. **4** is a right side view thereof;
FIG. **5** is a rear view thereof;
FIG. **6** is a front view thereof;
FIG. **7** is a bottom plan view thereof; and,
FIG. **8** is a top plan view thereof.
The broken lines in the drawings are for the purpose of illustrating portions of the percussive massage device, which form no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



## US D855,822 S

Page 2

(56)        **References Cited**

U.S. PATENT DOCUMENTS

D842,491  S   *   3/2019   Fleming ...................... D24/215
2016/0367425  A1    12/2016   Wersland

* cited by examiner



*FIG. 1*



*FIG. 2*



*FIG. 4*

*FIG. 3*



FIG. 8

FIG. 7



FIG. 6

FIG. 5

# EXHIBIT 5

US011857482B1

(12) **United States Patent**
Danby et al.

(10) Patent No.: **US 11,857,482 B1**
(45) Date of Patent: **Jan. 2, 2024**

(54) **MASSAGE DEVICE HAVING VARIABLE STROKE LENGTH**

(71) Applicant: **HYPERICE IP SUBCO, LLC**, Irvine, CA (US)

(72) Inventors: **Philip C. Danby**, Key Biscayne, FL (US); **John Charles Danby**, Witham (GB)

(73) Assignee: **HYPERICE IP SUBCO, LLC**, Irvine, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **17/681,367**

(22) Filed: **Feb. 25, 2022**

**Related U.S. Application Data**

(63) Continuation of application No. 15/892,665, filed on Feb. 9, 2018, now Pat. No. 11,285,075, which is a continuation of application No. 14/317,573, filed on Jun. 27, 2014, now Pat. No. 9,889,066.

(60) Provisional application No. 61/841,693, filed on Jul. 1, 2013.

(51) **Int. Cl.**
*A61H 23/02* (2006.01)

(52) **U.S. Cl.**
CPC . *A61H 23/0254* (2013.01); *A61H 2201/0107* (2013.01); *A61H 2201/0153* (2013.01); *A61H 2201/0157* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/149* (2013.01); *A61H 2201/1418* (2013.01); *A61H 2201/1664* (2013.01); *A61H 2201/501* (2013.01); *A61H 2201/5005* (2013.01); *A61H 2201/5015* (2013.01); *A61H 2201/5035* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........ A61H 23/0254; A61H 2201/0107; A61H 2201/0153; A61H 2201/0157; A61H 2201/1215; A61H 2201/1418; A61H 2201/149; A61H 2201/1664; A61H 2201/5005; A61H 2201/501; A61H 2201/5015; A61H 2201/5035; A61H 2201/5038; A61H 2201/5097
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 784,024 A | 3/1905 | Barrett et al. | |
| 799,881 A | 9/1905 | Wells | |
| 873,123 A | 12/1907 | Gardy | |
| (Continued) | | | |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CA | 1042745 A | 11/1978 | |
| CA | 2440783 A1 | 3/2004 | |
| (Continued) | | | |

OTHER PUBLICATIONS

http://web.archive.org/web/20100418041422/http://www.instructables.com/id/Jigsaw-Massager/; Apr. 18, 2010. (Year: 2010).*
(Continued)

*Primary Examiner* — Timothy A Stanis
(74) *Attorney, Agent, or Firm* — Goodwin Procter LLP

(57) **ABSTRACT**

Exemplary embodiments of massaging devices are disclosed herein. One exemplary embodiment includes a piston having a longitudinal axis, a massaging head connected to the piston, a motor located on a first side of the longitudinal axis and a handle located on a second side of the longitudinal axis. A drive mechanism for moving the piston and massage head is also included.

**61 Claims, 7 Drawing Sheets**



**US 11,857,482 B1**

Page 2

(52) **U.S. Cl.**
CPC ................ *A61H 2201/5038* (2013.01); *A61H 2201/5097* (2013.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,339,179 A | 5/1920 | Elmen | |
| 1,594,636 A | 8/1926 | Smith | |
| 1,612,981 A | 1/1927 | Mraula | |
| 1,657,765 A | 1/1928 | Pasque | |
| 1,784,301 A | 12/1930 | Mekler | |
| 1,978,223 A | 10/1934 | Parker | |
| 3,030,647 A | 4/1962 | Peyron | |
| 3,494,353 A | 2/1970 | Marich | |
| 3,626,934 A | 12/1971 | Andis | |
| 3,699,952 A | 10/1972 | Waters et al. | |
| 3,705,578 A | 12/1972 | Cutler et al. | |
| 3,710,785 A | 1/1973 | Hilger | |
| 3,841,321 A | 10/1974 | Albach et al. | |
| 3,845,758 A | 11/1974 | Anderson | |
| 3,920,291 A | 11/1975 | Wendel et al. | |
| 3,968,789 A | 7/1976 | Simoncini | |
| 3,993,012 A | 11/1976 | Miyahara | |
| 4,088,128 A | 5/1978 | Mabuchi | |
| 4,149,530 A | 4/1979 | Gow | |
| 4,150,668 A | 4/1979 | Johnston | |
| 4,162,675 A | 7/1979 | Kawada | |
| 4,173,217 A | 11/1979 | Johnston | |
| RE30,500 E | 2/1981 | Springer et al. | |
| 4,412,535 A | 11/1983 | Teren | |
| 4,505,267 A | 3/1985 | Inada | |
| 4,513,737 A | 4/1985 | Mabuchi | |
| 4,523,580 A | 6/1985 | Tureaud | |
| 4,549,535 A | 10/1985 | Wing | |
| 4,566,442 A | 1/1986 | Mabuchi et al. | |
| 4,691,693 A | 9/1987 | Sato | |
| 4,709,201 A | 11/1987 | Schaefer et al. | |
| 4,730,605 A | 3/1988 | Noble et al. | |
| 4,751,452 A | 6/1988 | Kilmer et al. | |
| 4,790,296 A | 12/1988 | Segal | |
| 4,827,914 A | 5/1989 | Kamazawa | |
| 4,841,955 A | 6/1989 | Evans et al. | |
| 4,858,600 A | 8/1989 | Gross et al. | |
| 4,880,713 A | 11/1989 | Levine | |
| 4,989,613 A | 2/1991 | Finkenberg | |
| 5,063,911 A | 11/1991 | Teranishi | |
| 5,065,743 A | 11/1991 | Sutherland | |
| D323,034 S | 1/1992 | Reinstein | |
| D323,606 S | 2/1992 | Chang | |
| 5,085,207 A | 2/1992 | Fiore | |
| 5,134,777 A * | 8/1992 | Meyer ................. B23D 49/167 30/392 | |
| 5,140,979 A | 8/1992 | Nakagawa | |
| D329,292 S | 9/1992 | Wollman | |
| 5,159,922 A | 11/1992 | Mabuchi et al. | |
| D331,467 S | 12/1992 | Wollman | |
| D335,073 S | 4/1993 | Anthony et al. | |
| 5,215,078 A | 6/1993 | Fulop | |
| 5,305,738 A | 4/1994 | Shimizu | |
| 5,311,860 A | 5/1994 | Doria | |
| 5,364,223 A | 11/1994 | Bissex | |
| 5,415,621 A | 5/1995 | Campbell | |
| 5,417,644 A | 5/1995 | Lee | |
| 5,447,491 A | 9/1995 | Bellandi et al. | |
| 5,469,860 A | 11/1995 | De Santis | |
| 5,489,280 A | 2/1996 | Russell | |
| D367,712 S | 3/1996 | Young | |
| D373,640 S | 9/1996 | Young | |
| 5,569,168 A | 10/1996 | Hartwig | |
| 5,573,500 A | 11/1996 | Katsunuma et al. | |
| 5,602,432 A | 2/1997 | Mizutani | |
| D378,338 S | 3/1997 | Acciville et al. | |
| 5,632,720 A | 5/1997 | Kleitz | |
| 5,656,017 A | 8/1997 | Keller et al. | |
| 5,656,018 A | 8/1997 | Tseng | |
| D388,175 S | 12/1997 | Lie | |

| | | | |
|---|---|---|---|
| 5,725,483 A | 3/1998 | Podolsky | |
| 5,733,029 A | 3/1998 | Monroe | |
| 5,797,462 A | 8/1998 | Rahm | |
| 5,803,916 A | 9/1998 | Kuznets et al. | |
| D403,220 S | 12/1998 | Kimata et al. | |
| 5,843,006 A | 12/1998 | Phillips et al. | |
| D407,498 S | 3/1999 | Cooper | |
| D408,241 S | 4/1999 | Jansson | |
| 5,925,002 A | 7/1999 | Wollman | |
| 5,951,501 A | 9/1999 | Griner | |
| 6,051,957 A | 4/2000 | Klein | |
| 6,102,875 A | 8/2000 | Jones | |
| 6,123,657 A | 9/2000 | Ishikawa et al. | |
| 6,165,145 A | 12/2000 | Noble | |
| 6,170,108 B1 | 1/2001 | Knight | |
| D437,713 S | 2/2001 | Young | |
| D438,309 S | 2/2001 | Young | |
| 6,228,042 B1 * | 5/2001 | Dungan ................. A61H 1/008 601/107 | |
| 6,231,497 B1 | 5/2001 | Souder | |
| 6,357,125 B1 * | 3/2002 | Feldmann ............. B23D 51/16 30/277.4 | |
| D455,837 S | 4/2002 | Kim | |
| 6,375,609 B1 | 4/2002 | Hastings et al. | |
| 6,401,289 B1 | 6/2002 | Herbert | |
| 6,402,710 B1 | 6/2002 | Hsu | |
| D460,675 S | 7/2002 | Morgan | |
| 6,432,072 B1 * | 8/2002 | Harris ................. A61H 23/0254 601/111 | |
| 6,440,091 B1 | 8/2002 | Hirosawa | |
| 6,461,377 B1 | 10/2002 | An | |
| 6,478,755 B2 | 11/2002 | Young | |
| D467,148 S | 12/2002 | Flickinger | |
| 6,494,849 B2 | 12/2002 | Kuo | |
| 6,503,211 B2 | 1/2003 | Frye | |
| 6,537,236 B2 | 3/2003 | Tucek et al. | |
| D474,089 S | 5/2003 | Huang | |
| 6,577,287 B2 | 6/2003 | Havel | |
| 6,581,596 B1 | 6/2003 | Truitt et al. | |
| 6,585,667 B1 | 7/2003 | Muller | |
| 6,616,621 B1 | 9/2003 | Kohr | |
| 6,656,140 B2 | 12/2003 | Oguma et al. | |
| 6,663,657 B1 | 12/2003 | Miller | |
| 6,682,496 B1 * | 1/2004 | Pivaroff ................. A61H 7/005 601/107 | |
| D487,219 S | 3/2004 | Chudy et al. | |
| 6,758,826 B2 | 7/2004 | Luettgen et al. | |
| 6,805,700 B2 | 10/2004 | Miller | |
| D498,128 S | 11/2004 | Sterling | |
| 6,832,991 B1 | 12/2004 | Inada et al. | |
| 6,866,776 B2 | 3/2005 | Leason et al. | |
| 6,979,300 B1 | 12/2005 | Julian et al. | |
| 6,994,679 B1 | 2/2006 | Lee | |
| 7,033,329 B2 | 4/2006 | Liao | |
| 7,041,072 B2 | 5/2006 | Calvert | |
| 7,083,581 B2 | 8/2006 | Tsai | |
| 7,125,390 B2 | 10/2006 | Ferber et al. | |
| 7,128,722 B2 | 10/2006 | Lev et al. | |
| D536,591 S | 2/2007 | Ghode et al. | |
| 7,211,057 B2 | 5/2007 | Gleason et al. | |
| D544,102 S | 6/2007 | Pivaroff | |
| 7,229,424 B2 | 6/2007 | Jones et al. | |
| 7,238,162 B2 | 7/2007 | Dehli | |
| 7,264,598 B2 | 9/2007 | Shin | |
| 7,270,641 B2 | 9/2007 | Glucksman et al. | |
| 7,282,036 B2 | 10/2007 | Masuda | |
| 7,282,037 B2 | 10/2007 | Cho | |
| D555,255 S | 11/2007 | Masuda | |
| 7,306,569 B2 | 12/2007 | LaJoie et al. | |
| 7,322,946 B2 | 1/2008 | Lev et al. | |
| 7,335,170 B2 | 2/2008 | Milne et al. | |
| 7,354,408 B2 | 4/2008 | Muchisky | |
| 7,470,242 B2 | 12/2008 | Ferber et al. | |
| 7,503,923 B2 * | 3/2009 | Miller ................. A61H 1/008 173/90 | |
| 7,507,198 B2 | 3/2009 | Ardizzone et al. | |
| 7,517,327 B1 | 4/2009 | Knight | |
| 7,597,669 B2 | 10/2009 | Huang | |
| 7,629,766 B2 | 12/2009 | Sadow | |

US 11,857,482 B1

Page 3

(56)                    **References Cited**

U.S. PATENT DOCUMENTS

| 7,634,314 | B2 | 12/2009 | Applebaum et al. |
| D625,164 | S | 10/2010 | Aglassinger |
| 7,927,259 | B1 * | 4/2011 | Rix ........................ A61H 23/02 |
| | | | 601/41 |
| 7,927,294 | B2 | 4/2011 | Kamimura et al. |
| 7,976,485 | B2 | 7/2011 | Huang |
| 8,052,625 | B2 | 11/2011 | Tsai et al. |
| 8,083,699 | B2 | 12/2011 | Colloca et al. |
| 8,092,407 | B2 | 1/2012 | Tsukada et al. |
| 8,192,379 | B2 | 6/2012 | Huang |
| 8,282,583 | B2 | 10/2012 | Tsai |
| 8,317,733 | B2 | 11/2012 | Chen et al. |
| 8,342,187 | B2 | 1/2013 | Kalman et al. |
| 8,475,362 | B2 | 7/2013 | Sohn et al. |
| 8,632,525 | B2 | 1/2014 | Kerr et al. |
| 8,673,487 | B2 | 3/2014 | Churchill |
| D703,337 | S | 4/2014 | Fuhr et al. |
| D706,433 | S | 6/2014 | Fuhr et al. |
| 8,951,216 | B2 | 2/2015 | Yoo et al. |
| D725,978 | S | 4/2015 | Uematsu et al. |
| 9,017,355 | B2 | 4/2015 | Smith et al. |
| 9,107,690 | B2 | 8/2015 | Bales, Jr. et al. |
| D738,516 | S | 9/2015 | Karim |
| 9,272,141 | B2 | 3/2016 | Nichols |
| D752,936 | S | 4/2016 | King et al. |
| D757,953 | S | 5/2016 | Philips |
| 9,333,371 | B2 | 5/2016 | Bean et al. |
| D759,831 | S | 6/2016 | Levi et al. |
| 9,756,402 | B2 | 9/2017 | Stampfl et al. |
| 9,889,066 | B2 | 2/2018 | Danby et al. |
| D823,478 | S | 7/2018 | Park |
| D825,073 | S | 8/2018 | Lenke |
| D827,842 | S | 9/2018 | Bainton et al. |
| D827,843 | S | 9/2018 | Bainton et al. |
| 10,162,106 | B1 | 12/2018 | Grillo et al. |
| D840,032 | S | 2/2019 | Clifford et al. |
| D842,491 | S | 3/2019 | Fleming et al. |
| 10,245,033 | B2 | 4/2019 | Overmyer et al. |
| 10,314,762 | B1 | 6/2019 | Marton et al. |
| 10,357,425 | B2 | 7/2019 | Wersland et al. |
| D869,928 | S | 12/2019 | Hsiao |
| D879,290 | S | 3/2020 | Harman et al. |
| 10,743,626 | B2 | 8/2020 | Katano et al. |
| 2002/0058892 | A1 | 5/2002 | Young |
| 2002/0161315 | A1 | 10/2002 | Harris et al. |
| 2003/0060741 | A1 | 3/2003 | Park |
| 2003/0114781 | A1 | 6/2003 | Beaty et al. |
| 2003/0130602 | A1 | 7/2003 | Chang |
| 2003/0144615 | A1 | 7/2003 | Lin |
| 2003/0195438 | A1 | 10/2003 | Petillo |
| 2003/0195443 | A1 * | 10/2003 | Miller ..................... A61H 23/02 |
| | | | 601/108 |
| 2003/0218045 | A1 | 11/2003 | Shkolnikov |
| 2004/0010268 | A1 | 1/2004 | Gabehart |
| 2004/0144553 | A1 | 7/2004 | Ashbaugh |
| 2005/0015030 | A1 | 1/2005 | Bousfield et al. |
| 2005/0096571 | A1 | 5/2005 | Miki |
| 2005/0096682 | A1 | 5/2005 | Daffer |
| 2005/0192519 | A1 | 9/2005 | Crunick |
| 2005/0203448 | A1 | 9/2005 | Harris et al. |
| 2006/0025710 | A1 | 2/2006 | Schulz et al. |
| 2006/0058714 | A1 | 3/2006 | Rhoades |
| 2006/0074360 | A1 | 4/2006 | Yu |
| 2006/0178040 | A1 | 8/2006 | Kurosawa |
| 2006/0178715 | A1 * | 8/2006 | Ahn ........................ A61H 39/06 |
| | | | 607/96 |
| 2007/0144310 | A1 | 6/2007 | Pozgay et al. |
| 2007/0150004 | A1 * | 6/2007 | Colloca ................. A61H 1/008 |
| | | | 606/237 |
| 2007/0154783 | A1 | 7/2007 | Jeon |
| 2007/0179414 | A1 | 8/2007 | Imboden et al. |
| 2008/0196513 | A1 | 8/2008 | Hoffmann et al. |
| 2008/0214968 | A1 | 9/2008 | Milne et al. |
| 2008/0234611 | A1 | 9/2008 | Sakai et al. |

| 2008/0243039 | A1 * | 10/2008 | Rhoades .............. A61N 5/0616 |
| | | | 601/72 |
| 2008/0262397 | A1 | 10/2008 | Habatjou |
| 2008/0306417 | A1 | 12/2008 | Imboden et al. |
| 2009/0000039 | A1 | 1/2009 | St. John et al. |
| 2009/0005812 | A1 | 1/2009 | Fuhr |
| 2009/0182249 | A1 | 7/2009 | Sakai et al. |
| 2009/0270915 | A1 * | 10/2009 | Tsai ........................ A61H 1/008 |
| | | | 606/238 |
| 2009/0286145 | A1 | 11/2009 | Wan et al. |
| 2009/0306577 | A1 | 12/2009 | Akridge et al. |
| 2010/0116517 | A1 | 5/2010 | Katzenberger et al. |
| 2010/0164434 | A1 | 7/2010 | Cacioppo et al. |
| 2010/0185127 | A1 | 7/2010 | Nilsson et al. |
| 2010/0228168 | A1 | 9/2010 | Xu et al. |
| 2010/0252294 | A1 | 10/2010 | Kondo et al. |
| 2010/0274162 | A1 | 10/2010 | Evans |
| 2010/0331745 | A1 | 12/2010 | Yao |
| 2011/0087141 | A1 | 4/2011 | Wagy et al. |
| 2011/0106067 | A1 | 5/2011 | Geva et al. |
| 2011/0169481 | A1 | 7/2011 | Nguyen et al. |
| 2012/0038483 | A1 | 2/2012 | Du et al. |
| 2012/0120573 | A1 | 5/2012 | Bentley |
| 2012/0253245 | A1 * | 10/2012 | Stanbridge ........... A61B 23/006 |
| | | | 601/101 |
| 2012/0259255 | A1 | 10/2012 | Tomlinson et al. |
| 2012/0281392 | A1 | 11/2012 | Workman et al. |
| 2013/0006040 | A1 | 1/2013 | Lee |
| 2013/0076271 | A1 | 3/2013 | Suda et al. |
| 2013/0102937 | A1 * | 4/2013 | Ehrenreich .......... A61B 5/6833 |
| | | | 601/47 |
| 2013/0112451 | A1 | 5/2013 | Kondo et al. |
| 2013/0138023 | A1 | 5/2013 | Lerro |
| 2013/0261516 | A1 * | 10/2013 | Cilea .................... A61H 23/006 |
| | | | 601/108 |
| 2013/0281897 | A1 | 10/2013 | Hoffmann et al. |
| 2013/0294019 | A1 | 11/2013 | LaSota et al. |
| 2014/0014384 | A1 | 1/2014 | Horie et al. |
| 2014/0094724 | A1 | 4/2014 | Freeman |
| 2014/0159507 | A1 | 6/2014 | Johnson et al. |
| 2015/0005682 | A1 | 1/2015 | Danby et al. |
| 2015/0148592 | A1 | 5/2015 | Kanbar et al. |
| 2016/0151238 | A1 | 6/2016 | Crunick et al. |
| 2016/0271009 | A1 | 9/2016 | Giraud et al. |
| 2016/0354277 | A1 | 12/2016 | Fima |
| 2016/0367425 | A1 | 12/2016 | Wersland |
| 2017/0012257 | A1 | 1/2017 | Wackwitz et al. |
| 2017/0027798 | A1 | 2/2017 | Wersland |
| 2017/0028160 | A1 | 2/2017 | Oliver |
| 2017/0304145 | A1 | 10/2017 | Pepe |
| 2018/0008512 | A1 | 1/2018 | Goldstein |
| 2018/0200141 | A1 | 7/2018 | Wersland et al. |
| 2019/0125972 | A1 | 5/2019 | Srinivasan et al. |
| 2019/0198828 | A1 | 6/2019 | Zanon et al. |
| 2020/0093945 | A1 | 3/2020 | Jeong |
| 2020/0128935 | A1 | 4/2020 | Turner |
| 2020/0261306 | A1 | 8/2020 | Pepe |
| 2020/0261307 | A1 | 8/2020 | Wersland et al. |
| 2020/0329858 | A1 | 10/2020 | Katano et al. |

FOREIGN PATENT DOCUMENTS

| CN | 2049126 | U | 12/1989 |
| CN | 2207816 | Y | 9/1995 |
| CN | 1149446 | A | 5/1997 |
| CN | 1228299 | A | 9/1999 |
| CN | 2412567 | Y | 1/2001 |
| CN | 2540948 | Y | 3/2003 |
| CN | 2694966 | Y | 4/2005 |
| CN | 201478387 | U | 5/2010 |
| CN | 202478137 | U | 10/2012 |
| CN | 202536467 | U | 11/2012 |
| CN | 101958410 | B | 1/2013 |
| CN | 203195947 | U | 9/2013 |
| CN | 204208018 | U | 3/2015 |
| CN | 204246459 | U | 4/2015 |
| CN | 204814773 | U | 12/2015 |
| CN | 205251993 | U | 5/2016 |

US 11,857,482 B1

Page 4

(56)          **References Cited**

FOREIGN PATENT DOCUMENTS

| CN | 205458346 | U | 8/2016 |
| CN | 206183628 | U | 5/2017 |
| CN | 106806103 | A | 6/2017 |
| CN | 206333979 | U | 7/2017 |
| CN | 206381373 | U | 8/2017 |
| CN | 107157741 | A | 9/2017 |
| CN | 206675699 | U | 11/2017 |
| CN | 304486625 | | 2/2018 |
| CN | 208130157 | U | 11/2018 |
| CN | 210872953 | U | 6/2020 |
| DE | 102012212256 | A1 | 1/2014 |
| DE | 202013012621 | U1 | 12/2017 |
| EM | 004377638-0002 | | 10/2017 |
| EP | 0040053 | A1 | 11/1981 |
| EP | 0666071 | A1 | 8/1995 |
| EP | 0572506 | B1 | 1/1997 |
| EP | 1620233 | B1 | 2/2007 |
| EP | 2510891 | B1 | 6/2016 |
| EP | 3062383 | A2 | 8/2016 |
| FI | 903376 | A | 12/1991 |
| GB | 191209026 | A | 3/1913 |
| GB | 191509508 | A | 6/1916 |
| GB | 188946 | A | 11/1922 |
| GB | 213117 | A | 3/1924 |
| GB | 1293876 | A | 10/1972 |
| JP | S54110058 | A | 8/1979 |
| JP | S6389158 | A | 4/1988 |
| JP | H04250161 | A | 9/1992 |
| JP | H053901 | A | 1/1993 |
| JP | H0751393 | A | 2/1995 |
| JP | H07153440 | A | 6/1995 |
| JP | H0866448 | A | 3/1996 |
| JP | H08131500 | A | 5/1996 |
| JP | H0992246 | A | 4/1997 |
| JP | 2002218780 | A | 8/2002 |
| JP | 2003230613 | A | 8/2003 |
| JP | 2004024523 | A | 1/2004 |
| JP | 2004141568 | A | 5/2004 |
| JP | 2007044319 | A | 2/2007 |
| JP | 2009291451 | A | 12/2009 |
| JP | 2010075288 | A | 4/2010 |
| JP | 5859905 | B2 | 2/2016 |
| KR | 20000043488 | A | 7/2000 |
| KR | 20030008342 | A | 1/2003 |
| KR | 200311328 | Y1 | 5/2003 |
| KR | 20060074625 | A | 7/2006 |
| KR | 200422971 | Y1 | 8/2006 |
| KR | 100785097 | B1 | 12/2007 |
| KR | 20090128807 | A | 12/2009 |
| KR | 2010-0023508 | A | 3/2010 |
| KR | 101007827 | B1 | 1/2011 |
| KR | 101162978 | B1 | 7/2012 |
| KR | 101315314 | B1 | 10/2013 |
| KR | 101504885 | B1 | 3/2015 |
| KR | 101649522 | B1 | 8/2016 |
| RU | 2053754 | C1 | 2/1996 |
| RU | 2464005 | C1 | 10/2012 |
| TW | M272528 | U | 8/2005 |
| TW | M379178 | U | 4/2010 |
| TW | M402573 | U | 4/2011 |
| TW | M433702 | U | 7/2012 |
| TW | M493379 | U | 1/2015 |
| TW | M543692 | U | 6/2017 |
| WO | WO-9214435 | A1 | 9/1992 |
| WO | WO-9625908 | A1 | 8/1996 |
| WO | WO-03006102 | A2 | 1/2003 |
| WO | WO-2008/113139 | A1 | 9/2008 |
| WO | WO-2009/014727 | A1 | 1/2009 |
| WO | WO-2011122812 | A2 | 10/2011 |
| WO | WO-2012/134469 | A1 | 10/2012 |
| WO | WO-2013/141359 | A1 | 9/2013 |
| WO | WO-2014118596 | A1 | 8/2014 |
| WO | WO-2015038005 | A2 | 3/2015 |
| WO | WO-2017/123841 | A2 | 7/2017 |
| WO | WO-2017/184505 | A2 | 10/2017 |

OTHER PUBLICATIONS

Campbell, D., "Jolt Therapy Tool," https://www.youtube.com/watch?v=-1nLjD-xRgl, Jul. 28, 2017, 3 pages.

Centech 4 in 1 Portable Power Pack Owner's Manual & Safety Instructions, 2014, 12 pages.

Christiana, A., "Porter-Cable PCL212ICC-2 12V Compact Lithium Two Tool Kit," Dec. 5, 2014, 5 pages.

DePuy Synthes Power Tools, "Battery Power Line II, User's Manual," for Battery-driven power tool system for orthopedics and traumatology, Dec. 2012, 83 pages.

DIY Jigsaw "Drill" Massager—Percussion Massager, Feb. 9, 2018, 19 pages.

Knopp, B., "How to Change Jolt Attachments," https://www.youtube.com/watch?v=pl-vHxRtXUQ, Apr. 5, 2017, 6 pages.

NutriKlick Deep Tissue Massage Gun, Date Unknown.

PERFOMAX 8 Volt Li-Ion Cordless Driver Owner's Manual, www.manualslib.com, Jul. 27, 2012, 19 pages.

Rachel [family name unknown], "Jigsaw Massager," Aug. 28, 2007, 8 pages. Information available online from http://www.instructables.com/id/jigsaw-massager/.

Synthes Battery Power Line, Jun. 2009, 6 pages.

Theragun Owners Manual G2PRO, 16 pages.

TIMTAM Power Massage 1.5, Aug. 7, 2020, 4 pages.

TOPiando Multifunctional Massage Gun, 19 pages, date unknown.

Yu-Chung, C., "Electrolux Power Drill," www.design-inspiration.net/inspiration/yu-chung-chang-electrolux-power-drill/, Aug. 20, 2017, 4 pages.

* cited by examiner



FIG. 1



**FIG. 2**



FIG. 3



FIG. 4



**FIG. 5A**

**FIG. 5B**

**FIG. 6**

**FIG. 6A**

**FIG. 6B**



**FIG. 7**



**FIG. 8**

US 11,857,482 B1

**1**

# MASSAGE DEVICE HAVING VARIABLE STROKE LENGTH

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 15/892,665 filed on Feb. 9, 2018, and entitled "MASSAGE DEVICE HAVING VARIABLE STROKE LENGTH", which is a continuation of U.S. patent application Ser. No. 14/317,573 filed on Jun. 27, 2014, and entitled "MASSAGING DEVICE HAVING A HEAT SINK" (now U.S. Pat. No. 9,889,066 issued on Feb. 13, 2018), which claims priority to and the benefits of U.S. Provisional Patent Application No. 61/841,693 filed on Jul. 1, 2013, and entitled "MASSAGING DEVICE", the entireties of which are incorporated herein by reference.

## BACKGROUND

This invention relates generally to medical devices, and more particularly, to a deep muscle-stimulating device used to increase muscle metabolism, increase the lactic acid cycle and relieve pain.

Vibrating massaging devices are available on the market today; however, those devices suffer from many deficiencies. Many of the prior art massaging devices are bulky, get very hot, are noisy and/or are difficult to use for extended periods of time.

## SUMMARY

Exemplary embodiments of massaging devices are disclosed herein. One exemplary embodiment includes a piston having a longitudinal axis and a massaging head connected to the piston. A motor is located on a first side of the longitudinal axis and a handle is located on a second side of the longitudinal axis. A drive mechanism for moving the piston and massage head is also included.

Another exemplary embodiment of a massaging device includes a handle, a piston, a massaging head attached to the piston, a motor, a drive mechanism for converting rotary motion of the motor to linear motion to drive the piston back and forth in a reciprocating motion, a processor, memory, a data connection in circuit communication with the processor and logic for transmitting data between the massaging device and a remote device.

Still another exemplary embodiment includes a massaging device that has a handle, a motor, a drive mechanism for converting rotary motion of the motor to reciprocating motion, a piston movable in a linear reciprocating motion connected to the drive mechanism and a massage head attached to the piston. The exemplary embodiment also includes a heat sink in thermal communication with the motor and drive mechanism, and a housing having two cavities. The first cavity at least partially surrounds the motor and the second cavity at least partially surrounds the heat sink. The cavities are separated from one another and the second cavity includes one or more openings for allowing air to flow over the heat sink to dissipate heat from the massager.

Another exemplary massaging device includes a housing, a handle extending outward from the housing and a piston having a longitudinal axis extending substantially perpendicular to the handle. A massaging head is connected to the piston. In addition, the massaging device includes a motor,

**2**

a drive mechanism for moving the piston and a control panel. The control panel is located on the housing above the handle.

In yet another exemplary embodiment, a massaging device includes a handle, a piston, a quick-connection mechanism and one or more massaging heads releasably connectable to the piston by the quick-connection mechanism. The massaging device further includes a motor and a drive mechanism for moving the piston.

Another exemplary massaging device includes a handle, a piston, a massaging head connected to the piston, a motor and a drive mechanism for moving the piston. The drive mechanism includes a crank bearing that has one or more spring bars.

Still yet, another exemplary massaging device includes a handle, a piston a massaging head connected to the piston, a drive mechanism for moving the piston in a back and forth motion and a lost motion mechanism located between the massaging head and the drive mechanism.

## BRIEF DESCRIPTION OF THE DRAWINGS

These and other features and advantages of the present invention will become better understood with regard to the following description and accompanying drawings in which:

FIG. **1** illustrates a perspective view of an exemplary embodiment of a massaging device;

FIG. **2** illustrates a first cross-section of the exemplary massaging device of FIG. **1**;

FIG. **3** illustrates a second cross-section of the exemplary massaging device of FIG. **1**;

FIG. **4** illustrates an exploded perspective view of an exemplary drive mechanism of the massaging device;

FIGS. **5**A and **5**B show enlarged side views of a crank bearing having spring bars for use in the exemplary drive mechanism of FIG. **4**;

FIGS. **6**, **6**A and **6**B illustrate an exemplary quick-disconnect mechanism for connecting one or more massaging heads to a massaging device;

FIG. **7** illustrates a schematic view of an exemplary lost motion control mechanism for varying the stroke of the piston driving a massaging head; and

FIG. **8** illustrates an exemplary embodiment of a simplified block circuit diagram for a massaging device.

## DETAILED DESCRIPTION

The Detailed Description merely describes exemplary embodiments of the invention and is not intended to limit the scope of the claims in any way. Indeed, the invention is broader than and unlimited by the exemplary embodiments, and unless specifically indicated otherwise, the terms used in the claims have their full ordinary meaning.

"Circuit communication" as used herein indicates a communicative relationship between devices. Direct electrical, electromagnetic and optical connections and indirect electrical, electromagnetic and optical connections are examples of circuit communication. Two devices are in circuit communication if a signal from one is received by the other, regardless of whether the signal is modified by some other device. For example, two devices separated by one or more of the following—amplifiers, filters, transformers, optoisolators, digital or analog buffers, analog integrators, other electronic circuitry, fiber optic transceivers or satellites—are in circuit communication if a signal from one is communicated to the other, even though the signal is modified by the intermediate device(s). As another example, an electromag-

US 11,857,482 B1

3

netic sensor is in circuit communication with a signal if it receives electromagnetic radiation from the signal. As a final example, two devices not directly connected to each other, but both capable of interfacing with a third device, such as, for example, a processor, are in circuit communication.

Also, as used herein, voltages and values representing digitized voltages are considered to be equivalent for the purposes of this application, and thus the term "voltage" as used herein refers to either a signal, or a value in a processor representing a signal, or a value in a processor determined from a value representing a signal.

"Signal," as used herein includes, but is not limited to one or more electrical signals, analog or digital signals, one or more computer instructions, a bit or bit stream, or the like.

"Logic," synonymous with "circuit" as used herein includes, but is not limited to hardware, firmware, software and/or combinations of each to perform a function(s) or an action(s). For example, based on a desired application or needs, logic may include a software-controlled processor, microprocessor or microcontroller, discrete logic, such as an application specific integrated circuit (ASIC) or other programmed logic device. Logic may also be fully embodied as software. The circuits identified and described herein may have many different configurations to perform the desired functions.

Any values identified in the detailed description are exemplary, and they are determined as needed for a particular massaging device. Accordingly, the inventive concepts disclosed and claimed herein are not limited to particular values or ranges of values used to describe the embodiments disclosed herein.

FIG. **1** is a perspective view of an exemplary embodiment of a hand-held massaging device **100**. The exemplary massaging device **100** includes a main housing **102** that houses a motor and a drive unit and an upper housing **104** that includes a heat sink and a fan. In addition, massaging device **100** includes a first handle **106**, and a second optional handle **108**. Handle **106** has a longitudinal axis that extends away from the housing **102**. The massaging device **100** also includes a massaging head **130**. As discussed in more detail below, in some embodiments massaging head **130** includes a quick-release connection.

Massaging device **100** includes a control panel **124**. In one embodiment, control panel **124** comprises a first momentary pushbutton **126** and a second momentary pushbutton **128**. First and second pushbuttons **126**, **128** may serve multiple purposes. In one embodiment, pushing the first pushbutton **126** once moves the massaging device **100** to a first preset speed. Pushing the first pushbutton **126** a second time moves the massaging device **100** to a second preset speed. Accordingly, multiple preset speeds may be selected by pushing a single pushbutton. In addition, pushing pushbutton **126** and holding it down may increase the speed of the massaging head until the user releases the pushbutton **126**.

In addition, if the massaging device **100** is turned off, pushing second pushbutton **128** once and holding it in for a period of time turns on the massaging device **100**. Pushing the second pushbutton **128** in and holding it in for a period of time, such as, for example one second, causes massaging device **100** to turn off. While massaging device **100** is turned on, pushing and releasing second pushbutton **128** decreases the speed of the massaging device **100** to the next lowest preset speed. Pushing and releasing pushbutton **128** again further reduces the speed of the massaging device **100**. In

4

some embodiments, the operating speed of the massaging device is generally between about 600 and 3600 strokes per minute.

The control panel **124** is located above handle **106** on upper housing **104**. Control panel **124** is located off of the handle **106**, which prevents accidental contact between a user's hand and the control panel **124** and allows a user to move her hand to any position on the handle **106** during operation. Preferably, control panel **124** is located so that it is reachable by a user's thumb without the user having to remove her hand from the handle **106**. In addition, massaging device **100** includes a power cord **132** for providing power to the massaging device **100**.

Although the exemplary control panel **124** illustrates two pushbuttons **126**, **128**, other controls may be used, such as dials and switches. In addition, visual or audible signals may be generated and displayed on control panel **124**. To that extent, control panel **124** may include a visual display (not shown), an audible device (not shown) or the like, such as, for example a speaker, or the like. If a visual or audible device is used, the visual or audible device may be located proximate the pushbuttons or other controls, or may be located apart from such controls.

Upper housing **104** includes an air intake aperture covered by intake grate **120** and one or more air outlet apertures covered by outtake grate(s) **122**. As described in more detail below, the heat-generating internal components of massaging device **100** are cooled by air passing through upper housing portion **104**.

FIGS. **2** and **3** are cross-sections of massaging device **100**. Located within handle **106** is control circuitry **260**. Control circuitry **260** is in circuit communication with power cord **132**, control panel **124**, fan **222** and motor **210**.

Motor **210** is located in housing **102** opposite handle **106**. Motor **210** is a variable speed DC motor; however, motor **210** may be a constant speed motor, an AC motor or the like. In one embodiment, motor **210** has an operating speed of between about 600 and 3600 revolutions per minute (RPMs).

Motor **210** includes a shaft **211** that extends into a flywheel **212**. Flywheel **212** includes a cylindrical projecting member or crank pin **213** positioned offset from the centerline **400** (FIG. **4**) of the flywheel **212**. Crank pin **213** is inserted in an aperture **410** (FIG. **4**) of a crank bearing **214**. Crank bearing **214** is inserted into a pocket **232** of a piston **230**. The piston also has an elongated cutout **402** to receive part of the flywheel **212** for compactness while permitting piston reciprocation. Crank bearing **214** is cuboid in the exemplary embodiment, however, in some exemplary embodiments, crank bearing **214** may cylindrical.

FIG. **4** is an exploded perspective view of piston **230**, flywheel **212** and crank bearing **214**. Piston **230** may be made of any suitable material, and in some embodiments, piston **230** is made of aluminum. As illustrated in the drawings, in some embodiments, motor **210** is located on one side of the longitudinal axis of piston **230** and handle **106** is located on a second side of the longitudinal axis. Piston **230** includes a pocket **232** (or transverse slot) having a first wall **232**A and a second wall **232**B. In some embodiments, piston **230** is hollow on either side of pocket **232** to reduce weight.

Flywheel **212** includes a cylindrical projecting member **213**. Crank pin **213** is off set from the centerline **400** of flywheel **212**. Accordingly, as flywheel **212** rotates, crank pin **213** rotates in a circular path around the centerline **400** of the flywheel **212**. Rotation of crank pin **213** causes crank

US 11,857,482 B1

**5**

bearing **214** to travel in a circular motion within piston pocket **232** causing reciprocal motion of piston **230**.

Piston **230** is restrained by two spaced apart bearings **310**, **311** (FIG. **3**). Bearing **310** is located on a first side of flywheel **212** and bearing **311** is located on a second side of flywheel **212**. Accordingly, piston **230** may only move in a back-and-forth motion along its longitudinal axis. The arrangement of the bearings **310**, **311** on both ends of the piston **230** provides for a very sturdy and robust drive mechanism. Because piston **230** is constrained to a linear back-and-forth motion, as crank bearing **214** rotates in a circular motion, it acts against side walls **232**A and **232**B of pocket **232**. This mechanism for converting rotary to linear motion is known as a "Scotch yoke."

In order to correctly assemble the components of a Scotch yoke drive, the pocket **232** (or walls of transverse slot) must be milled larger than the outside dimensions of the crank bearing **214**. The gap between the inside of pocket **232** and the outside of crank bearing **214** is typically mm inches. Motor **210** rotates at between about 600 and 3600 RPMs and each time the crank bearing **214** switches from moving, for example, toward side wall **232**A of pocket **232** to moving toward the other side wall **232**B, the bearing block **214** travels the small gap and smacks or strikes the side wall, e.g., side **232**B, which causes a significant amount of noise and wear.

In one exemplary embodiment, crank bearing **214** is made with one spring bar **412**. Figure is an enlarged elevation view of side **420** of crank bearing **214** and FIG. **5**B is an enlarged plan view showing top **422** of crank bearing **214**. The spring bars **412** are created by milling the outside of the spring block **214** proud by 0.4 mm in the area of the desired spring bar.

As illustrated in FIG. **5**A, the surface of spring bar **412** bows outward. The size of the bow is set to increase the width of the crank bearing **214** to be slightly larger (0.4 mm) than the width of the pocket **232**. In some embodiments, slots **502** and **504** are milled into the surfaces of side **420** and top **422** below the spring bar **412** to allow spring bar **412** to deflect inwards. In some embodiments, slots **502** and **504** intersect thereby leaving spring bar **412** supported only on each end.

Thus, when crank bearing **214** is inserted into pocket **232**, the spring bar **412** contacts the corresponding surface of the pocket **232** and deflects inward which causes crank bearing **214** to fit snuggly in pocket **232**. Accordingly, as crank bearing **214** changes directions from, for example, moving toward side wall **232**A to moving toward side wall **232**B, the spring bar **412** takes up the slack in the gap and prevent noise and wear that would otherwise be generated by the crank bearing **214** striking the side walls **232**A, **232**B of the pocket **232**.

Crank bearing **214** may be made of any suitable material; in some embodiments, crank bearing **214** is made of plastic. Although the exemplary embodiment is shown and described as having one spring bar, exemplary embodiments may have any number of spring bars.

Massaging device **100** includes a drive housing **218**. Drive housing **218** is made of a heat conducting material, such as, for example, aluminum and has a longitudinal bore **327** passing therethrough to receive piston **230**. As shown in FIG. **3**, drive housing **218** includes a first internal cylindrical groove **308** for holding bearing **310** and a second internal cylindrical groove **309** for holding bearing **311**. Spaced bearings **310** and **311** mount and guide the piston **230** relative to the drive housing **218**. Drive housing **318** surrounds piston **230** and flywheel **212**. In some embodiments,

**6**

drive housing **318** is made up of multiple components, such as an upper drive housing and a lower drive housing.

In addition, motor **210** includes a motor housing **209** that bolts onto drive housing **218**. Motor housing **209** is also made of a heat-conducting material, such as, for example, aluminum. Secured to drive housing **218** is heat sink **220**. Heat sink **220** includes a plurality of fins **221**. Heat sink **220** is made of a heat conducting-material, such as, for example, aluminum.

Main housing **102** contains a first cavity **281**. Upper housing **104** contains a second cavity **282**. First cavity **281** and second cavity **282** are separated by a barrier **280**. Motor housing **209** and drive housing **218** are located in the first cavity **281**. Heat sink **220** is located in second cavity **282**. The exemplary embodiment describes a main housing **102** and upper housing **104**. These may be portions made up of a single structure or multiple structures secured to each other.

Second cavity **282** includes an air inlet aperture **340** which is covered by grate **120** and one or more air outlet apertures **342** covered by one or more grates **122**. A fan **222** is located in second cavity **282**. When the fan **222** is activated, air enters second cavity **282** through air inlet aperture **340** and passes over cooling fins **221** of heat sink **220**, and the air then passes out of second cavity **282** through the one or more air outlets **342**. The fan may be activated by a switch (not shown) on control panel **124**, activated automatically when the massaging device **100** is turned on, or may be activated by a thermostat (not shown). Thus, the cooling system for massaging device **100** is located in second cavity **282** and is isolated from the other components in the massaging device **100**.

In typical massaging devices, cooling air is blown over the motor. Because the massaging devices operate for long periods of time in an atmosphere that is subject to a significant amount of dust and lint because the massaging device is often used on a person wearing clothes, a towel or a robe. Over time, the dust and lint may build up on the motor and cause the prior art massaging devices to overheat. Locating the cooling system in a cavity **282** that is isolated from the rest of the internal components minimizes this type of failure. The air outlet grates **122** may be sized larger to allow any lint and dust to freely pass out of the cavity **282**. In addition, the surface of the heat sink **220** is smooth and thus, there will be few pockets for dust and lint to get trapped.

FIGS. **6** and **6**A illustrate an exemplary embodiment of a quick-connect system **600** for connecting a massaging head **620** to a piston **602**. When providing a deep tissue massage using a massaging device, such as, for example, massaging device **100**, it may be desirable to switch massaging heads to work on different muscles or different portions of muscles during the massage. The exemplary quick-connect system **600** allows a user to quickly switch massaging heads **620**. Moreover, the exemplary quick-connect system **600** may be used without turning off the massaging device **100**.

Quick-connect system **600** includes a piston **602** that has a hollow-end bore **608** for receiving the shaft **621** of a massaging head **620**. Located within the bore **608** of piston **602** is a cylindrical seat **604**. Cylindrical seat **604** retains a magnet **606**. Magnet **606** is illustrated with its north pole located flush with the seat and facing toward the opening in bore **608**. Massaging head **620** includes a shaft **621** having a cylindrical pocket **622** at the distal end. Located within the cylindrical pocket **622** is a magnet **624**. Magnet **624** is positioned so that its south pole is located at the distal end of shaft **621**. Accordingly, when the shaft **621** of massaging

US 11,857,482 B1

7

head **620** is slid into opening in bore **608**, the magnets **606** and **624** are attracted to one another and magnetically hold massaging head **620** firmly in place.

To remove massaging head **620**, a user need only apply a sufficient amount of force to separate the two magnets **606**, **624**. The strength of the magnets **606**, **624** are sized to prevent the massaging head **620** from separating from the piston **602** during normal use, and yet allow a user to quickly remove and replace the massaging head **620**. In some embodiments the end **626** of the massaging head **620** is rounded, pointed or tapered (not shown) to allow it to easily slip into the opening **608** even while the piston **608** is moving.

FIG. **6B** illustrates another quick-connect massaging head **630**. Quick-connect massaging head **630** is substantially the same as massaging head **620** except that the head portion **639** has a different shape than head portion **629** of massaging head **620**.

In some instances, it may be desirable to adjust the throw or the stroke length of the massaging head to work on larger or smaller muscle groups, or deeper or shallower points of stress or soreness in the muscles. FIG. **7** illustrates an exemplary embodiment of a lost motion system **700**. Although lost motion system **700** is a hydraulic lost motion system, other mechanical lost motion devices may be used in accordance with embodiments of the present invention.

Lost motion system **700** is contained in housing **702**. Housing **702** may be similar to drive housing **218** described above except it may need to be larger to accommodate lost motion system **700**. Housing **702** includes a floating piston **720** located in first cylindrical bore **708**. Floating piston **720** includes a sealing member **722** for forming a seal between floating piston **720** and first cylindrical bore **708**. A cam **706** secured to housing **702** may be rotated to adjust the amount of travel that floating piston **720** may move. A passage **710** fluidically connects first cylindrical bore **708** to second cylindrical bore **704**.

A drive piston **730** is located in second cylindrical bore **704**. Drive piston **730** includes a sealing member **732** to seal between the drive piston **730** and second cylindrical bore **704**. Drive piston **730** may be driven in substantially the same way as described above with respect to piston **230**. A passage **705** fluidically connects second cylindrical bore **704** and passage **710** to third cylindrical bore **706**. Located within third cylindrical bore **706** is an output piston **740**.

Output piston **740** includes a sealing member **742**, such as, for example, an o-ring to form a seal between drive piston **730** and third cylindrical bore **706**. Hydraulic fluid **712** is located in passages **705**, **710** and portions of the first, second, and third cylindrical cavities **708**, **704** and **706** as illustrated. A massaging head (not shown) is connected to output piston **740**.

During operation, if cam **706** is set so that floating piston **720** is retained at the proximate end of first cylindrical bore **708** (as illustrated), movement of the drive piston **730** moves output piston **740** its maximum stroke length. If cam **706** is set so that floating piston **720** moves to adjacent the distal end of first cylindrical bore **708**, movement of the drive piston **730** moves output piston **740** its minimum stroke length. The cam may also be selectively rotated to intermediate positions to choose different magnitudes of floating piston movement resulting in different selected magnitudes of output piston movement.

In some embodiments, floating piston **720** is physically connected to the cam or other adjustment mechanism so that it is positioned in a predetermined position and remains

8

stationary during operation of the drive piston **730**. Thus, floating piston **720** does not float during operation of the massaging device.

In some embodiments, the lost motion system may be contained in the massaging head itself, or in an adaptor that connects between the piston and the massaging head. Thus, rather than having a cam in the housing of the massaging device, different applicator heads or adaptors having a set lost motion, or variable lost motion systems integral therein may be used. In some embodiments, such adaptors and massaging heads may be adapted with a quick-connect system similar to the ones described with respect to FIGS. **6** and **6A**.

FIG. **8** illustrates a simplified exemplary electrical schematic diagram **800** of an embodiment of a massaging device. The components disclosed as being on a particular circuit board may be on multiple circuit boards or individually mounted and hardwired to one another. Circuit board **801** includes memory **804**, motor control circuitry **810** and fan control circuitry **816**, which are in circuit communication with processor **802**. Fan control circuitry **816** is in circuit communication with fan **817**.

Power circuitry **812** may be included on circuit board **801** or may be located on its own external to the massager. Power circuitry **812** includes the necessary power conditioning circuitry to provide power to both the electronics and the motors. In circuit communication with power circuitry **812** is plug **814**. Optionally two or more power circuits may be utilized. All of the connections between power circuitry **812** and the other components may not be shown in FIG. **8**; however, those skilled in the art have the required knowledge to provide power to the devices that require power. Motor control circuitry **810** is in circuit communication with drive motor **811**. Drive motor **811** is used to drive the piston and massaging head as described above.

Memory **804** is a processor readable media and includes the necessary logic to operate the massaging device. Examples of different processor readable media include Flash Memory, Read-Only Memory (ROM), Random-Access Memory (RAM), programmable read-only memory (PROM), electrically programmable read-only memory (EPROM), electrically erasable programmable read-only memory (EEPROM), magnetic disk, and optically readable mediums, and others. Still further, the processes and logic described herein can be merged into one large process flow or divided into many sub-process flows. The order in which the process flows herein have been described is not critical and can be rearranged while still accomplishing the same results. Indeed, the process flows described herein may be rearranged, consolidated and/or reorganized in their implementation as warranted or desired.

In addition, processor **802** is in circuit communication with control panel **806**. Control panel **806** includes any desired pushbuttons, dials, displays or the like. Control panel **806** provides the operator interface to operate and control the massaging device.

Processor **802** is also in circuit communication with data connection **820**. Representative data connections **820** include an Ethernet wire, Bluetooth, WiFi, optical transmitter/reader, an IR reader and the like. Combinations of two or more different data connections **820** may be used. Data connection **820** may be used to transmit data to an outside device, such as, for example, a computer or hand-held portable device. Various uses for transmitting such data are described below.

In some embodiments, processor **802** includes logic to collect and store data related to use of the massaging device.

US 11,857,482 B1

9

Exemplary types of data may include usage rates, operating times or the like. In some embodiments, different massaging heads include an RFID chip and when inserted into the massaging device, an RFID reader (not shown) identifies and stores the type of massaging head utilized. In some embodiments, a customer number may be associated with the data. This data may be used to determine lease rates of the massaging device, for calculating cost/benefit analysis, or for setting up customized massages.

In some embodiments, data may be uploaded from a computer or hand-held portable device to the massaging device. Such data may include customized massaging programs tailored for individual needs. In some embodiments, the customized massaging program may be reflective of prior massages given to a customer that were particularly well-received by the customer.

In some embodiments, the customized massaging program may indicate to the user on a display on the control panel **806** massage times, locations, type of massage head to use or the like to ensure covering the desired locations with the customized massage.

While various inventive aspects, concepts and features of the inventions may be described and illustrated herein as embodied in combination in the exemplary embodiments, these various aspects, concepts and features may be used in many alternative embodiments, either individually or in various combinations and sub-combinations thereof. Unless expressly excluded herein all such combinations and sub-combinations are intended to be within the scope of the present inventions. Still further, while various alternative embodiments as to the various aspects, concepts and features of the inventions—such as alternative materials, structures, configurations, methods, circuits, devices and components, software, hardware, control logic, alternatives as to form, fit and function, and so on—may be described herein, such descriptions are not intended to be a complete or exhaustive list of available alternative embodiments, whether presently known or later developed. Those skilled in the art may readily adopt one or more of the inventive aspects, concepts or features into additional embodiments and uses within the scope of the present inventions even if such embodiments are not expressly disclosed herein. Additionally, even though some features, concepts or aspects of the inventions may be described herein as being a preferred arrangement or method, such description is not intended to suggest that such feature is required or necessary unless expressly so stated. Still further, exemplary or representative values and ranges may be included to assist in understanding the present disclosure; however, such values and ranges are not to be construed in a limiting sense and are intended to be critical values or ranges only if so expressly stated. Moreover, while various aspects, features and concepts may be expressly identified herein as being inventive or forming part of an invention, such identification is not intended to be exclusive, but rather there may be inventive aspects, concepts and features that are fully described herein without being expressly identified as such or as part of a specific invention. Descriptions of exemplary methods or processes are not limited to inclusion of all steps as being required in all cases, nor is the order that the steps are presented to be construed as required or necessary unless expressly so stated.

What is claimed is:
**1**. A percussive massager comprising:
a housing;

10

a piston having a proximal end and a distal end, the distal end of the piston having a substantially cylindrical bore;

a motor at least partially within the housing and operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed;

a drive mechanism that controls a predetermined stroke length of the piston; and

a quick-connect system comprising the distal end of the piston and a first massaging head, wherein the quick-connect system is configured to secure the first massaging head to the percussive massager by a proximal end of the massaging head being slid into the bore while the piston reciprocates the predetermined stroke length at the first speed.

**2**. The percussive massager of claim **1**, further comprising:
a second massaging head configured to releasably couple to the distal end of the piston via the quick-connect system.

**3**. The percussive massager of claim **1**, wherein the motor is configured to cause the piston to reciprocate the predetermined stroke length at a second speed.

**4**. The percussive massager of claim **3**, wherein the first speed and the second speed are each less than or equal to 3600 strokes per minute.

**5**. The percussive massager of claim **3**, wherein the first speed and the second speed are each greater than or equal to 600 strokes per minute.

**6**. The percussive massager of claim **3**, wherein the first speed and the second speed are each selectable from a plurality of predetermined speeds in a range of greater than 700 strokes per minute to less than 1800 strokes per minute.

**7**. The percussive massager of claim **3**, further comprising:
a control panel positioned on an exterior of the housing.

**8**. The percussive massager of claim **7**, wherein the control panel is configured to display one or more visual indicators.

**9**. The percussive massager of claim **7**, wherein the control panel has a display device.

**10**. The percussive massager of claim **7**, wherein the control panel has one or more inputs.

**11**. The percussive massager of claim **10**, wherein the one or more inputs comprise at least one of: a button, a switch, and a dial.

**12**. The percussive massager of claim **10**, wherein the first speed and the second speed are each selectable via the one or more inputs.

**13**. The percussive massager of claim **10**, wherein a first selection of the one or more inputs is configured to cause the percussive massager to power on and wherein a second selection of the one or more inputs is configured to cause the percussive massager to power off.

**14**. The percussive massager of claim **1**, further comprising an audible feedback device configured to generate one or more audible signals.

**15**. The percussive massager of claim **1**, further comprising a controller having a processor, a memory, and a data connection.

**16**. The percussive massager of claim **15**, wherein the data connection is a wireless data connection.

**17**. The percussive massager of claim **15**, wherein the controller is configured to send, by the data connection, first data to an external computing device.

US 11,857,482 B1

<table>
<tr><td>11</td><td>12</td></tr>
</table>

**18**. The percussive massager of claim **17**, wherein the first data is indicative of usage of the percussive massager for providing a massage.

**19**. The percussive massager of claim **15**, wherein the controller is configured to receive, by the data connection, second data from an external computing device.

**20**. The percussive massager of claim **19**, wherein the second data is indicative of a massage program having at least one of a massage duration, a massage location, and a type of massaging head.

**21**. The percussive massager of claim **1**, wherein the housing comprises a cavity, wherein the motor and the drive mechanism are positioned within the cavity.

**22**. The percussive massager of claim **21**, further comprising a thermally conductive motor housing positioned within the cavity proximal to the motor.

**23**. The percussive massager of claim **22**, further comprising a heat sink positioned proximal to the thermally conductive motor housing.

**24**. The percussive massager of claim **1**, wherein the motor is positioned within the housing opposite a handle.

**25**. The percussive massager of claim **1**, wherein the motor has an output shaft configured to rotate about a rotation axis, and wherein the drive mechanism comprises:

a flywheel operatively connected to the output shaft of the motor to rotate about a flywheel axis, the output shaft extending into the flywheel along the flywheel axis; and

a crank pin extending from the flywheel, the crank pin being operatively connected to the piston.

**26**. The percussive massager of claim **25**, wherein an offset between the flywheel axis and an axis of the crank pin controls the predetermined stroke length of the piston.

**27**. The percussive massager of claim **26**, wherein the motor is directly connected to the flywheel, and wherein the crank pin is directly connected to the flywheel.

**28**. The percussive massager of claim **1**, wherein a handle is on an opposite side of the piston with respect to the motor.

**29**. The percussive massager of claim **1**, further comprising a substantially cylindrical structure within the bore.

**30**. The percussive massager of claim **29**, wherein the substantially cylindrical structure comprises a cylindrical seat.

**31**. The percussive massager of claim **29**, wherein the substantially cylindrical structure comprises a magnet.

**32**. A method of assembling a percussive massager, the method comprising:

positioning a motor at least partially within a housing;

operatively connecting the motor to a proximal end of a piston, wherein the motor is configured to cause the piston to reciprocate at a first speed, wherein a distal end of the piston has a quick release connector, wherein the quick release connector has a bore having a substantially cylindrical structure; and

positioning a drive mechanism that controls a predetermined stroke length of the piston within the housing, wherein the quick release connector is configured to secure a first massaging head by sliding the first massaging head into the bore while the piston reciprocates the predetermined stroke length at the first speed.

**33**. The method of claim **32**, wherein a second massaging head is configured to releasably couple to the distal end of the piston via the quick release connector.

**34**. A percussive massager comprising:

a housing;

a piston in the housing having a proximal end and a distal end;

a motor at least partially within the housing and operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed;

a drive mechanism between the motor and the piston that controls a predetermined stroke length of the piston; and

a quick release connector at the distal end of the piston, wherein the quick release connector is configured to secure a first massaging head while the piston reciprocates a predetermined stroke length at the first speed, wherein the first massaging head has a substantially cylindrical pocket to receive the quick release connector.

**35**. The percussive massager of claim **34**, further comprising:

a second massaging head configured to releasably couple to the distal end of the piston via the quick release connector.

**36**. The percussive massager of claim **34**, wherein the motor is configured to cause the piston to reciprocate the predetermined stroke length at a second speed.

**37**. The percussive massager of claim **36**, wherein the first speed and the second speed are each less than or equal to **3600** strokes per minute.

**38**. The percussive massager of claim **36**, wherein the first speed and the second speed are each greater than or equal to **600** strokes per minute.

**39**. The percussive massager of claim **36**, wherein the first speed and the second speed are each selectable from a plurality of predetermined speeds in a range of greater than **700** strokes per minute to less than **1800** strokes per minute.

**40**. The percussive massager of claim **36**, further comprising:

a control panel positioned on an exterior of the housing.

**41**. The percussive massager of claim **40**, wherein the control panel is configured to display one or more visual indicators.

**42**. The percussive massager of claim **40**, wherein the control panel has a display device.

**43**. The percussive massager of claim **40**, wherein the control panel has one or more inputs.

**44**. The percussive massager of claim **43**, wherein the one or more inputs comprise at least one of: a button, a switch, and a dial.

**45**. The percussive massager of claim **43**, wherein the first speed and the second speed are each selectable via the one or more inputs.

**46**. The percussive massager of claim **43**, wherein a first selection of the one or more inputs is configured to cause the percussive massager to power on and wherein a second selection of the one or more inputs is configured to cause the percussive massager to power off.

**47**. The percussive massager of claim **34**, further comprising an audible feedback device configured to generate one or more audible signals.

**48**. The percussive massager of claim **34**, further comprising a controller having a processor, a memory, and a data connection.

**49**. The percussive massager of claim **48**, wherein the data connection is a wireless data connection.

**50**. The percussive massager of claim **49**, wherein the controller is configured to send, by the data connection, first data to an external computing device.

**51**. The percussive massager of claim **50**, wherein the first data is indicative of usage of the percussive massager for providing a massage.

US 11,857,482 B1

**13**

**52**. The percussive massager of claim **48**, wherein the controller is configured to receive, by the data connection, second data from an external computing device.

**53**. The percussive massager of claim **52**, wherein the second data is indicative of a massage program having at least one of a massage duration, a massage location, and a type of massaging head.

**54**. The percussive massager of claim **34**, wherein the housing comprises a cavity, wherein the motor and the drive mechanism are positioned within the cavity.

**55**. The percussive massager of claim **54**, further comprising a thermally conductive motor housing positioned within the cavity proximal to the motor.

**56**. The percussive massager of claim **55**, further comprising a heat sink positioned proximal to the thermally conductive motor housing.

**57**. The percussive massager of claim **34**, further comprising a handle, wherein the motor is positioned within the housing opposite the handle.

**14**

**58**. The percussive massager of claim **34**, wherein the motor has an output shaft configured to rotate about a rotation axis, and wherein the drive mechanism comprises:

a flywheel operatively connected to the output shaft of the motor to rotate about a flywheel axis, the output shaft extending into the flywheel along the flywheel axis; and

a crank pin extending from the flywheel, the crank pin being operatively connected to the piston.

**59**. The percussive massager of claim **58**, wherein an offset between the flywheel axis and an axis of the crank pin controls the predetermined stroke length of the piston.

**60**. The percussive massager of claim **59**, wherein the motor is directly connected to the flywheel, and wherein the crank pin is directly connected to the flywheel.

**61**. The percussive massager of claim **34**, further comprising a handle, wherein the handle is on an opposite side of the piston with respect to the motor.

\*  \*  \*  \*  \*

# EXHIBIT 6

US011938082B1

(12) **United States Patent**
Danby et al.

(10) Patent No.: **US 11,938,082 B1**
(45) Date of Patent: **\*Mar. 26, 2024**

(54) **MASSAGE DEVICE HAVING VARIABLE STROKE LENGTH**

(71) Applicant: **HYPERICE IP SUBCO, LLC**, Irvine, CA (US)

(72) Inventors: **Philip C. Danby**, Key Biscayne, FL (US); **John Charles Danby**, Witham (GB)

(73) Assignee: **HYPERICE IP SUBCO, LLC**, Irvine, CA (US)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **18/515,112**

(22) Filed: **Nov. 20, 2023**

**Related U.S. Application Data**

(63) Continuation of application No. 18/466,702, filed on Sep. 13, 2023, which is a continuation of application
(Continued)

(51) **Int. Cl.**
*A61H 23/02* (2006.01)

(52) **U.S. Cl.**
CPC . *A61H 23/0254* (2013.01); *A61H 2201/0107* (2013.01); *A61H 2201/0153* (2013.01); *A61H 2201/0157* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/1418* (2013.01); *A61H 2201/149* (2013.01); *A61H 2201/1664* (2013.01); *A61H 2201/5005* (2013.01); *A61H 2201/501* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........ A61H 23/0254; A61H 2201/0107; A61H 2201/0153; A61H 2201/0157; A61H 2201/1215; A61H 2201/1418; A61H 2201/149; A61H 2201/1664; A61H 2201/5005; A61H 2201/501
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

784,024 A    3/1905    Barrett et al.
799,881 A    9/1905    Wells
(Continued)

FOREIGN PATENT DOCUMENTS

CA    188544 A    2/1919
CA    188545 A    2/1919
(Continued)

OTHER PUBLICATIONS

Campbell, D., "Jolt Therapy Tool," https://www.youtube.com/watch?v =-1nLjD-xRgI, Jul. 28, 2017, 3 pages.
(Continued)

*Primary Examiner* — Timothy A Stanis
(74) *Attorney, Agent, or Firm* — Goodwin Procter LLP

(57) **ABSTRACT**

Exemplary embodiments of massaging devices are disclosed herein. One exemplary embodiment includes a piston having a longitudinal axis, a massaging head connected to the piston, a motor located on a first side of the longitudinal axis and a handle located on a second side of the longitudinal axis. A drive mechanism for moving the piston and massage head is also included.

**18 Claims, 7 Drawing Sheets**



**US 11,938,082 B1**

Page 2

## Related U.S. Application Data

No. 17/681,367, filed on Feb. 25, 2022, now Pat. No. 11,857,482, which is a continuation of application No. 15/892,665, filed on Feb. 9, 2018, now Pat. No. 11,285,075, which is a continuation of application No. 14/317,573, filed on Jun. 27, 2014, now Pat. No. 9,889,066.

(60) Provisional application No. 61/841,693, filed on Jul. 1, 2013.

(52) **U.S. Cl.**
CPC ................ *A61H 2201/5015* (2013.01); *A61H 2201/5035* (2013.01); *A61H 2201/5038* (2013.01); *A61H 2201/5097* (2013.01)

(56) **References Cited**

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 863,525 | A | 12/1907 | Gardy | |
| 873,123 | A | 12/1907 | Gardy | |
| 1,269,803 | A * | 6/1918 | Sharpnack | A61H 23/0254 |
| | | | | 601/108 |
| 1,339,179 | A | 5/1920 | Elmen | |
| 1,594,636 | A | 8/1926 | Smith | |
| 1,612,981 | A | 1/1927 | Mraula | |
| 1,657,765 | A | 1/1928 | Pasque | |
| 1,784,301 | A | 12/1930 | Mekler | |
| 1,978,223 | A | 10/1934 | Parker | |
| 2,078,025 | A * | 4/1937 | Samuels | A61H 23/0218 |
| | | | | 601/81 |
| 3,030,647 | A | 4/1962 | Peyron | |
| D197,889 | S | 4/1964 | Hass | |
| 3,494,353 | A | 2/1970 | Marich | |
| 3,626,934 | A | 12/1971 | Andis | |
| 3,699,952 | A | 10/1972 | Waters et al. | |
| 3,705,578 | A | 12/1972 | Cutler et al. | |
| 3,710,785 | A | 1/1973 | Hilger | |
| 3,837,335 | A * | 9/1974 | Teranishi | A61H 23/0254 |
| | | | | 601/103 |
| 3,841,321 | A | 10/1974 | Albach et al. | |
| 3,845,758 | A | 11/1974 | Anderson | |
| 3,920,291 | A | 11/1975 | Wendel et al. | |
| 3,968,789 | A | 7/1976 | Simoncini | |
| 3,993,052 | A | 11/1976 | Miyahara | |
| 4,079,733 | A * | 3/1978 | Denton | A61H 23/0254 |
| | | | | 601/108 |
| 4,088,128 | A | 5/1978 | Mabuchi | |
| 4,149,530 | A | 4/1979 | Gow | |
| 4,150,668 | A | 4/1979 | Johnston | |
| 4,162,675 | A | 7/1979 | Kawada | |
| 4,173,217 | A | 11/1979 | Johnston | |
| RE30,500 | E | 2/1981 | Springer et al. | |
| 4,412,535 | A | 11/1983 | Teren | |
| 4,505,267 | A | 3/1985 | Inada | |
| 4,513,737 | A | 4/1985 | Mabuchi | |
| 4,523,580 | A | 6/1985 | Tureaud | |
| 4,549,535 | A | 10/1985 | Wing | |
| 4,566,442 | A | 1/1986 | Mabuchi et al. | |
| 4,691,693 | A | 9/1987 | Sato | |
| 4,698,869 | A | 10/1987 | Mierau et al. | |
| 4,709,201 | A | 11/1987 | Schaefer et al. | |
| 4,726,430 | A | 2/1988 | Hendrikx et al. | |
| 4,730,605 | A | 3/1988 | Noble et al. | |
| 4,751,452 | A | 6/1988 | Kilmer et al. | |
| 4,790,296 | A | 12/1988 | Segal | |
| 4,827,914 | A | 5/1989 | Kamazawa | |
| 4,841,955 | A | 6/1989 | Evans et al. | |
| 4,858,600 | A | 8/1989 | Gross et al. | |
| 4,880,713 | A | 11/1989 | Levine | |
| 4,989,613 | A | 2/1991 | Finkenberg | |
| 5,043,651 | A | 8/1991 | Tamura | |
| 5,063,911 | A | 11/1991 | Teranishi | |
| 5,065,743 | A | 11/1991 | Sutherland | |

| | | | |
|---|---|---|---|
| D323,034 | S | 1/1992 | Reinstein |
| D323,606 | S | 2/1992 | Chang |
| 5,085,207 | A | 2/1992 | Fiore |
| 5,134,777 | A | 8/1992 | Meyer et al. |
| 5,140,979 | A | 8/1992 | Nakagawa |
| D329,291 | S | 9/1992 | Wollman |
| D329,292 | S | 9/1992 | Wollman |
| 5,159,922 | A | 11/1992 | Mabuchi et al. |
| D331,467 | S | 12/1992 | Wollman |
| D335,073 | S | 4/1993 | Anthony et al. |
| 5,215,078 | A | 6/1993 | Fulop |
| 5,305,738 | A | 4/1994 | Shimizu |
| 5,311,860 | A | 5/1994 | Doria |
| 5,364,223 | A | 11/1994 | Bissex |
| 5,415,621 | A | 5/1995 | Campbell |
| 5,417,644 | A | 5/1995 | Lee |
| 5,447,491 | A | 9/1995 | Bellandi et al. |
| 5,469,860 | A | 11/1995 | De Santis |
| 5,489,280 | A | 2/1996 | Russell |
| D367,712 | S | 3/1996 | Young |
| D373,640 | S | 9/1996 | Young |
| 5,569,168 | A | 10/1996 | Hartwig |
| 5,573,500 | A | 11/1996 | Katsunuma et al. |
| D377,100 | S | 12/1996 | Gladieux, Jr. |
| 5,602,432 | A | 2/1997 | Mizutani |
| D378,338 | S | 3/1997 | Acciville et al. |
| 5,632,720 | A | 5/1997 | Kleitz |
| D379,580 | S | 6/1997 | Amundsen |
| 5,656,017 | A | 8/1997 | Keller et al. |
| 5,656,018 | A | 8/1997 | Tseng |
| D388,175 | S | 12/1997 | Lie |
| 5,725,483 | A | 3/1998 | Podolsky |
| 5,733,029 | A | 3/1998 | Monroe |
| 5,769,657 | A | 6/1998 | Kondo et al. |
| 5,797,462 | A | 8/1998 | Myer |
| 5,803,916 | A | 9/1998 | Kuznets et al. |
| D403,220 | S | 12/1998 | Kimata et al. |
| 5,843,006 | A | 12/1998 | Phillips et al. |
| D407,498 | S | 3/1999 | Cooper |
| D408,241 | S | 4/1999 | Jansson |
| 5,925,002 | A | 7/1999 | Wollman |
| 5,935,089 | A | 8/1999 | Shimizu |
| 5,951,501 | A | 9/1999 | Griner |
| 6,051,957 | A | 4/2000 | Klein |
| 6,102,875 | A | 8/2000 | Jones |
| D430,938 | S | 9/2000 | Lee |
| 6,123,657 | A | 9/2000 | Ishikawa et al. |
| 6,165,145 | A | 12/2000 | Noble |
| 6,170,108 | B1 | 1/2001 | Knight |
| D437,713 | S | 2/2001 | Young |
| D438,309 | S | 2/2001 | Young |
| 6,228,042 | B1 | 5/2001 | Dungan |
| 6,231,497 | B1 | 5/2001 | Souder |
| D448,852 | S | 10/2001 | Engelen |
| D455,837 | S | 4/2002 | Kim |
| 6,375,609 | B1 | 4/2002 | Hastings et al. |
| 6,401,289 | B1 | 6/2002 | Herbert |
| 6,402,710 | B1 | 6/2002 | Hsu |
| D460,675 | S | 7/2002 | Morgan |
| 6,432,072 | B1 | 8/2002 | Harris et al. |
| 6,440,091 | B1 | 8/2002 | Hirosawa |
| 6,461,377 | B1 | 10/2002 | An |
| 6,478,755 | B2 | 11/2002 | Young |
| D467,148 | S | 12/2002 | Flickinger |
| 6,494,849 | B2 | 12/2002 | Kuo |
| 6,503,211 | B2 | 1/2003 | Frye |
| 6,537,236 | B2 | 3/2003 | Tucek et al. |
| D474,089 | S | 5/2003 | Huang |
| 6,577,287 | B2 | 6/2003 | Havel |
| 6,581,596 | B1 | 6/2003 | Truitt et al. |
| D476,746 | S | 7/2003 | Harris et al. |
| 6,585,667 | B1 | 7/2003 | Muller |
| 6,602,211 | B2 | 8/2003 | Tucek |
| 6,616,621 | B1 | 9/2003 | Kohr |
| 6,656,140 | B2 | 12/2003 | Oguma et al. |
| 6,663,657 | B1 | 12/2003 | Miller |
| 6,682,496 | B1 | 1/2004 | Pivaroff |
| D487,219 | S | 3/2004 | Chudy et al. |
| 6,758,826 | B2 | 7/2004 | Luettgen et al. |

## US 11,938,082 B1

Page 3

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,805,700 | B2 | 10/2004 | Miller |
| D498,128 | S | 11/2004 | Sterling |
| 6,832,991 | B1 | 12/2004 | Inada et al. |
| 6,866,776 | B2 | 3/2005 | Leason et al. |
| 6,979,300 | B1 | 12/2005 | Julian et al. |
| 6,994,679 | B1 | 2/2006 | Lee |
| 7,033,329 | B2 | 4/2006 | Liao |
| 7,041,072 | B2 | 5/2006 | Calvert |
| 7,083,581 | B2 | 8/2006 | Tsai |
| 7,125,390 | B2 | 10/2006 | Ferber et al. |
| 7,128,722 | B2 | 10/2006 | Lev et al. |
| D531,733 | S | 11/2006 | Burout, III et al. |
| 7,144,417 | B2 | 12/2006 | Colloca et al. |
| 7,169,169 | B2 | 1/2007 | Tucek et al. |
| D536,591 | S | 2/2007 | Ghode et al. |
| 7,211,057 | B2 | 5/2007 | Gleason et al. |
| D544,102 | S | 6/2007 | Pivaroff |
| 7,229,424 | B2 | 6/2007 | Jones et al. |
| 7,238,162 | B2 | 7/2007 | Dehli |
| D548,354 | S | 8/2007 | Lai |
| 7,264,598 | B2 | 9/2007 | Shin |
| 7,270,641 | B2 | 9/2007 | Glucksman et al. |
| D553,252 | S | 10/2007 | Masuda |
| 7,282,036 | B2 | 10/2007 | Masuda |
| 7,282,037 | B2 | 10/2007 | Cho |
| D555,255 | S | 11/2007 | Masuda |
| 7,306,569 | B2 | 12/2007 | LaJoie et al. |
| 7,322,946 | B2 | 1/2008 | Lev et al. |
| 7,335,170 | B2 | 2/2008 | Milne et al. |
| 7,354,408 | B2 | 4/2008 | Muchisky |
| D581,542 | S | 11/2008 | Ferber et al. |
| D581,543 | S | 11/2008 | Ferber et al. |
| D582,049 | S | 12/2008 | Ferber et al. |
| 7,470,242 | B2 | 12/2008 | Ferber et al. |
| 7,503,923 | B2 | 3/2009 | Miller |
| 7,507,198 | B2 | 3/2009 | Ardizzone et al. |
| 7,517,327 | B1 | 4/2009 | Knight |
| 7,597,669 | B2 | 10/2009 | Huang |
| D606,192 | S | 12/2009 | Summerer et al. |
| 7,629,766 | B2 | 12/2009 | Sadow |
| 7,634,314 | B2 | 12/2009 | Applebaum et al. |
| 7,658,012 | B2 | 2/2010 | James et al. |
| D613,416 | S | 4/2010 | Schupman |
| D625,164 | S | 10/2010 | Aglassinger |
| D627,897 | S | 11/2010 | Yde et al. |
| D627,898 | S | 11/2010 | Aulwes et al. |
| 7,927,294 | B2 | 4/2011 | Kamimura et al. |
| 7,976,485 | B2 | 7/2011 | Huang |
| D649,657 | S | 11/2011 | Petersen et al. |
| 8,052,625 | B2 | 11/2011 | Tsai et al. |
| 8,083,699 | B2 | 12/2011 | Colloca et al. |
| 8,092,407 | B2 | 1/2012 | Tsukada et al. |
| D658,759 | S | 5/2012 | Marescaux et al. |
| 8,192,379 | B2 | 6/2012 | Huang |
| D665,915 | S | 8/2012 | Ma |
| 8,282,583 | B2 | 10/2012 | Tsai |
| 8,317,733 | B2 | 11/2012 | Chen et al. |
| 8,342,187 | B2 | 1/2013 | Kalman et al. |
| 8,435,194 | B2 | 5/2013 | Dverin et al. |
| 8,475,362 | B2 | 7/2013 | Sohn et al. |
| 8,632,525 | B2 | 1/2014 | Kerr et al. |
| 8,673,487 | B2 | 3/2014 | Churchill |
| D703,337 | S | 4/2014 | Fuhr et al. |
| D706,433 | S | 6/2014 | Fuhr et al. |
| D708,742 | S | 7/2014 | Dallemagne et al. |
| 8,826,547 | B2 | 9/2014 | Oberheim |
| 8,841,871 | B2 | 9/2014 | Yang et al. |
| D719,273 | S | 12/2014 | Chen |
| 8,951,216 | B2 | 2/2015 | Yoo et al. |
| D725,790 | S | 3/2015 | Givord |
| D725,978 | S | 4/2015 | Uematsu et al. |
| 9,017,355 | B2 | 4/2015 | Smith et al. |
| D734,863 | S | 7/2015 | Hennessey |
| D735,348 | S | 7/2015 | Hennessey |
| 9,107,690 | B2 | 8/2015 | Bales, Jr. et al. |
| D738,516 | S | 9/2015 | Karim |
| 9,272,141 | B2 | 3/2016 | Nichols |
| D752,936 | S | 4/2016 | King et al. |
| D757,953 | S | 5/2016 | Philips |
| 9,333,371 | B2 | 5/2016 | Bean et al. |
| D759,237 | S | 6/2016 | Heath et al. |
| D759,238 | S | 6/2016 | Heath et al. |
| D759,831 | S | 6/2016 | Levi et al. |
| 9,364,626 | B2 | 6/2016 | Carter et al. |
| D763,442 | S | 8/2016 | Price et al. |
| D778,439 | S | 2/2017 | Hakansson et al. |
| 9,756,402 | B2 | 9/2017 | Stampfl et al. |
| D810,280 | S | 2/2018 | Tharp et al. |
| 9,889,066 | B2 | 2/2018 | Danby et al. |
| D819,221 | S | 5/2018 | Lei |
| D823,478 | S | 7/2018 | Park |
| D825,073 | S | 8/2018 | Lenke |
| D827,842 | S | 9/2018 | Bainton et al. |
| D827,843 | S | 9/2018 | Bainton et al. |
| 10,162,106 | B1 | 12/2018 | Grillo et al. |
| D837,395 | S | 1/2019 | Gan |
| D838,378 | S | 1/2019 | Cao |
| D840,032 | S | 2/2019 | Clifford et al. |
| D840,547 | S | 2/2019 | Harle et al. |
| 10,201,470 | B2 | 2/2019 | Griner |
| D842,491 | S | 3/2019 | Fleming et al. |
| D843,002 | S | 3/2019 | Yarborough et al. |
| D843,656 | S | 3/2019 | Zhang et al. |
| D844,896 | S | 4/2019 | Levi et al. |
| D845,499 | S | 4/2019 | Wersland et al. |
| D847,362 | S | 4/2019 | Tang |
| D847,364 | S | 4/2019 | Lee et al. |
| 10,245,033 | B2 | 4/2019 | Overmyer et al. |
| D847,990 | S | 5/2019 | Kimball |
| D848,089 | S | 5/2019 | Cunniff |
| D849,260 | S | 5/2019 | Wersland et al. |
| D850,640 | S | 6/2019 | Wersland et al. |
| 10,314,762 | B1 | 6/2019 | Marton et al. |
| 10,357,425 | B2 | 7/2019 | Wersland et al. |
| D855,822 | S | 8/2019 | Marton et al. |
| D865,192 | S | 10/2019 | Nazarian |
| 10,456,325 | B2 | 10/2019 | Fan |
| 10,470,970 | B2 | 11/2019 | Nazarian et al. |
| D869,928 | S | 12/2019 | Hsiao |
| 10,492,984 | B2 | 12/2019 | Marton et al. |
| 10,561,574 | B1 | 2/2020 | Marton et al. |
| D879,290 | S | 3/2020 | Harman et al. |
| 10,617,588 | B2 | 4/2020 | Wersland et al. |
| D890,353 | S | 7/2020 | Nazarian |
| D890,942 | S | 7/2020 | Wersland et al. |
| D890,943 | S | 7/2020 | Wersland et al. |
| 10,702,448 | B2 | 7/2020 | Wersland et al. |
| 10,743,650 | B2 | 8/2020 | Katano et al. |
| D896,393 | S | 9/2020 | Wersland et al. |
| 10,774,860 | B2 | 9/2020 | Wersland et al. |
| D903,140 | S | 11/2020 | Andrejs |
| 10,847,984 | B2 | 11/2020 | Solana et al. |
| 10,857,064 | B2 | 12/2020 | Wersland et al. |
| D907,792 | S | 1/2021 | Marton et al. |
| D908,235 | S | 1/2021 | Marton et al. |
| 10,888,492 | B2 | 1/2021 | Marton et al. |
| D910,870 | S | 2/2021 | Marton et al. |
| 10,905,627 | B2 | 2/2021 | Marton et al. |
| 10,912,708 | B2 | 2/2021 | Marton et al. |
| D918,404 | S | 5/2021 | Wersland et al. |
| 10,993,874 | B1 | 5/2021 | Marton et al. |
| D928,334 | S | 8/2021 | Chou |
| D932,036 | S | 9/2021 | Nazarian |
| 11,166,863 | B2 | 11/2021 | Wersland et al. |
| D946,166 | S | 3/2022 | Li |
| D949,365 | S | 4/2022 | Li |
| D949,416 | S | 4/2022 | Khubani et al. |
| D949,417 | S | 4/2022 | Khubani et al. |
| D949,418 | S | 4/2022 | Khubani et al. |
| D952,878 | S | 5/2022 | Lin |
| D970,743 | S | 11/2022 | Brailey |
| 2002/0058892 | A1 | 5/2002 | Young |
| 2002/0161315 | A1 | 10/2002 | Harris et al. |
| 2002/0177795 | A1 | 11/2002 | Frye |

## US 11,938,082 B1

Page 4

(56)　　　　　　References Cited

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2002/0188233 A1 | 12/2002 | Denyes |
| 2003/0014079 A1 | 1/2003 | Tucek |
| 2003/0028134 A1 | 2/2003 | Lev et al. |
| 2003/0060741 A1 | 3/2003 | Park |
| 2003/0114781 A1 | 6/2003 | Beaty et al. |
| 2003/0130602 A1 | 7/2003 | Chang |
| 2003/0144615 A1 | 7/2003 | Lin |
| 2003/0195438 A1 | 10/2003 | Petillo |
| 2003/0195443 A1 | 10/2003 | Miller |
| 2003/0218045 A1 | 11/2003 | Shkolnikov |
| 2004/0010268 A1 | 1/2004 | Gabehart |
| 2004/0144553 A1 | 7/2004 | Ashbaugh |
| 2004/0254507 A1 | 12/2004 | Off |
| 2005/0015030 A1 | 1/2005 | Bousfield et al. |
| 2005/0075591 A1 | 4/2005 | Hafemann |
| 2005/0096571 A1 | 5/2005 | Miki |
| 2005/0096682 A1 | 5/2005 | Daffer |
| 2005/0113870 A1 | 5/2005 | Miller |
| 2005/0131461 A1 | 6/2005 | Tucek et al. |
| 2005/0192519 A1 | 9/2005 | Crunick |
| 2005/0203448 A1 | 9/2005 | Harris et al. |
| 2006/0025710 A1 | 2/2006 | Schulz et al. |
| 2006/0058714 A1 | 3/2006 | Rhoades |
| 2006/0074360 A1 | 4/2006 | Yu |
| 2006/0116614 A1 | 6/2006 | Jones et al. |
| 2006/0178040 A1 | 8/2006 | Kurosawa |
| 2006/0178715 A1 | 8/2006 | Ahn et al. |
| 2006/0211961 A1 | 9/2006 | Meyer et al. |
| 2006/0293711 A1 | 12/2006 | Keller et al. |
| 2007/0144310 A1 | 6/2007 | Pozgay et al. |
| 2007/0150004 A1 | 6/2007 | Colloca et al. |
| 2007/0154783 A1 | 7/2007 | Jeon |
| 2007/0179414 A1 | 8/2007 | Imboden et al. |
| 2007/0257638 A1 | 11/2007 | Amend et al. |
| 2008/0196553 A1 | 8/2008 | Hoffmann et al. |
| 2008/0214968 A1 | 9/2008 | Milne et al. |
| 2008/0234611 A1 | 9/2008 | Sakai et al. |
| 2008/0243039 A1 | 10/2008 | Rhoades |
| 2008/0262397 A1 | 10/2008 | Habatjou |
| 2008/0262399 A1 | 10/2008 | Kovelman et al. |
| 2008/0275371 A1 | 11/2008 | Hoffmann |
| 2008/0306417 A1 | 12/2008 | Imboden et al. |
| 2009/0000039 A1 | 1/2009 | St. John et al. |
| 2009/0005812 A1 | 1/2009 | Fuhr |
| 2009/0182249 A1 | 7/2009 | Sakai et al. |
| 2009/0270915 A1 | 10/2009 | Tsai et al. |
| 2009/0286145 A1 | 11/2009 | Wan et al. |
| 2009/0306577 A1 | 12/2009 | Akridge et al. |
| 2010/0116517 A1 | 5/2010 | Katzenberger et al. |
| 2010/0145242 A1 | 6/2010 | Tsai |
| 2010/0160841 A1 | 6/2010 | Wu |
| 2010/0164434 A1 | 7/2010 | Cacioppo et al. |
| 2010/0185127 A1 | 7/2010 | Nilsson et al. |
| 2010/0228168 A1 | 9/2010 | Xu et al. |
| 2010/0252294 A1 | 10/2010 | Kondo et al. |
| 2010/0274162 A1 | 10/2010 | Evans |
| 2010/0331745 A1 | 12/2010 | Yao |
| 2011/0017742 A1 | 1/2011 | Sausen et al. |
| 2011/0087141 A1 | 4/2011 | Wagy et al. |
| 2011/0106067 A1 | 5/2011 | Geva et al. |
| 2011/0169481 A1 | 7/2011 | Nguyen et al. |
| 2012/0038483 A1 | 2/2012 | Du et al. |
| 2012/0120573 A1 | 5/2012 | Bentley |
| 2012/0197357 A1 | 8/2012 | Dewey et al. |
| 2012/0215141 A1 | 8/2012 | Peddicord |
| 2012/0253245 A1 | 10/2012 | Stanbridge |
| 2012/0259255 A1 | 10/2012 | Tomlinson et al. |
| 2012/0281392 A1 | 11/2012 | Workman et al. |
| 2012/0296244 A1 | 11/2012 | Ceoldo et al. |
| 2013/0006040 A1 | 1/2013 | Lee |
| 2013/0030506 A1 | 1/2013 | Bartolone et al. |
| 2013/0076271 A1 | 3/2013 | Suda et al. |
| 2013/0112451 A1 | 5/2013 | Kondo et al. |
| 2013/0138023 A1 | 5/2013 | Lerro |
| 2013/0261516 A1 | 10/2013 | Cilea et al. |
| 2013/0281897 A1 | 10/2013 | Hoffmann et al. |
| 2013/0289457 A1 | 10/2013 | Young et al. |
| 2013/0294019 A1 | 11/2013 | LaSota et al. |
| 2014/0014384 A1 | 1/2014 | Horie et al. |
| 2014/0031866 A1 | 1/2014 | Fuhr et al. |
| 2014/0094724 A1 | 4/2014 | Freeman |
| 2014/0159507 A1 | 6/2014 | Johnson et al. |
| 2014/0221887 A1 | 8/2014 | Wu |
| 2014/0288473 A1 | 9/2014 | Matsushita |
| 2015/0005682 A1 | 1/2015 | Danby et al. |
| 2015/0107383 A1 | 4/2015 | Duesselberg et al. |
| 2015/0119771 A1 | 4/2015 | Roberts |
| 2015/0148592 A1 | 5/2015 | Kanbar et al. |
| 2015/0182415 A1 | 7/2015 | Olkowski et al. |
| 2015/0366746 A1 | 12/2015 | Ashby |
| 2016/0151238 A1 | 6/2016 | Crunick et al. |
| 2016/0256348 A1 | 9/2016 | Giraud et al. |
| 2016/0271009 A1 | 9/2016 | Giraud et al. |
| 2016/0278436 A1 | 9/2016 | Verleur et al. |
| 2016/0354277 A1 | 12/2016 | Fima |
| 2016/0367425 A1 | 12/2016 | Wersland |
| 2017/0012257 A1 | 1/2017 | Wackwitz et al. |
| 2017/0027798 A1 | 2/2017 | Wersland |
| 2017/0028160 A1 | 2/2017 | Oliver |
| 2017/0087379 A1 | 3/2017 | Sedic |
| 2017/0304145 A1 | 10/2017 | Pepe |
| 2017/0333280 A1 | 11/2017 | Black |
| 2018/0008512 A1 | 1/2018 | Goldstein |
| 2018/0154141 A1 | 6/2018 | Ahn |
| 2018/0168913 A1 | 6/2018 | Sedic |
| 2018/0200141 A1 | 7/2018 | Wersland et al. |
| 2018/0263845 A1 | 9/2018 | Wersland et al. |
| 2019/0015294 A1 | 1/2019 | Nazarian et al. |
| 2019/0091096 A1 | 3/2019 | Patel |
| 2019/0125972 A1 | 5/2019 | Srinivasan et al. |
| 2019/0175434 A1 | 6/2019 | Zhang |
| 2019/0198828 A1 | 6/2019 | Zanon et al. |
| 2019/0209424 A1 | 7/2019 | Wersland et al. |
| 2019/0232403 A1 | 8/2019 | Candelaria |
| 2019/0254921 A1 | 8/2019 | Marton et al. |
| 2019/0254922 A1 | 8/2019 | Marton et al. |
| 2019/0350793 A1 | 11/2019 | Wersland et al. |
| 2020/0069510 A1 | 3/2020 | Wersland et al. |
| 2020/0093945 A1 | 3/2020 | Jeong |
| 2020/0128935 A1 | 4/2020 | Turner |
| 2020/0222263 A1 | 7/2020 | Wersland et al. |
| 2020/0261306 A1 | 8/2020 | Pepe |
| 2020/0261307 A1 | 8/2020 | Wersland et al. |
| 2020/0261310 A1 | 8/2020 | Wersland et al. |
| 2020/0274162 A1 | 8/2020 | Galceran Mestres et al. |
| 2020/0276079 A1 | 9/2020 | Cheng |
| 2020/0289365 A1 | 9/2020 | Wersland et al. |
| 2020/0329858 A1 | 10/2020 | Katano et al. |
| 2020/0330321 A1 | 10/2020 | Wersland et al. |
| 2020/0352820 A1 | 11/2020 | Nazarian et al. |
| 2020/0352821 A1 | 11/2020 | Wersland et al. |
| 2020/0405574 A1 | 12/2020 | Wersland et al. |
| 2021/0022955 A1 | 1/2021 | Wersland et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CA | 188553 A | 2/1919 |
| CA | 1042745 A | 11/1978 |
| CA | 2440783 A1 | 3/2004 |
| CN | 2049126 U | 12/1989 |
| CN | 2144503 Y | 10/1993 |
| CN | 2207816 Y | 9/1995 |
| CN | 1149446 A | 5/1997 |
| CN | 1228299 A | 9/1999 |
| CN | 2412567 Y | 1/2001 |
| CN | 2540948 Y | 3/2003 |
| CN | 2694966 Y | 4/2005 |
| CN | 201478387 U | 5/2010 |
| CN | 101801326 A | 8/2010 |
| CN | 202459196 U | 10/2012 |
| CN | 202478137 U | 10/2012 |
| CN | 202536467 U | 11/2012 |
| CN | 101958410 B | 1/2013 |
| CN | 103248096 A | 8/2013 |

**US 11,938,082 B1**

Page 5

(56)                **References Cited**

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CN | 203195947 U | | 9/2013 |
| CN | 103398298 A | | 11/2013 |
| CN | 203395603 U | | 1/2014 |
| CN | 103655142 A | | 3/2014 |
| CN | 204208018 U | | 3/2015 |
| CN | 204246459 U | | 4/2015 |
| CN | 204814773 U | | 12/2015 |
| CN | 205017429 U | | 2/2016 |
| CN | 205251993 U | | 5/2016 |
| CN | 205268525 U | | 6/2016 |
| CN | 205458346 U | | 8/2016 |
| CN | 206183628 U | | 5/2017 |
| CN | 106806103 A | | 6/2017 |
| CN | 206333979 U | | 7/2017 |
| CN | 206381369 U | | 8/2017 |
| CN | 206381373 U | | 8/2017 |
| CN | 206381389 U | | 8/2017 |
| CN | 107157741 A | | 9/2017 |
| CN | 206675699 U | | 11/2017 |
| CN | 304486625 | | 2/2018 |
| CN | 208130157 U | | 11/2018 |
| CN | 210301676 U | | 4/2020 |
| CN | 210872953 U | | 6/2020 |
| CN | 111759711 A | | 10/2020 |
| DE | 102012212256 A1 | | 1/2014 |
| DE | 202013012621 U1 | | 12/2017 |
| EM | 004377638-0002 | | 10/2017 |
| EP | 0040053 A1 | | 11/1981 |
| EP | 0158870 A1 | | 10/1985 |
| EP | 0666071 A1 | | 8/1995 |
| EP | 0572506 B1 | | 1/1997 |
| EP | 1728494 A1 | | 12/2006 |
| EP | 1620233 B1 | | 2/2007 |
| EP | 2510891 B1 | | 6/2016 |
| EP | 3062383 A2 | | 8/2016 |
| EP | 3235484 A1 | | 10/2017 |
| EP | 3320888 A1 | | 5/2018 |
| EP | 3435381 A1 | | 1/2019 |
| FI | 903376 A | | 12/1991 |
| GB | 191209026 A | | 3/1913 |
| GB | 191509508 A | | 6/1916 |
| GB | 188946 A | | 11/1922 |
| GB | 213117 A | | 3/1924 |
| GB | 1293876 A | | 10/1972 |
| JP | S54110058 A | | 8/1979 |
| JP | S6389158 A | | 4/1988 |
| JP | H04250161 A | | 9/1992 |
| JP | H053903 A | | 1/1993 |
| JP | H0751393 A | | 2/1995 |
| JP | H0733329 B2 | | 6/1995 |
| JP | H07153440 A | | 6/1995 |
| JP | H0866448 A | | 3/1996 |
| JP | H08131500 A | | 5/1996 |
| JP | H0992246 A | | 4/1997 |
| JP | 2781408 B2 | | 7/1998 |
| JP | 2999872 B2 | | 1/2000 |
| JP | 2002218780 A | | 8/2002 |
| JP | 2003230613 A | | 8/2003 |
| JP | 2004024523 A | | 1/2004 |
| JP | 2004141568 A | | 5/2004 |
| JP | 3813828 B2 | | 8/2006 |
| JP | 2007044319 A | | 2/2007 |
| JP | 2009291451 A | | 12/2009 |
| JP | 2010075288 A | | 4/2010 |
| JP | 5859905 B2 | | 2/2016 |
| JP | 1683409 S | | 4/2021 |
| KR | 2000004348 A | | 7/2000 |
| KR | 20030008342 A | | 1/2003 |
| KR | 2003-11328 Y1 | | 5/2003 |
| KR | 20060074625 A | | 7/2006 |
| KR | 200422971 Y1 | | 8/2006 |
| KR | 100785097 B1 | | 12/2007 |
| KR | 2009012808 A | | 12/2009 |
| KR | 2010-0023508 A | | 3/2010 |
| KR | 101007827 B1 | | 1/2011 |

| | | | |
|---|---|---|---|
| KR | 101162978 B1 | | 7/2012 |
| KR | 101315314 B1 | | 10/2013 |
| KR | 101504885 B1 | | 3/2015 |
| KR | 101649522 B1 | | 8/2016 |
| KR | 3010427980000 | | 1/2020 |
| KR | 102078829 B1 | | 2/2020 |
| RU | 2053754 C1 | | 2/1996 |
| RU | 2464005 C1 | | 10/2012 |
| TW | M272528 U | | 8/2005 |
| TW | M379178 U | | 4/2010 |
| TW | M402573 U | | 4/2011 |
| TW | M433702 U | | 7/2012 |
| TW | M493379 U | | 1/2015 |
| TW | M543692 U | | 6/2017 |
| TW | D202371 S | | 1/2020 |
| TW | 202017550 A | | 5/2020 |
| TW | M599159 U | | 8/2020 |
| WO | WO-9214435 A1 | | 9/1992 |
| WO | WO-9625908 A1 | | 8/1996 |
| WO | WO-03006102 A2 | | 1/2003 |
| WO | WO-2008/113139 A1 | | 9/2008 |
| WO | WO-2009/014727 A1 | | 1/2009 |
| WO | WO-2011122812 A2 | | 10/2011 |
| WO | WO-2011/159906 A2 | | 12/2011 |
| WO | WO-2012/134469 A1 | | 10/2012 |
| WO | WO-2012/177028 A2 | | 12/2012 |
| WO | WO-2013/141359 A1 | | 9/2013 |
| WO | WO-2014/038359 A1 | | 3/2014 |
| WO | WO-2014118596 A1 | | 8/2014 |
| WO | WO-2015038005 A2 | | 3/2015 |
| WO | WO-2017/123841 A2 | | 7/2017 |
| WO | WO-2017/184505 A2 | | 10/2017 |
| WO | WO-2020/101725 A1 | | 5/2020 |
| WO | WO-2020/227225 A1 | | 11/2020 |
| WO | WO-2020/227230 A1 | | 11/2020 |
| WO | WO-2020/227569 A1 | | 11/2020 |

OTHER PUBLICATIONS

Centech 4 in 1 Portable Power Pack Owner's Manual & Safety Instructions, 2014, 12 pages.

Christiana, A., "Porter-Cable PCL212ICC-2 12V Compact Lithium Two Tool Kit," Dec. 5, 2014, 5 pages.

DePuy Synthes Power Tools, "Battery Power Line II, User's Manual," for Battery-driven power tool system for orthopedics and traumatology, Dec. 2012, 83 pages.

DIY Jigsaw "Drill" Massager—Percussion Massager, Feb. 9, 2018, 19 pages.

Knopp, B., "How to Change Jolt Attachments," https://www.youtube.com/watch?v=pl-vHxRtXUQ, Apr. 5, 2017, 6 pages.

NutriKlick Deep Tissue Massage Gun, Date Unknown.

PERFOMAX 8 Volt Li-Ion Cordless Driver Owner's Manual, www.manualslib.com, Jul. 27, 2012, 19 pages.

Rachel [family name unknown], "Jigsaw Massager," Aug. 28, 2007, 8 pages. Information available online from http://www.instructables.com/id/jigsaw-massager/.

Synthes Battery Power Line, Jun. 2009, 6 pages.

Theragun Owners Manual G2PRO, 16 pages.

TIMTAM Power Massage 1.5, Aug. 7, 2020, 4 pages.

TOPiando Multifunctional Massage Gun, 19 pages, date unknown.

Yu-Chung, C., "Electrolux Power Drill," www.design-inspiration.net/inspiration/yu-chung-chang-electrolux-power-drill/, Aug. 20, 2017, 4 pages.

U.S. Appl. No. 17/083,118 Published as: US2021/0038472, System and Process for Determining Pressure Settings for a Percussive Massage Applicator, filed Oct. 28, 2020.

U.S. Appl. No. 18/466,702 Published as: 2024/0000656, Massage Device Having Variable Stroke Length, filed Sep. 13, 2023.

U.S. Appl. No. 18/515,119, Massage Device Having Variable Stroke Length, filed Nov. 20, 2023.

U.S. Appl. No. 18/515,122, Massage Device Having Variable Stroke Length, filed Nov. 20, 2023.

U.S. Appl. No. 18/515,126, Massage Device Having Variable Stroke Length, filed Nov. 20, 2023.

## US 11,938,082 B1

Page 6

(56)          **References Cited**

OTHER PUBLICATIONS

U.S. Appl. No. 17/972,421, Percussive Massage Device With Selectable Stroke Length, filed Oct. 24, 2022,

U.S. Appl. No. 17/136,218 Published as: US2021/0361524, Battery-Powered Percussive Massage Device, filed Dec. 29, 2020.

U.S. Appl. No. 18/342,158, Percussive Massage Device With Self-Lubricating Cylinder, filed Jun. 27, 2023.

U.S. Appl. No. 18/452,274, Motor and Piston Assembly for Percussive Device, filed Aug. 18, 2023.

U.S. Appl. No. 17/402,201 Published as: US2023/0048861, Combination Applicator and Adaptor for Percussive Massage Device, filed Aug. 13, 2021.

Amazon, "Theragun G3PRO Percussive Therapy Device", (Feb. 13, 2019) https://www.amazon.com/G3PRO-Percussive-Professional-Stimulator-Performance/dp/B07MJ2MCT3, 13 pages.

Cavity—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/cavity; retrieved Sep. 23, 2020 (9 pages).

Curriculum Vitae of Philip J. O'Keefe, PE (10 pages).

Declaration of Philip O'keefe, P.E., in Support of Petition or Post-Grant Review dated Sep. 30, 2020 (136 pages).

*Hyperlce PGR (Final Filing Draft); Shenzhen Shufang Innovation Technology Co., Ltd.; Nenz Electric Technology (Dongguan) Co., Ltd.; Shenzhen Xinde Technology Co., Ltd.; Performance Health Systems, LLC; Yongkang Aijiu Industrial & Trade Co., Ltd.* (Petitioner) v. *Hyper Ice, Inc.* (Patent Owner) Petition for Post Grant Review U.S. Pat. No. 10,561,574 dated Sep. 30, 2020 (119 pages—uploaded in two parts p. 1-59 and p. 60-119).

Inner—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/inner; retrieved Aug. 20, 2020 (2 pages).

International Search Report and the Written Opinion of corresponding International application PCT/US2018/053352, dated May 14, 2019, 16 pages.

International Preliminary Report on Patentability and Written Opinion of International Application No. PCT/US2021/057033 dated May 11, 2023, 9 pages.

International Preliminary Report on Patentability of International Application No. PCT/US2021/041073 dated Jan. 10, 2023, 10 pages.

International Search Report and Written Opinion of PCT/US2019/013769 dated Aug. 9, 2019, 13 pages.

International Search Report and Written Opinion of PCT/US2021/057033 dated Feb. 16, 2022, 14 pages.

Longitudinal—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english longitudinal; retrieved Sep. 22, 2020 (8 pages).

Microchip MCP73833/4 Stand-Along Linear Li-lon / Li-Polymer Charge Management Controller; 2009 Microchip Technology Inc. (32 pages).

Outer—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/outer; retrieved Sep. 22, 2020 (8 pages).

Perimeter—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/perimeter; retrieved Aug. 20, 2020 (1 page).

Practical Electronics for Inventors by Paul Scherz, 2000; (3 pages; cover, copyright page and p. 200).

Office Action for U.S. Appl. No. 16/107,587, dated Dec. 26, 2018, 36 pages.

Within—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/within; retrieved Aug. 20, 2020 (3 pages).

Feb. 27, 2019 Office Action for U.S. Appl. No. 16/201,542.

International Search Report and Written Opinion of PCT application No. PCT/US2021/057717, dated Feb. 23, 2022, 7 pages.

* cited by examiner



FIG. 1

U.S. Patent

Mar. 26, 2024

Sheet 2 of 7

US 11,938,082 B1



**FIG. 2**

U.S. Patent

Mar. 26, 2024

Sheet 3 of 7

US 11,938,082 B1



**FIG. 3**



FIG. 4



FIG. 5A

FIG. 5B

FIG. 6

FIG. 6A

FIG. 6B



**FIG. 7**

U.S. Patent

Mar. 26, 2024

Sheet 7 of 7

US 11,938,082 B1



FIG. 8

US 11,938,082 B1

1

# MASSAGE DEVICE HAVING VARIABLE STROKE LENGTH

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 18/466,702 filed on Sep. 13, 2023, which is a continuation of U.S. patent application Ser. No. 17/681,367 filed on Feb. 25, 2022, which is a continuation of U.S. patent application Ser. No. 15/892,665 filed on Feb. 9, 2018, and entitled "MASSAGE DEVICE HAVING VARIABLE STROKE LENGTH", (now U.S. Pat. No. 11,285,075 issued on Mar. 29, 2022), which is a continuation of U.S. patent application Ser. No. 14/317,573 filed on Jun. 27, 2014, and entitled "MASSAGING DEVICE HAVING A HEAT SINK" (now U.S. Pat. No. 9,889,066 issued on Feb. 13, 2018), which claims priority to and the benefits of U.S. Provisional Patent Application No. 61/841,693 filed on Jul. 1, 2013, and entitled "MASSAGING DEVICE", the entireties of which are incorporated herein by reference.

## BACKGROUND

This invention relates generally to medical devices, and more particularly, to a deep muscle-stimulating device used to increase muscle metabolism, increase the lactic acid cycle and relieve pain.

Vibrating massaging devices are available on the market today; however, those devices suffer from many deficiencies. Many of the prior art massaging devices are bulky, get very hot, are noisy and/or are difficult to use for extended periods of time.

## SUMMARY

Exemplary embodiments of massaging devices are disclosed herein. One exemplary embodiment includes a piston having a longitudinal axis and a massaging head connected to the piston. A motor is located on a first side of the longitudinal axis and a handle is located on a second side of the longitudinal axis. A drive mechanism for moving the piston and massage head is also included.

Another exemplary embodiment of a massaging device includes a handle, a piston, a massaging head attached to the piston, a motor, a drive mechanism for converting rotary motion of the motor to linear motion to drive the piston back and forth in a reciprocating motion, a processor, memory, a data connection in circuit communication with the processor and logic for transmitting data between the massaging device and a remote device.

Still another exemplary embodiment includes a massaging device that has a handle, a motor, a drive mechanism for converting rotary motion of the motor to reciprocating motion, a piston movable in a linear reciprocating motion connected to the drive mechanism and a massage head attached to the piston. The exemplary embodiment also includes a heat sink in thermal communication with the motor and drive mechanism, and a housing having two cavities. The first cavity at least partially surrounds the motor and the second cavity at least partially surrounds the heat sink. The cavities are separated from one another and the second cavity includes one or more openings for allowing air to flow over the heat sink to dissipate heat from the massager.

Another exemplary massaging device includes a housing, a handle extending outward from the housing and a piston

2

having a longitudinal axis extending substantially perpendicular to the handle. In addition, the massaging device includes a motor, a drive mechanism for moving the piston and a control panel. The control panel is located on the housing above the handle.

In yet another exemplary embodiment, a massaging device includes a handle, a piston, a quick-connection mechanism and one or more massaging heads releasably connectable to the piston by the quick-connection mechanism. The massaging device further includes a motor and a drive mechanism for moving the piston.

Another exemplary massaging device includes a handle, a piston, a massaging head connected to the piston, a motor and a drive mechanism for moving the piston. The drive mechanism includes a crank bearing that has one or more spring bars.

Still yet, another exemplary massaging device includes a handle, a piston a massaging head connected to the piston, a drive mechanism for moving the piston in a back and forth motion and a lost motion mechanism located between the massaging head and the drive mechanism.

## BRIEF DESCRIPTION OF THE DRAWINGS

These and other features and advantages of the present invention will become better understood with regard to the following description and accompanying drawings in which:

FIG. **1** illustrates a perspective view of an exemplary embodiment of a massaging device;

FIG. **2** illustrates a first cross-section of the exemplary massaging device of FIG. **1**;

FIG. **3** illustrates a second cross-section of the exemplary massaging device of FIG. **1**;

FIG. **4** illustrates an exploded perspective view of an exemplary drive mechanism of the massaging device;

FIGS. **5**A and **5**B show enlarged side views of a crank bearing having spring bars for use in the exemplary drive mechanism of FIG. **4**;

FIGS. **6**, **6**A and **6**B illustrate an exemplary quick-disconnect mechanism for connecting one or more massaging heads to a massaging device;

FIG. **7** illustrates a schematic view of an exemplary lost motion control mechanism for varying the stroke of the piston driving a massaging head; and

FIG. **8** illustrates an exemplary embodiment of a simplified block circuit diagram for a massaging device.

## DETAILED DESCRIPTION

The Detailed Description merely describes exemplary embodiments of the invention and is not intended to limit the scope of the claims in any way. Indeed, the invention is broader than and unlimited by the exemplary embodiments, and unless specifically indicated otherwise, the terms used in the claims have their full ordinary meaning.

"Circuit communication" as used herein indicates a communicative relationship between devices. Direct electrical, electromagnetic and optical connections and indirect electrical, electromagnetic and optical connections are examples of circuit communication. Two devices are in circuit communication if a signal from one is received by the other, regardless of whether the signal is modified by some other device. For example, two devices separated by one or more of the following—amplifiers, filters, transformers, optoisolators, digital or analog buffers, analog integrators, other electronic circuitry, fiber optic transceivers or satellites—are

US 11,938,082 B1

3

in circuit communication if a signal from one is communicated to the other, even though the signal is modified by the intermediate device(s). As another example, an electromagnetic sensor is in circuit communication with a signal if it receives electromagnetic radiation from the signal. As a final example, two devices not directly connected to each other, but both capable of interfacing with a third device, such as, for example, a processor, are in circuit communication.

Also, as used herein, voltages and values representing digitized voltages are considered to be equivalent for the purposes of this application, and thus the term "voltage" as used herein refers to either a signal, or a value in a processor representing a signal, or a value in a processor determined from a value representing a signal.

"Signal," as used herein includes, but is not limited to one or more electrical signals, analog or digital signals, one or more computer instructions, a bit or bit stream, or the like.

"Logic," synonymous with "circuit" as used herein includes, but is not limited to hardware, firmware, software and/or combinations of each to perform a function(s) or an action(s). For example, based on a desired application or needs, logic may include a software-controlled processor, microprocessor or microcontroller, discrete logic, such as an application specific integrated circuit (ASIC) or other programmed logic device. Logic may also be fully embodied as software. The circuits identified and described herein may have many different configurations to perform the desired functions.

Any values identified in the detailed description are exemplary, and they are determined as needed for a particular massaging device. Accordingly, the inventive concepts disclosed and claimed herein are not limited to particular values or ranges of values used to describe the embodiments disclosed herein.

FIG. 1 is a perspective view of an exemplary embodiment of a hand-held massaging device 100. The exemplary massaging device 100 includes a main housing 102 that houses a motor and a drive unit and an upper housing 104 that includes a heat sink and a fan. In addition, massaging device 100 includes a first handle 106, and a second optional handle 108. Handle 106 has a longitudinal axis that extends away from the housing 102. The massaging device 100 also includes a massaging head 130. As discussed in more detail below, in some embodiments massaging head 130 includes a quick-release connection.

Massaging device 100 includes a control panel 124. In one embodiment, control panel 124 comprises a first momentary pushbutton 126 and a second momentary pushbutton 128. First and second pushbuttons 126, 128 may serve multiple purposes. In one embodiment, pushing the first pushbutton 126 once moves the massaging device 100 to a first preset speed. Pushing the first pushbutton 126 a second time moves the massaging device 100 to a second preset speed. Accordingly, multiple preset speeds may be selected by pushing a single pushbutton. In addition, pushing pushbutton 126 and holding it down may increase the speed of the massaging head until the user releases the pushbutton 126.

In addition, if the massaging device 100 is turned off, pushing second pushbutton 128 once and holding it in for a period of time turns on the massaging device 100. Pushing the second pushbutton 128 in and holding it in for a period of time, such as, for example one second, causes massaging device 100 to turn off. While massaging device 100 is turned on, pushing and releasing second pushbutton 128 decreases the speed of the massaging device 100 to the next lowest preset speed. Pushing and releasing pushbutton 128 again

4

further reduces the speed of the massaging device 100. In some embodiments, the operating speed of the massaging device is generally between about 600 and 3600 strokes per minute.

The control panel 124 is located above handle 106 on upper housing 104. Control panel 124 is located off of the handle 106, which prevents accidental contact between a user's hand and the control panel 124 and allows a user to move her hand to any position on the handle 106 during operation. Preferably, control panel 124 is located so that it is reachable by a user's thumb without the user having to remove her hand from the handle 106. In addition, massaging device 100 includes a power cord 132 for providing power to the massaging device 100.

Although the exemplary control panel 124 illustrates two pushbuttons 126, 128, other controls may be used, such as dials and switches. In addition, visual or audible signals may be generated and displayed on control panel 124. To that extent, control panel 124 may include a visual display (not shown), an audible device (not shown) or the like, such as, for example a speaker, or the like. If a visual or audible device is used, the visual or audible device may be located proximate the pushbuttons or other controls, or may be located apart from such controls.

Upper housing 104 includes an air intake aperture covered by intake grate 120 and one or more air outlet apertures covered by outtake grate(s) 122. As described in more detail below, the heat-generating internal components of massaging device 100 are cooled by air passing through upper housing portion 104.

FIGS. 2 and 3 are cross-sections of massaging device 100. Located within handle 106 is control circuitry 260. Control circuitry 260 is in circuit communication with power cord 132, control panel 124, fan 220 and motor 210.

Motor 210 is located in housing 102 opposite handle 106. Motor 210 is a variable speed DC motor; however, motor 210 may be a constant speed motor, an AC motor or the like. In one embodiment, motor 210 has an operating speed of between about 600 and 3600 revolutions per minute (RPMs).

Motor 210 includes a shaft 211 that extends into a flywheel 212. Flywheel 212 includes a cylindrical projecting member or crank pin 213 positioned offset from the centerline 400 (FIG. 4) of the flywheel 212. Crank pin 213 is inserted in an aperture 410 (FIG. 4) of a crank bearing 214. Crank bearing 214 is inserted into a pocket 232 of a piston 230. The piston also has an elongated cutout 402 to receive part of the flywheel 212 for compactness while permitting piston reciprocation. Crank bearing 214 is cuboid in the exemplary embodiment, however, in some exemplary embodiments, crank bearing 214 may cylindrical.

FIG. 4 is an exploded perspective view of piston 230, flywheel 212 and crank bearing 214. Piston 230 may be made of any suitable material, and in some embodiments, piston 230 is made of aluminum. As illustrated in the drawings, in some embodiments, motor 210 is located on one side of the longitudinal axis of piston 230 and handle 106 is located on a second side of the longitudinal axis. Piston 230 includes a pocket 232 (or transverse slot) having a first wall 232A and a second wall 232B. In some embodiments, piston 230 is hollow on either side of pocket 232 to reduce weight.

Flywheel 212 includes a cylindrical projecting member 213. Crank pin 213 is off set from the centerline 400 of flywheel 212. Accordingly, as flywheel 212 rotates, crank pin 213 rotates in a circular path around the centerline 400 of the flywheel 212. Rotation of crank pin 213 causes crank

US 11,938,082 B1

5

bearing **214** to travel in a circular motion within piston pocket **232** causing reciprocal motion of piston **230**.

Piston **230** is restrained by two spaced apart bearings **310**, **311** (FIG. **3**). Bearing **310** is located on a first side of flywheel **212** and bearing **311** is located on a second side of flywheel **212**. Accordingly, piston **230** may only move in a back-and-forth motion along its longitudinal axis. The arrangement of the bearings **310**, **311** on both ends of the piston **230** provides for a very sturdy and robust drive mechanism. Because piston **230** is constrained to a linear back-and-forth motion, as crank bearing **214** rotates in a circular motion, it acts against side walls **232**A and **232**B of pocket **232**. This mechanism for converting rotary to linear motion is known as a "Scotch yoke."

In order to correctly assemble the components of a Scotch yoke drive, the pocket **232** (or walls of transverse slot) must be milled larger than the outside dimensions of the crank bearing **214**. The gap between the inside of pocket **232** and the outside of crank bearing **214** is typically 0.1 mm inches. Motor **210** rotates at between about 600 and 3600 RPMs and each time the crank bearing **214** switches from moving, for example, toward side wall **232**A of pocket **232** to moving toward the other side wall **232**B, the bearing block **214** travels the small gap and smacks or strikes the side wall, e.g., side **232**B, which causes a significant amount of noise and wear.

In one exemplary embodiment, crank bearing **214** is made with one spring bar **412**. FIG. **5**A is an enlarged elevation view of side **420** of crank bearing **214** and FIG. **5**B is an enlarged plan view showing top **422** of crank bearing **214**. The spring bars **412** are created by milling the outside of the spring block **214** proud by 0.4 mm in the area of the desired spring bar.

As illustrated in FIG. **5**A, the surface of spring bar **412** bows outward. The size of the bow is set to increase the width of the crank bearing **214** to be slightly larger (0.4 mm) than the width of the pocket **232**. In some embodiments, slots **502** and **504** are milled into the surfaces of side **420** and top **422** below the spring bar **412** to allow spring bar **412** to deflect inwards. In some embodiments, slots **502** and **504** intersect thereby leaving spring bar **412** supported only on each end.

Thus, when crank bearing **214** is inserted into pocket **232**, the spring bar **412** contacts the corresponding surface of the pocket **232** and deflects inward which causes crank bearing **214** to fit snuggly in pocket **232**. Accordingly, as crank bearing **214** changes directions from, for example, moving toward side wall **232**A to moving toward side wall **232**B, the spring bar **412** takes up the slack in the gap and prevent noise and wear that would otherwise be generated by the crank bearing **214** striking the side walls **232**A, **232**B of the pocket **232**.

Crank bearing **214** may be made of any suitable material; in some embodiments, crank bearing **214** is made of plastic. Although the exemplary embodiment is shown and described as having one spring bar, exemplary embodiments may have any number of spring bars.

Massaging device **100** includes a drive housing **218**. Drive housing **218** is made of a heat conducting material, such as, for example, aluminum and has a longitudinal bore **327** passing therethrough to receive piston **230**. As shown in FIG. **3**, drive housing **218** includes a first internal cylindrical groove **308** for holding bearing **310** and a second internal cylindrical groove **309** for holding bearing **311**. Spaced bearings **310** and **311** mount and guide the piston **230** relative to the drive housing **218**. Drive housing **318** surrounds piston **230** and flywheel **212**. In some embodiments,

6

drive housing **318** is made up of multiple components, such as an upper drive housing and a lower drive housing.

In addition, motor **210** includes a motor housing **209** that bolts onto drive housing **218**. Motor housing **209** is also made of a heat-conducting material, such as, for example, aluminum. Secured to drive housing **218** is heat sink **220**. Heat sink **220** includes a plurality of fins **221**. Heat sink **220** is made of a heat conducting-material, such as, for example, aluminum.

Main housing **102** contains a first cavity **281**. Upper housing **104** contains a second cavity **282**. First cavity **281** and second cavity **282** are separated by a barrier **280**. Motor **209** and drive housing **218** are located in the first cavity **281**. Heat sink **220** is located in second cavity **282**. The exemplary embodiment describes a main housing **102** and upper housing **104**. These may be portions made up of a single structure or multiple structures secured to each other.

Second cavity **282** includes an air inlet aperture **340** which is covered by grate **120** and one or more air outlet apertures **342** covered by one or more grates **122**. A fan **222** is located in second cavity **282**. When the fan **222** is activated, air enters second cavity **282** through air inlet aperture **340** and passes over cooling fins **221** of heat sink **220**, and the air then passes out of second cavity **282** through the one or more outlets **342**. The fan may be activated by a switch (not shown) on control panel **124**, activated automatically when the massaging device **100** is turned on, or may be activated by a thermostat (not shown). Thus, the cooling system for massaging device **100** is located in second cavity **282** and is isolated from the other components in the massaging device **100**.

In typical massaging devices, cooling air is blown over the motor. Because the massaging devices operate for long periods of time in an atmosphere that is subject to a significant amount of dust and lint because the massaging device is often used on a person wearing clothes, a towel or a robe. Over time, the dust and lint may build up on the motor and cause the prior art massaging devices to overheat. Locating the cooling system in a cavity **282** that is isolated from the rest of the internal components minimizes this type of failure. The air outlet grates **122** may be sized larger to allow any lint and dust to freely pass out of the cavity **282**. In addition, the surface of the heat sink **220** is smooth and thus, there will be few pockets for dust and lint to get trapped.

FIGS. **6** and **6**A illustrate an exemplary embodiment of a quick-connect system **600** for connecting a massaging head **620** to a piston **602**. When providing a deep tissue massage using a massaging device, such as, for example, massaging device **100**, it may be desirable to switch massaging heads to work on different muscles or different portions of muscles during the massage. The exemplary quick-connect system **600** allows a user to quickly switch massaging heads **620**. Moreover, the exemplary quick-connect system **600** may be used without turning off the massaging device **100**.

Quick-connect system **600** includes a piston **602** that has a hollow-end bore **608** for receiving the shaft **621** of a massaging head **620**. Located within the bore **608** of piston **602** is a cylindrical seat **604**. Cylindrical seat **604** retains a magnet **606**. Magnet **606** is illustrated with its north pole located flush with the seat and facing toward the opening in bore **608**. Massaging head **620** includes a shaft **621** having a cylindrical pocket **622** at the distal end. Located within the cylindrical pocket **622** is a magnet **624**. Magnet **624** is positioned so that its south pole is located at the distal end of shaft **621**. Accordingly, when the shaft **621** of massaging

US 11,938,082 B1

7

head **620** is slid into opening in bore **608**, the magnets **606** and **624** are attracted to one another and magnetically hold massaging head **620** firmly in place.

To remove massaging head **620**, a user need only apply a sufficient amount of force to separate the two magnets **606**, **624**. The strength of the magnets **606**, **624** are sized to prevent the massaging head **620** from separating from the piston **602** during normal use, and yet allow a user to quickly remove and replace the massaging head **620**. In some embodiments the end **626** of the massaging head **620** is rounded, pointed or tapered (not shown) to allow it to easily slip into the opening **608** even while the piston **608** is moving.

FIG. 6B illustrates another quick-connect massaging head **630**. Quick-connect massaging head **630** is substantially the same as massaging head **620** except that the head portion **639** has a different shape than head portion **629** of massaging head **620**.

In some instances, it may be desirable to adjust the throw or the stroke length of the massaging head to work on larger or smaller muscle groups, or deeper or shallower points of stress or soreness in the muscles. FIG. 7 illustrates an exemplary embodiment of a lost motion system **700**. Although lost motion system **700** is a hydraulic lost motion system, other mechanical lost motion devices may be used in accordance with embodiments of the present invention.

Lost motion system **700** is contained in housing **702**. Housing **702** may be similar to drive housing **218** described above except it may need to be larger to accommodate lost motion system **700**. Housing **702** includes a floating piston **720** located in first cylindrical bore **708**. Floating piston **720** includes a sealing member **722** for forming a seal between floating piston **720** and first cylindrical bore **708**. A cam **706** secured to housing **702** may be rotated to adjust the amount of travel that floating piston **720** may move. A passage **710** fluidically connects first cylindrical bore **708** to second cylindrical bore **704**.

A drive piston **730** is located in second cylindrical bore **704**. Drive piston **730** includes a sealing member **732** to seal between the drive piston **730** and second cylindrical bore **704**. Drive piston **730** may be driven in substantially the same way as described above with respect to piston **230**. A passage **705** fluidically connects second cylindrical bore **704** and passage **710** to third cylindrical bore **706**. Located within third cylindrical bore **706** is an output piston **740**.

Output piston **740** includes a sealing member **742**, such as, for example, an o-ring to form a seal between drive piston **730** and third cylindrical bore **706**. Hydraulic fluid **712** is located in passages **705**, **710** and portions of the first, second, and third cylindrical cavities **708**, **704** and **706** as illustrated. A massaging head (not shown) is connected to output piston **740**.

During operation, if cam **706** is set so that floating piston **720** is retained at the proximate end of first cylindrical bore **708** (as illustrated), movement of the drive piston **730** moves output piston **740** its maximum stroke length. If cam **706** is set so that floating piston **720** moves to adjacent the distal end of first cylindrical bore **708**, movement of the drive piston **730** moves output piston **740** its minimum stroke length. The cam may also be selectively rotated to intermediate positions to choose different magnitudes of floating piston movement resulting in different selected magnitudes of output piston movement.

In some embodiments, floating piston **720** is physically connected to the cam or other adjustment mechanism so that it is positioned in a predetermined position and remains

8

stationary during operation of the drive piston **730**. Thus, floating piston **720** does not float during operation of the massaging device.

In some embodiments, the lost motion system may be contained in the massaging head itself, or in an adaptor that connects between the piston and the massaging head. Thus, rather than having a cam in the housing of the massaging device, different applicator heads or adaptors having a set lost motion, or variable lost motion systems integral therein may be used. In some embodiments, such adaptors and massaging heads may be adapted with a quick-connect system similar to the ones described with respect to FIGS. **6** and **6**A.

FIG. **8** illustrates a simplified exemplary electrical schematic diagram **800** of an embodiment of a massaging device. The components disclosed as being on a particular circuit board may be on multiple circuit boards or individually mounted and hardwired to one another. Circuit board **801** includes memory **804**, motor control circuitry **810** and fan control circuitry **816**, which are in circuit communication with processor **802**. Fan control circuitry **816** is in circuit communication with fan **817**.

Power circuitry **812** may be included on circuit board **801** or may be located on its own external to the massager. Power circuitry **812** includes the necessary power conditioning circuitry to provide power to both the electronics and the motors. In circuit communication with power circuitry **812** is plug **814**. Optionally two or more power circuits may be utilized. All of the connections between power circuitry **812** and the other components may not be shown in FIG. **8**; however, those skilled in the art have the required knowledge to provide power to the devices that require power. Motor control circuitry **810** is in circuit communication with drive motor **811**. Drive motor **811** is used to drive the piston and massaging head as described above.

Memory **804** is a processor readable media and includes the necessary logic to operate the massaging device. Examples of different processor readable media include Flash Memory, Read-Only Memory (ROM), Random-Access Memory (RAM), programmable read-only memory (PROM), electrically programmable read-only memory (EPROM), electrically erasable programmable read-only memory (EEPROM), magnetic disk, and optically readable mediums, and others. Still further, the processes and logic described herein can be merged into one large process flow or divided into many sub-process flows. The order in which the process flows herein have been described is not critical and can be rearranged while still accomplishing the same results. Indeed, the process flows described herein may be rearranged, consolidated and/or reorganized in their implementation as warranted or desired.

In addition, processor **802** is in circuit communication with control panel **806**. Control panel **806** includes any desired pushbuttons, dials, displays or the like. Control panel **806** provides the operator interface to operate and control the massaging device.

Processor **802** is also in circuit communication with data connection **820**. Representative data connections **820** include an Ethernet wire, Bluetooth, WiFi, optical transmitter/reader, an IR reader and the like. Combinations of two or more different data connections **820** may be used. Data connection **820** may be used to transmit data to an outside device, such as, for example, a computer or hand-held portable device. Various uses for transmitting such data are described below.

In some embodiments, processor **802** includes logic to collect and store data related to use of the massaging device.

US 11,938,082 B1

9

Exemplary types of data may include usage rates, operating times or the like. In some embodiments, different massaging heads include an RFID chip and when inserted into the massaging device, an RFID reader (not shown) identifies and stores the type of massaging head utilized. In some embodiments, a customer number may be associated with the data. This data may be used to determine lease rates of the massaging device, for calculating cost/benefit analysis, or for setting up customized massages.

In some embodiments, data may be uploaded from a computer or hand-held portable device to the massaging device. Such data may include customized massaging programs tailored for individual needs. In some embodiments, the customized massaging program may be reflective of prior massages given to a customer that were particularly well-received by the customer.

In some embodiments, the customized massaging program may indicate to the user on a display on the control panel **806** massage times, locations, type of massage head to use or the like to ensure covering the desired locations with the customized massage.

While various inventive aspects, concepts and features of the inventions may be described and illustrated herein be embodied in combination in the exemplary embodiments, these various aspects, concepts and features may be used in many alternative embodiments, either individually or in various combinations and sub-combinations thereof. Unless expressly excluded herein all such combinations and sub-combinations are intended to be within the scope of the present inventions. Still further, while various alternative embodiments as to the various aspects, concepts and features of the inventions—such as alternative materials, structures, configurations, methods, circuits, devices and components, software, hardware, control logic, alternatives as to form, fit and function, and so on—may be described herein, such descriptions are not intended to be a complete or exhaustive list of available alternative embodiments, whether presently known or later developed. Those skilled in the art may readily adopt one or more of the inventive aspects, concepts or features into additional embodiments and uses within the scope of the present inventions even if such embodiments are not expressly disclosed herein. Additionally, even though some features, concepts or aspects of the inventions may be described herein as being a preferred arrangement or method, such description is not intended to suggest that such feature is required or necessary unless expressly so stated. Still further, exemplary or representative values and ranges may be included to assist in understanding the present disclosure; however, such values and ranges are not to be construed in a limiting sense and are intended to be critical values or ranges only if so expressly stated. Moreover, while various aspects, features and concepts may be expressly identified herein as being inventive or forming part of an invention, such identification is not intended to be exclusive, but rather there may be inventive aspects, concepts and features that are fully described herein without being expressly identified as such or as part of a specific invention. Descriptions of exemplary methods or processes are not limited to inclusion of all steps as being required in all cases, nor is the order that the steps are presented to be construed as required or necessary unless expressly so stated.

What is claimed is:

**1**. A percussive massager comprising:

a housing;

a piston having a proximal end and a distal end, the distal end of the piston having a bore;

10

a motor operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed;

a drive mechanism that controls a predetermined stroke length of the piston; and

a quick-connect system comprising the distal end of the piston and a first massaging head, wherein the quick-connect system is configured to have a proximal end of the first massaging head inserted into or removed from the bore while the piston reciprocates the predetermined stroke length at the first speed.

**2**. The percussive massager of claim **1**, wherein the motor is configured to cause the piston to reciprocate at a second speed.

**3**. The percussive massager of claim **1**, further comprising:

a control panel positioned on an exterior of the housing.

**4**. The percussive massager of claim **3**, wherein the control panel is configured to display one or more visual indicators.

**5**. The percussive massager of claim **1**, further comprising a handle and a flywheel, wherein the handle is on an opposite side of the flywheel with respect to the motor.

**6**. The percussive massager of claim **1**, further comprising a handle, wherein the motor is positioned within the housing opposite the handle.

**7**. The percussive massager of claim **1**, wherein the motor has an output shaft configured to rotate about a rotation axis, and wherein the drive mechanism comprises:

a flywheel operatively connected to the output shaft of the motor to rotate about a flywheel axis, the output shaft extending into the flywheel along the flywheel axis; and

a crank pin extending from the flywheel, the crank pin being operatively connected to the piston.

**8**. The percussive massager of claim **7**, further comprising a handle, wherein the motor and the handle are on opposite sides of a plane perpendicular to the flywheel axis that extends through the flywheel.

**9**. The percussive massager of claim **7**, further comprising a handle, wherein the motor and the handle are on a same side of a plane perpendicular to the flywheel axis that extends through the flywheel.

**10**. The percussive massager of claim **7**, wherein an offset between the flywheel axis and an axis of the crank pin controls the predetermined stroke length of the piston.

**11**. The percussive massager of claim **7**, wherein the motor is directly connected to the flywheel, and wherein the crank pin is directly connected to the flywheel.

**12**. The percussive massager of claim **7**, wherein the motor is configured to cause the piston to reciprocate at the first speed along a longitudinal axis, and further comprising:

a first bearing located on a first side of the flywheel; and

a second bearing located on a second side of the flywheel, wherein the first bearing and the second bearing are configured to restrain reciprocation of the piston to the longitudinal axis.

**13**. The percussive massager of claim **1**, wherein the bore comprises a substantially cylindrical bore.

**14**. The percussive massager of claim **1**, further comprising a substantially cylindrical structure within the bore.

**15**. The percussive massager of claim **14**, wherein the substantially cylindrical structure comprises a cylindrical seat.

**16**. The percussive massager of claim **14**, wherein the substantially cylindrical structure comprises a magnet.

US 11,938,082 B1

11

**17**. The percussive massager of claim **1**, wherein a proximal end of the first massaging head has a pocket to receive the distal end of the piston.

**18**. A method of assembling a percussive massager, the method comprising:

operatively connecting a motor to a proximal end of a piston, wherein the motor is configured to cause the piston to reciprocate at a first speed, wherein a distal end of the piston has a bore,

providing a drive mechanism configured to control a predetermined stroke length of the piston; and

providing a quick-connect system comprising the distal end of the piston and a first massaging head, wherein a proximal end of the first massaging head is configured to be inserted into or removed from the bore while the piston reciprocates the predetermined stroke length at the first speed.

\* \* \* \* \*

12

# EXHIBIT 7

US012133826B1

(12) **United States Patent**
Danby et al.

(10) Patent No.: **US 12,133,826 B1**
(45) Date of Patent: **\*Nov. 5, 2024**

(54) **MASSAGE DEVICE WITH A RELEASABLE CONNECTION FOR A MASSAGING HEAD**

(71) Applicant: **HYPERICE IP SUBCO, LLC**, Irvine, CA (US)

(72) Inventors: **Philip C. Danby**, Key Biscayne, FL (US); **John Charles Danby**, Witham (GB)

(73) Assignee: **HYPERICE IP SUBCO, LLC**, Irvine, CA (US)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **18/761,049**

(22) Filed: **Jul. 1, 2024**

**Related U.S. Application Data**

(63) Continuation of application No. 18/466,702, filed on Sep. 13, 2023, which is a continuation of application
(Continued)

(51) **Int. Cl.**
*A61H 23/02* (2006.01)

(52) **U.S. Cl.**
CPC . *A61H 23/0254* (2013.01); *A61H 2201/0107* (2013.01); *A61H 2201/0153* (2013.01); *A61H 2201/0157* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/1418* (2013.01); *A61H 2201/149* (2013.01); *A61H 2201/1664* (2013.01); *A61H 2201/5005* (2013.01); *A61H 2201/501* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........ A61H 23/0254; A61H 2201/0107; A61H 2201/0153; A61H 2201/0157; A61H 2201/1215; A61H 2201/1418; A61H 2201/149; A61H 2201/1664; A61H 2201/5005; A61H 2201/501; A61H 2201/5015; A61H 2201/5035; A61H 2201/5038; A61H 2201/5097
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 784,024 | A | 3/1905 | Barrett et al. |
| 799,881 | A | 9/1905 | Wells |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CA | 188544 | A | 2/1919 |
| CA | 188545 | A | 2/1919 |

(Continued)

OTHER PUBLICATIONS

U.S. Appl. No. 17/083,118 Published as: US2021/0038472, System and Process for Determining Pressure Settings for a Percussive Massage Applicator, filed Oct. 28, 2020.
(Continued)

*Primary Examiner* — Timothy A Stanis
(74) *Attorney, Agent, or Firm* — Goodwin Procter LLP

(57) **ABSTRACT**

Exemplary embodiments of massaging devices are disclosed herein. One exemplary embodiment includes a piston having a longitudinal axis, a massaging head connected to the piston, a motor located on a first side of the longitudinal axis and a handle located on a second side of the longitudinal axis. A drive mechanism for moving the piston and massage head is also included.

**15 Claims, 7 Drawing Sheets**



**US 12,133,826 B1**

Page 2

---

### Related U.S. Application Data

No. 17/681,367, filed on Feb. 25, 2022, now Pat. No. 11,857,482, which is a continuation of application No. 15/892,665, filed on Feb. 9, 2018, now Pat. No. 11,285,075, which is a continuation of application No. 14/317,573, filed on Jun. 27, 2014, now Pat. No. 9,889,066.

(60) Provisional application No. 61/841,693, filed on Jul. 1, 2013.

(52) **U.S. Cl.**
CPC ................ *A61H 2201/5015* (2013.01); *A61H 2201/5035* (2013.01); *A61H 2201/5038* (2013.01); *A61H 2201/5097* (2013.01)

(56)     **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 863,525 | A | 12/1907 | Gardy |
| 873,123 | A | 12/1907 | Gardy |
| 1,269,803 | A | 6/1918 | Elmen et al. |
| 1,339,179 | A | 5/1920 | Elmen |
| 1,594,636 | A | 8/1926 | Smith |
| 1,612,981 | A | 1/1927 | Mraula |
| 1,657,765 | A | 1/1928 | Pasque |
| 1,784,301 | A | 12/1930 | Mekler |
| 1,978,223 | A | 10/1934 | Parker |
| 2,078,025 | A | 4/1937 | Samuels |
| 3,030,647 | A | 4/1962 | Peyron |
| D197,889 | S | 4/1964 | Hass |
| 3,494,353 | A | 2/1970 | Marich |
| 3,626,934 | A | 12/1971 | Andis |
| 3,696,693 | A | 10/1972 | Bosten et al. |
| 3,699,952 | A | 10/1972 | Waters et al. |
| 3,705,578 | A | 12/1972 | Cutler et al. |
| 3,710,785 | A | 1/1973 | Hilger |
| 3,837,335 | A | 9/1974 | Teranishi |
| 3,841,321 | A | 10/1974 | Albach et al. |
| 3,845,758 | A | 11/1974 | Anderson |
| 3,920,291 | A | 11/1975 | Wendel et al. |
| 3,968,789 | A | 7/1976 | Simoncini |
| 3,993,052 | A | 11/1976 | Miyahara |
| 4,079,733 | A | 3/1978 | Denton et al. |
| 4,088,128 | A | 5/1978 | Mabuchi |
| 4,149,530 | A | 4/1979 | Gow |
| 4,150,668 | A | 4/1979 | Johnston |
| 4,162,675 | A | 7/1979 | Kawada |
| 4,173,217 | A | 11/1979 | Johnston |
| RE30,500 | E | 2/1981 | Springer et al. |
| 4,412,535 | A | 11/1983 | Teren |
| 4,505,267 | A | 3/1985 | Inada |
| 4,513,737 | A | 4/1985 | Mabuchi |
| 4,523,580 | A | 6/1985 | Tureaud |
| 4,549,535 | A | 10/1985 | Wing |
| 4,566,442 | A | 1/1986 | Mabuchi et al. |
| 4,691,693 | A | 9/1987 | Sato |
| 4,698,869 | A | 10/1987 | Mierau et al. |
| 4,709,201 | A | 11/1987 | Schaefer et al. |
| 4,726,430 | A | 2/1988 | Hendrikx et al. |
| 4,730,605 | A | 3/1988 | Noble et al. |
| 4,751,452 | A | 6/1988 | Kilmer et al. |
| 4,790,296 | A | 12/1988 | Segal |
| 4,827,914 | A | 5/1989 | Kamazawa |
| 4,841,955 | A | 6/1989 | Evans et al. |
| 4,858,600 | A | 8/1989 | Gross et al. |
| 4,880,713 | A | 11/1989 | Levine |
| 4,989,613 | A | 2/1991 | Finkenberg |
| 5,043,651 | A | 8/1991 | Tamura |
| 5,063,911 | A | 11/1991 | Teranishi |
| 5,065,743 | A | 11/1991 | Sutherland |
| D323,034 | S | 1/1992 | Reinstein |
| D323,606 | S | 2/1992 | Chang |
| 5,085,207 | A | 2/1992 | Fiore |
| 5,134,777 | A | 8/1992 | Meyer et al. |
| 5,140,979 | A | 8/1992 | Nakagawa |
| D329,291 | S | 9/1992 | Wollman |
| D329,292 | S | 9/1992 | Wollman |
| 5,159,922 | A | 11/1992 | Mabuchi et al. |
| D331,467 | S | 12/1992 | Wollman |
| D335,073 | S | 4/1993 | Anthony et al. |
| 5,215,051 | A | 6/1993 | Smith |
| 5,215,078 | A | 6/1993 | Fulop |
| 5,305,738 | A | 4/1994 | Shimizu |
| 5,311,860 | A | 5/1994 | Doria |
| 5,364,223 | A | 11/1994 | Bissex |
| 5,415,621 | A | 5/1995 | Campbell |
| 5,417,644 | A | 5/1995 | Lee |
| 5,447,491 | A | 9/1995 | Bellandi et al. |
| 5,469,860 | A | 11/1995 | De Santis |
| 5,489,280 | A | 2/1996 | Russell |
| D367,712 | S | 3/1996 | Young |
| D373,640 | S | 9/1996 | Young |
| 5,569,168 | A | 10/1996 | Hartwig |
| 5,573,500 | A | 11/1996 | Katsunuma et al. |
| D377,100 | S | 12/1996 | Gladieux, Jr. |
| 5,602,432 | A | 2/1997 | Mizutani |
| D378,378 | S | 3/1997 | Acciville et al. |
| 5,632,720 | A | 5/1997 | Kleitz |
| D379,580 | S | 6/1997 | Amundsen |
| 5,656,017 | A | 8/1997 | Keller et al. |
| 5,656,018 | A | 8/1997 | Tseng |
| D388,175 | S | 12/1997 | Lie |
| 5,725,483 | A | 3/1998 | Podolsky |
| 5,733,029 | A | 3/1998 | Monroe |
| 5,769,657 | A | 6/1998 | Kondo et al. |
| 5,797,462 | A | 8/1998 | Rahm |
| 5,803,916 | A | 9/1998 | Kuznets et al. |
| D403,220 | S | 12/1998 | Kimata et al. |
| 5,843,006 | A | 12/1998 | Phillips et al. |
| D407,498 | S | 3/1999 | Cooper |
| D408,241 | S | 4/1999 | Jansson |
| 5,925,002 | A | 7/1999 | Wollman |
| 5,935,089 | A | 8/1999 | Shimizu |
| 5,951,501 | A | 9/1999 | Griner |
| 6,051,957 | A | 4/2000 | Klein |
| 6,102,875 | A | 8/2000 | Jones |
| D430,938 | S | 9/2000 | Lee |
| 6,123,657 | A | 9/2000 | Ishikawa et al. |
| 6,165,145 | A | 12/2000 | Noble |
| 6,170,108 | B1 | 1/2001 | Knight |
| D437,713 | S | 2/2001 | Young |
| D438,309 | S | 2/2001 | Young |
| 6,228,042 | B1 | 5/2001 | Dungan |
| 6,231,497 | B1 | 5/2001 | Souder |
| D448,852 | S | 10/2001 | Engelen |
| 6,357,125 | B1 | 3/2002 | Feldmann et al. |
| D455,837 | S | 4/2002 | Kim |
| 6,375,609 | B1 | 4/2002 | Hastings et al. |
| 6,401,289 | B1 | 6/2002 | Herbert |
| 6,402,710 | B1 | 6/2002 | Hsu |
| D460,675 | S | 7/2002 | Morgan |
| 6,432,072 | B1 | 8/2002 | Harris et al. |
| 6,440,091 | B1 | 8/2002 | Hirosawa |
| 6,461,377 | B1 | 10/2002 | An |
| 6,478,755 | B2 | 11/2002 | Young |
| D467,148 | S | 12/2002 | Flickinger |
| 6,494,849 | B2 | 12/2002 | Kuo |
| 6,503,211 | B2 | 1/2003 | Frye |
| 6,537,236 | B2 | 3/2003 | Tucek et al. |
| D474,089 | S | 5/2003 | Huang |
| 6,577,287 | B2 | 6/2003 | Havel |
| 6,581,596 | B1 | 6/2003 | Truitt et al. |
| D476,746 | S | 7/2003 | Harris et al. |
| 6,585,667 | B1 | 7/2003 | Muller |
| 6,602,211 | B2 | 8/2003 | Tucek |
| 6,616,621 | B1 | 9/2003 | Kohr |
| 6,656,140 | B2 | 12/2003 | Oguma et al. |
| 6,663,657 | B1 | 12/2003 | Miller |
| 6,682,496 | B1 | 1/2004 | Pivaroff |
| D487,219 | S | 3/2004 | Chady et al. |
| 6,758,826 | B2 | 7/2004 | Luettgen et al. |
| 6,805,700 | B2 | 10/2004 | Miller |

## US 12,133,826 B1
Page 3

(56)           **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D498,128 | S | 11/2004 | Sterling |
| 6,832,991 | B1 | 12/2004 | Inada et al. |
| 6,866,776 | B2 | 3/2005 | Leason et al. |
| 6,979,300 | B1 | 12/2005 | Julian et al. |
| 6,994,679 | B1 | 2/2006 | Lee |
| 7,033,329 | B2 | 4/2006 | Liao |
| 7,041,072 | B2 | 5/2006 | Calvert |
| 7,083,581 | B2 | 8/2006 | Tsai |
| 7,125,390 | B2 | 10/2006 | Ferber et al. |
| 7,128,722 | B2 | 10/2006 | Lev et al. |
| D531,733 | S | 11/2006 | Burout, III et al. |
| 7,144,417 | B2 | 12/2006 | Colloca et al. |
| 7,169,169 | B2 | 1/2007 | Tucek et al. |
| D536,591 | S | 2/2007 | Ghode et al. |
| 7,211,057 | B2 | 5/2007 | Gleason et al. |
| D544,102 | S | 6/2007 | Pivaroff |
| 7,229,424 | B2 | 6/2007 | Jones et al. |
| 7,238,162 | B2 | 7/2007 | Dehli |
| D548,354 | S | 8/2007 | Lai |
| 7,264,598 | B2 | 9/2007 | Shin |
| 7,270,641 | B2 | 9/2007 | Glucksman et al. |
| D553,252 | S | 10/2007 | Masuda |
| 7,282,036 | B2 | 10/2007 | Masuda |
| 7,282,037 | B2 | 10/2007 | Cho |
| D555,255 | S | 11/2007 | Masuda |
| 7,306,569 | B2 | 12/2007 | LaJoie et al. |
| 7,322,946 | B2 | 1/2008 | Lev et al. |
| 7,335,170 | B2 | 2/2008 | Milne et al. |
| 7,354,408 | B2 | 4/2008 | Muchisky |
| D581,542 | S | 11/2008 | Ferber et al. |
| D581,543 | S | 11/2008 | Ferber et al. |
| D582,049 | S | 12/2008 | Ferber et al. |
| 7,470,242 | B2 | 12/2008 | Ferber et al. |
| 7,503,923 | B2 | 3/2009 | Miller |
| 7,507,198 | B2 | 3/2009 | Ardizzone et al. |
| 7,517,327 | B1 | 4/2009 | Knight |
| 7,597,669 | B2 | 10/2009 | Huang |
| D606,192 | S | 12/2009 | Summerer et al. |
| 7,629,766 | B2 | 12/2009 | Sadow |
| 7,634,314 | B2 | 12/2009 | Applebaum et al. |
| 7,658,012 | B2 | 2/2010 | James et al. |
| D613,416 | S | 4/2010 | Schupman |
| D625,164 | S | 10/2010 | Aglassinger |
| D627,897 | S | 11/2010 | Yde et al. |
| D627,898 | S | 11/2010 | Aulwes et al. |
| 7,927,259 | B1 | 4/2011 | Rix |
| 7,927,294 | B2 | 4/2011 | Kamimura et al. |
| 7,976,485 | B2 | 7/2011 | Huang |
| D649,657 | S | 11/2011 | Petersen et al. |
| 8,052,625 | B2 | 11/2011 | Tsai et al. |
| 8,083,699 | B2 | 12/2011 | Colloca et al. |
| 8,092,407 | B2 | 1/2012 | Tsukada et al. |
| D658,759 | S | 5/2012 | Marescaux et al. |
| 8,192,379 | B2 | 6/2012 | Huang |
| D665,915 | S | 8/2012 | Ma |
| 8,282,583 | B2 | 10/2012 | Tsai |
| 8,317,733 | B2 | 11/2012 | Chen et al. |
| 8,342,187 | B2 | 1/2013 | Kalman et al. |
| 8,435,194 | B2 | 5/2013 | Dverin et al. |
| 8,475,362 | B2 | 7/2013 | Sohn et al. |
| 8,632,525 | B2 | 1/2014 | Kerr et al. |
| 8,673,487 | B2 | 3/2014 | Churchill |
| D703,337 | S | 4/2014 | Fuhr et al. |
| D706,433 | S | 6/2014 | Fuhr et al. |
| D708,742 | S | 7/2014 | Dallemagne et al. |
| 8,826,547 | B2 | 9/2014 | Oberheim |
| 8,841,871 | B2 | 9/2014 | Yang et al. |
| D719,273 | S | 12/2014 | Chen |
| 8,951,216 | B2 | 2/2015 | Yoo et al. |
| D725,790 | S | 3/2015 | Givord |
| D725,978 | S | 4/2015 | Uematsu et al. |
| 9,017,355 | B2 | 4/2015 | Smith et al. |
| D734,863 | S | 7/2015 | Hennessey |
| D735,348 | S | 7/2015 | Hennessey |
| 9,107,690 | B2 | 8/2015 | Bales, Jr. et al. |
| D738,516 | S | 9/2015 | Karim |
| 9,272,141 | B2 | 3/2016 | Nichols |
| D752,936 | S | 4/2016 | King et al. |
| D757,953 | S | 5/2016 | Philips |
| 9,333,371 | B2 | 5/2016 | Bean et al. |
| D759,237 | S | 6/2016 | Heath et al. |
| D759,238 | S | 6/2016 | Heath et al. |
| D759,831 | S | 6/2016 | Levi et al. |
| 9,364,626 | B2 | 6/2016 | Carter et al. |
| D763,442 | S | 8/2016 | Price et al. |
| D778,439 | S | 2/2017 | Hakansson et al. |
| 9,756,402 | B2 | 9/2017 | Stampfl et al. |
| D810,280 | S | 2/2018 | Tharp et al. |
| 9,889,066 | B2 | 2/2018 | Danby et al. |
| D819,221 | S | 5/2018 | Lei |
| D823,478 | S | 7/2018 | Park |
| D825,073 | S | 8/2018 | Lenke |
| D827,842 | S | 9/2018 | Bainton et al. |
| D827,843 | S | 9/2018 | Bainton et al. |
| 10,162,106 | B1 | 12/2018 | Grillo et al. |
| D837,395 | S | 1/2019 | Gan |
| D838,378 | S | 1/2019 | Cao |
| D840,032 | S | 2/2019 | Clifford et al. |
| D840,547 | S | 2/2019 | Harle et al. |
| 10,201,470 | B2 | 2/2019 | Griner |
| D842,491 | S | 3/2019 | Fleming et al. |
| D843,002 | S | 3/2019 | Yarborough et al. |
| D843,656 | S | 3/2019 | Zhang et al. |
| D844,896 | S | 4/2019 | Levi et al. |
| D845,499 | S | 4/2019 | Wersland et al. |
| D847,362 | S | 4/2019 | Tang |
| D847,364 | S | 4/2019 | Lee et al. |
| 10,245,033 | B2 | 4/2019 | Overmyer et al. |
| D847,990 | S | 5/2019 | Kimball |
| D848,089 | S | 5/2019 | Cunniff |
| D849,260 | S | 5/2019 | Wersland et al. |
| D850,640 | S | 6/2019 | Wersland et al. |
| 10,314,762 | B1 | 6/2019 | Marton et al. |
| 10,357,425 | B2 | 7/2019 | Wersland et al. |
| D855,822 | S | 8/2019 | Marton et al. |
| D865,192 | S | 10/2019 | Nazarian |
| 10,456,325 | B2 | 10/2019 | Fan |
| 10,470,970 | B2 | 11/2019 | Nazarian et al. |
| D869,928 | S | 12/2019 | Hsiao |
| 10,492,984 | B2 | 12/2019 | Marton et al. |
| 10,561,574 | B1 | 2/2020 | Marton et al. |
| D879,290 | S | 3/2020 | Harman et al. |
| 10,617,588 | B2 | 4/2020 | Wersland et al. |
| D890,353 | S | 7/2020 | Nazarian |
| D890,942 | S | 7/2020 | Wersland et al. |
| D890,943 | S | 7/2020 | Wersland et al. |
| 10,702,448 | B2 | 7/2020 | Wersland et al. |
| 10,743,650 | B2 | 8/2020 | Katano et al. |
| D896,393 | S | 9/2020 | Marton et al. |
| 10,774,860 | B2 | 9/2020 | Wersland et al. |
| D903,140 | S | 11/2020 | Andrejs |
| 10,847,984 | B2 | 11/2020 | Solana et al. |
| 10,857,064 | B2 | 12/2020 | Wersland et al. |
| D907,792 | S | 1/2021 | Marton et al. |
| D908,235 | S | 1/2021 | Marton et al. |
| 10,888,492 | B2 | 1/2021 | Marton et al. |
| D910,870 | S | 2/2021 | Marton et al. |
| 10,905,627 | B2 | 2/2021 | Marton et al. |
| 10,912,708 | B2 | 2/2021 | Marton et al. |
| D918,404 | S | 5/2021 | Wersland et al. |
| 10,993,874 | B1 | 5/2021 | Marton et al. |
| D928,334 | S | 8/2021 | Chou |
| D932,036 | S | 9/2021 | Nazarian |
| 11,166,863 | B2 | 11/2021 | Wersland et al. |
| D946,166 | S | 3/2022 | Li |
| D949,365 | S | 4/2022 | Li |
| D949,416 | S | 4/2022 | Khubani et al. |
| D949,417 | S | 4/2022 | Khubani et al. |
| D949,418 | S | 4/2022 | Khubani et al. |
| D952,878 | S | 5/2022 | Lin |
| D970,743 | S | 11/2022 | Brailey |
| 2002/0058892 | A1 | 5/2002 | Young |
| 2002/0161315 | A1 | 10/2002 | Harris et al. |
| 2002/0177795 | A1 | 11/2002 | Frye |

## US 12,133,826 B1
Page 4

(56)                  **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2002/0188233 | A1 | 12/2002 | Denyes |
| 2003/0009116 | A1 | 1/2003 | Lueftgen et al. |
| 2003/0014079 | A1 | 1/2003 | Tucek |
| 2003/0028134 | A1 | 2/2003 | Lev et al. |
| 2003/0060741 | A1 | 3/2003 | Park |
| 2003/0114781 | A1 | 6/2003 | Beaty et al. |
| 2003/0130602 | A1 | 7/2003 | Chang |
| 2003/0144615 | A1 | 7/2003 | Lin |
| 2003/0195438 | A1 | 10/2003 | Petillo |
| 2003/0195443 | A1 | 10/2003 | Miller |
| 2003/0218045 | A1 | 11/2003 | Shkolnikov |
| 2004/0010268 | A1 | 1/2004 | Gabehart |
| 2004/0144553 | A1 | 7/2004 | Ashbaugh |
| 2004/0254507 | A1 | 12/2004 | Off |
| 2005/0015030 | A1 | 1/2005 | Bousfield et al. |
| 2005/0075591 | A1 | 4/2005 | Hafemann |
| 2005/0096571 | A1 | 5/2005 | Miki |
| 2005/0096682 | A1 | 5/2005 | Daffer |
| 2005/0113870 | A1 | 5/2005 | Miller |
| 2005/0131461 | A1 | 6/2005 | Tucek et al. |
| 2005/0192519 | A1 | 9/2005 | Crunick |
| 2005/0203448 | A1 | 9/2005 | Harris et al. |
| 2006/0025710 | A1 | 2/2006 | Schulz et al. |
| 2006/0058714 | A1 | 3/2006 | Rhoades |
| 2006/0074360 | A1 | 4/2006 | Yu |
| 2006/0116614 | A1 | 6/2006 | Jones et al. |
| 2006/0178040 | A1 | 8/2006 | Kurosawa |
| 2006/0178715 | A1 | 8/2006 | Ahn et al. |
| 2006/0211961 | A1 | 9/2006 | Meyer et al. |
| 2006/0293711 | A1 | 12/2006 | Keller et al. |
| 2007/0144310 | A1 | 6/2007 | Pozgay et al. |
| 2007/0150004 | A1 | 6/2007 | Colloca et al. |
| 2007/0154783 | A1 | 7/2007 | Jeon |
| 2007/0179414 | A1 | 8/2007 | Imboden et al. |
| 2007/0257638 | A1 | 11/2007 | Amend et al. |
| 2008/0196553 | A1 | 8/2008 | Hoffmann et al. |
| 2008/0214968 | A1 | 9/2008 | Milne et al. |
| 2008/0234611 | A1 | 9/2008 | Sakai et al. |
| 2008/0243039 | A1 | 10/2008 | Rhoades |
| 2008/0262397 | A1 | 10/2008 | Habatjou |
| 2008/0262399 | A1 | 10/2008 | Kovelman et al. |
| 2008/0275371 | A1 | 11/2008 | Hoffman |
| 2008/0306417 | A1 | 12/2008 | Imboden et al. |
| 2009/0000039 | A1 | 1/2009 | St. John et al. |
| 2009/0005812 | A1 | 1/2009 | Fuhr |
| 2009/0182249 | A1 | 7/2009 | Tsai et al. |
| 2009/0270915 | A1 | 10/2009 | Tsai et al. |
| 2009/0286145 | A1 | 11/2009 | Wan et al. |
| 2009/0306577 | A1 | 12/2009 | Akridge et al. |
| 2010/0116517 | A1 | 5/2010 | Katzenberger et al. |
| 2010/0145242 | A1 | 6/2010 | Tsai |
| 2010/0160841 | A1 | 6/2010 | Wu |
| 2010/0164434 | A1 | 7/2010 | Cacioppo et al. |
| 2010/0185127 | A1 | 7/2010 | Nilsson et al. |
| 2010/0228168 | A1 | 9/2010 | Xu et al. |
| 2010/0252294 | A1 | 10/2010 | Kondo et al. |
| 2010/0274162 | A1 | 10/2010 | Evans |
| 2010/0331745 | A1 | 12/2010 | Yao |
| 2011/0017742 | A1 | 1/2011 | Sausen et al. |
| 2011/0087141 | A1 | 4/2011 | Wagy et al. |
| 2011/0106067 | A1 | 5/2011 | Geva et al. |
| 2011/0169481 | A1 | 7/2011 | Nguyen et al. |
| 2012/0038483 | A1 | 2/2012 | Du et al. |
| 2012/0120573 | A1 | 5/2012 | Bentley |
| 2012/0197357 | A1 | 8/2012 | Dewey et al. |
| 2012/0215141 | A1 | 8/2012 | Peddicord |
| 2012/0253245 | A1 | 10/2012 | Stanbridge |
| 2012/0259255 | A1 | 10/2012 | Tomlinson et al. |
| 2012/0281392 | A1 | 11/2012 | Workman et al. |
| 2012/0296244 | A1 | 11/2012 | Ceoldo et al. |
| 2013/0006040 | A1 | 1/2013 | Lee |
| 2013/0030506 | A1 | 1/2013 | Bartolone et al. |
| 2013/0076271 | A1 | 3/2013 | Suda et al. |
| 2013/0102937 | A1 | 4/2013 | Ehrenreich et al. |
| 2013/0112451 | A1 | 5/2013 | Kondo et al. |
| 2013/0138023 | A1 | 5/2013 | Lerro |
| 2013/0261516 | A1 | 10/2013 | Cilea et al. |
| 2013/0281897 | A1 | 10/2013 | Hoffmann et al. |
| 2013/0289457 | A1 | 10/2013 | Young et al. |
| 2013/0294019 | A1 | 11/2013 | LaSota et al. |
| 2014/0014384 | A1 | 1/2014 | Horie et al. |
| 2014/0031866 | A1 | 1/2014 | Fuhr et al. |
| 2014/0094724 | A1 | 4/2014 | Freeman |
| 2014/0159507 | A1 | 6/2014 | Johnson et al. |
| 2014/0221887 | A1 | 8/2014 | Wu |
| 2014/0288473 | A1 | 9/2014 | Matsushita |
| 2015/0005682 | A1 | 1/2015 | Danby et al. |
| 2015/0107383 | A1 | 4/2015 | Duesselberg et al. |
| 2015/0119771 | A1 | 4/2015 | Roberts |
| 2015/0148592 | A1 | 5/2015 | Kanbar et al. |
| 2015/0182415 | A1 | 7/2015 | Olkowski et al. |
| 2015/0366746 | A1 | 12/2015 | Ashby |
| 2016/0151238 | A1 | 6/2016 | Crunick et al. |
| 2016/0256348 | A1 | 9/2016 | Giraud et al. |
| 2016/0271009 | A1 | 9/2016 | Giraud et al. |
| 2016/0278436 | A1 | 9/2016 | Verleur et al. |
| 2016/0354277 | A1 | 12/2016 | Fima |
| 2016/0367425 | A1 | 12/2016 | Wersland |
| 2017/0012257 | A1 | 1/2017 | Wackwitz et al. |
| 2017/0027798 | A1 | 2/2017 | Wersland |
| 2017/0028160 | A1 | 2/2017 | Oliver |
| 2017/0087379 | A1 | 3/2017 | Sedic |
| 2017/0304145 | A1 | 10/2017 | Pepe |
| 2017/0333280 | A1 | 11/2017 | Black |
| 2018/0008512 | A1 | 1/2018 | Goldstein |
| 2018/0154141 | A1 | 6/2018 | Ahn |
| 2018/0168913 | A1 | 6/2018 | Sedic |
| 2018/0200141 | A1 | 7/2018 | Wersland et al. |
| 2018/0263845 | A1 | 9/2018 | Wersland et al. |
| 2019/0015294 | A1 | 1/2019 | Nazarian et al. |
| 2019/0091096 | A1 | 3/2019 | Patel |
| 2019/0125972 | A1 | 5/2019 | Srinivasan et al. |
| 2019/0175434 | A1 | 6/2019 | Zhang |
| 2019/0198828 | A1 | 6/2019 | Zanon et al. |
| 2019/0209424 | A1 | 7/2019 | Wersland et al. |
| 2019/0232403 | A1 | 8/2019 | Candelaria |
| 2019/0254921 | A1 | 8/2019 | Marton et al. |
| 2019/0254922 | A1 | 8/2019 | Marton et al. |
| 2019/0350793 | A1 | 11/2019 | Wersland et al. |
| 2020/0069510 | A1 | 3/2020 | Wersland et al. |
| 2020/0093945 | A1 | 3/2020 | Jeong |
| 2020/0128935 | A1 | 4/2020 | Turner |
| 2020/0222263 | A1 | 7/2020 | Wersland et al. |
| 2020/0261306 | A1 | 8/2020 | Pepe |
| 2020/0261307 | A1 | 8/2020 | Wersland et al. |
| 2020/0261310 | A1 | 8/2020 | Wersland et al. |
| 2020/0274162 | A1 | 8/2020 | Galceran Mestres et al. |
| 2020/0276079 | A1 | 9/2020 | Cheng |
| 2020/0289365 | A1 | 9/2020 | Wersland et al. |
| 2020/0329858 | A1 | 10/2020 | Katano et al. |
| 2020/0330321 | A1 | 10/2020 | Wersland et al. |
| 2020/0352820 | A1 | 11/2020 | Nazarian et al. |
| 2020/0352821 | A1 | 11/2020 | Wersland et al. |
| 2020/0405574 | A1 | 12/2020 | Wersland et al. |
| 2021/0022955 | A1 | 1/2021 | Wersland et al. |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CA | 188553 | A | 2/1919 |
| CA | 1042745 | A | 11/1978 |
| CA | 2440783 | A1 | 3/2004 |
| CN | 2049126 | U | 12/1989 |
| CN | 2144503 | Y | 10/1993 |
| CN | 2207816 | Y | 9/1995 |
| CN | 1149446 | A | 5/1997 |
| CN | 1228299 | A | 9/1999 |
| CN | 2412567 | Y | 1/2001 |
| CN | 2540948 | Y | 3/2003 |
| CN | 2694966 | Y | 4/2005 |
| CN | 201478387 | U | 5/2010 |
| CN | 101801326 | A | 8/2010 |
| CN | 202459196 | U | 10/2012 |
| CN | 202478137 | U | 10/2012 |
| CN | 202536467 | U | 11/2012 |

**US 12,133,826 B1**

Page 5

(56)                **References Cited**

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 101958410 B | 1/2013 |
| CN | 103248096 A | 8/2013 |
| CN | 203195947 U | 9/2013 |
| CN | 103398298 A | 11/2013 |
| CN | 203395603 U | 1/2014 |
| CN | 103655142 A | 3/2014 |
| CN | 204208018 U | 3/2015 |
| CN | 204246459 U | 4/2015 |
| CN | 204814773 U | 12/2015 |
| CN | 205017429 U | 2/2016 |
| CN | 205251993 U | 5/2016 |
| CN | 205268525 U | 6/2016 |
| CN | 205458346 U | 8/2016 |
| CN | 106491005 A | 3/2017 |
| CN | 206183628 U | 5/2017 |
| CN | 106806103 A | 6/2017 |
| CN | 206333979 U | 7/2017 |
| CN | 206381369 U | 8/2017 |
| CN | 206381373 U | 8/2017 |
| CN | 206381389 U | 8/2017 |
| CN | 107157741 A | 9/2017 |
| CN | 206675699 U | 11/2017 |
| CN | 304486625 | 2/2018 |
| CN | 208130157 U | 11/2018 |
| CN | 210301676 U | 4/2020 |
| CN | 210872953 U | 6/2020 |
| CN | 111759711 A | 10/2020 |
| CN | 112451345 A | 3/2021 |
| DE | 102012212256 A1 | 1/2014 |
| DE | 202013012621 U1 | 12/2017 |
| EM | 004377638-0002 | 10/2017 |
| EP | 0040053 A1 | 11/1981 |
| EP | 0158870 A1 | 10/1985 |
| EP | 0666071 A1 | 8/1995 |
| EP | 0572506 B1 | 1/1997 |
| EP | 1728494 A1 | 12/2006 |
| EP | 1620233 B1 | 2/2007 |
| EP | 2510891 B1 | 6/2016 |
| EP | 3062383 A2 | 8/2016 |
| EP | 3235484 A1 | 10/2017 |
| EP | 3320888 A1 | 5/2018 |
| EP | 3435381 A1 | 1/2019 |
| FI | 903376 A | 12/1991 |
| GB | 191209026 A | 3/1913 |
| GB | 191509508 A | 6/1916 |
| GB | 188946 A | 11/1922 |
| GB | 213117 A | 3/1924 |
| GB | 1293876 A | 10/1972 |
| JP | S54110058 A | 8/1979 |
| JP | S6389158 A | 4/1988 |
| JP | H04250161 A | 9/1992 |
| JP | H053903 A | 1/1993 |
| JP | H0751393 A | 2/1995 |
| JP | H0733329 B2 | 6/1995 |
| JP | H07153440 A | 6/1995 |
| JP | H0866448 A | 3/1996 |
| JP | H08131500 A | 5/1996 |
| JP | H0992246 A | 4/1997 |
| JP | 2781408 B2 | 7/1998 |
| JP | 2999872 B2 | 1/2000 |
| JP | 2002218780 A | 8/2002 |
| JP | 2003230613 A | 8/2003 |
| JP | 2004024523 A | 1/2004 |
| JP | 2004141568 A | 5/2004 |
| JP | 3813828 B2 | 8/2006 |
| JP | 2007044319 A | 2/2007 |
| JP | 2009291451 A | 12/2009 |
| JP | 2010075288 A | 4/2010 |
| JP | 5859905 B2 | 2/2016 |
| JP | 1683409 S | 4/2021 |
| KR | 20000043488 A | 7/2000 |
| KR | 20030008342 A | 1/2003 |
| KR | 200311328 Y1 | 5/2003 |
| KR | 20060074625 A | 7/2006 |
| KR | 200422971 Y1 | 8/2006 |
| KR | 100785097 B1 | 12/2007 |
| KR | 20090128807 A | 12/2009 |
| KR | 2010-0023508 A | 3/2010 |
| KR | 101007827 B1 | 1/2011 |
| KR | 101162978 B1 | 7/2012 |
| KR | 101315314 B1 | 10/2013 |
| KR | 101504885 B1 | 3/2015 |
| KR | 101649522 B1 | 8/2016 |
| KR | 3010427980000 | 1/2020 |
| KR | 102078829 B1 | 2/2020 |
| RU | 2053754 C1 | 2/1996 |
| RU | 2464005 C1 | 10/2012 |
| TW | M272528 U | 8/2005 |
| TW | M379178 U | 4/2010 |
| TW | M402573 U | 4/2011 |
| TW | M433702 U | 7/2012 |
| TW | M493379 U | 1/2015 |
| TW | M543692 U | 6/2017 |
| TW | D202371 S | 1/2020 |
| TW | 202017550 A | 5/2020 |
| TW | M599159 U | 8/2020 |
| WO | WO-9214435 A1 | 9/1992 |
| WO | WO-9625908 A1 | 8/1996 |
| WO | WO-03006102 A2 | 1/2003 |
| WO | WO-2008/113139 A1 | 9/2008 |
| WO | WO-2009/014727 A1 | 1/2009 |
| WO | WO-2011122812 A2 | 10/2011 |
| WO | WO-2011/159906 A2 | 12/2011 |
| WO | WO-2012/134469 A1 | 10/2012 |
| WO | WO-2012/177028 A2 | 12/2012 |
| WO | WO-2013/141359 A1 | 9/2013 |
| WO | WO-2014/038359 A1 | 3/2014 |
| WO | WO-2014118596 A1 | 8/2014 |
| WO | WO-2015038005 A2 | 3/2015 |
| WO | WO-2017/123841 A2 | 7/2017 |
| WO | WO-2017/184505 A2 | 10/2017 |
| WO | WO-2020/101725 A1 | 5/2020 |
| WO | WO-2020/227225 A1 | 11/2020 |
| WO | WO-2020/227230 A1 | 11/2020 |
| WO | WO-2020/227569 A1 | 11/2020 |

OTHER PUBLICATIONS

U.S. Appl. No. 18/466,702, Massage Device Having Variable Stroke Length, filed Sep. 13, 2023.

U.S. Appl. No. 18/515,119, Massage Device Having Variable Stroke Length, filed Nov. 20, 2023.

U.S. Appl. No. 18/515,122, Massage Device Having a Predetermined Stroke Length, filed Nov. 20, 2023.

U.S. Appl. No. 18/760,568, Massage Device With a Releasable Connection for a Massaging Head, filed Jul. 1, 2024.

U.S. Appl. No. 18/515,126, Massage Device With a Releasable Connection for a Massaging Head, filed Nov. 20, 2023.

U.S. Appl. No. 18/760,576, Massage Device With a Releasable Connection for a Massaging Head, filed Jul. 1, 2024.

U.S. Appl. No. 18/760,773, Massage Device With a Releasable Connection for a Massaging Head, filed Jul. 1, 2024.

U.S. Appl. No. 18/760,994, Massage Device With a Releasable Connection for a Massaging Head, filed Jul. 1, 2024.

U.S. Appl. No. 17/972,421, Published as: 2023/0042943, Percussive Massage Device With Selectable Stroke Length, filed Oct. 24, 2022.

U.S. Appl. No. 17/136,218, Published as: US2021/0361524, Battery-Powered Percussive Massage Device, filed Dec. 29, 2020.

U.S. Appl. No. 18/342,158, Percussive Massage Device With Self-Lubricating Cylinder, filed Jun. 27, 2023.

U.S. Appl. No. 18/452,274, Motor and Piston Assembly for Percussive Device, filed Aug. 18, 2023.

U.S. Appl. No. 17/402,201, Published as: Us2023/0048861, Combination Applicator and Adaptor for Percussive Massage Device, filed Aug. 13, 2021.

Amazon, "Theragun G3PRO Percussive Therapy Device", (Feb. 13, 2019)https://www.amazon.com/G3PRO-Percussive-Professional-Stimulator-Performance/dp/B07MJ2MCT3, 13 pages.

Campbell, D., "Jolt Therapy Tool," https://www.youtube.com/watch?v =- 1nI.jD-xRgl, Jul. 28, 2017, 3 pages.

## US 12,133,826 B1

Page 6

(56)          **References Cited**

OTHER PUBLICATIONS

Cavity—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/US/dictionary/english/cavity; retrieved Sep. 23, 2020 (9 pages).

Centech 4 in 1 Portable Power Pack Owner's Manual & Safety Instructions, 2014, 12 pages.

Christiana, A., "Porter-Cable PCL212ICC-2 12V Compact Lithium Two Tool Kit," Dec. 5, 2014, 5 pages.

Curriculum Vitae of Philip J. O'Keefe, PE (10 pages).

Declaration of Philip O'Keefe, P.E., in Support of Petition or Post-Grant Review dated Sep. 30, 2020 (136 pages).

DePuy Synthes Power Tools, "Battery Power Line II, User's Manual," for Battery-driven power tool system for orthopedics and traumatology, Dec. 2012, 83 pages.

DIY Jigsaw "Drill" Massager—Percussion Massager, Feb. 9, 2018, 19 pages.

http://web.archive.org/web/20100418041422/http://www.instructables.com:80/id/Jigsaw-Massager/ (Year: 2010), 6 pages.

HyperIce PGR (Final Filing Draft); *Shenzhen Shufang Innovation Technology Co., Ltd.; Nenz Electric Technology (Dongguan) Co., Ltd.; Shenzhen Xinde Technology Co., Ltd.; Performance Health Systems, LLC; Yongkang Aijiu Industrial & Trade Co., Ltd.* (Petitioner) v. *Hyper Ice, Inc.* (Patent Owner) Petition for Post Grant Review U.S. Pat. No. 10,561,574 dated Sep. 30, 2020 (119 pages—uploaded in two parts p. 1-59 and p. 60-119).

Inner—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/inner; retrieved Aug. 20, 2020 (2 pages).

International Preliminary Report on Patentability and Written Opinion of International Application No. PCT/US2021/057033 dated May 11, 2023, 9 pages.

International Preliminary Report on Patentability of International Application No. PCT/US2021/041073 dated Jan. 10, 2023, 10 pages.

International Preliminary Report on Patentability of corresponding International application PCT/US2018/053352, dated Aug. 27, 2020, 16 pages.

International Search Report and Written Opinion of PCT application No. PCT/US2021/057717, dated Feb. 23, 2022, 7 pages.

International Search Report and Written Opinion of PCT/US2019/013769 dated Aug. 9, 2019, 13 pages.

International Search Report and Written Opinion of PCT/US2021/057033 dated Feb. 16, 2022, 14 pages.

Knopp, B., "How to Change Jolt Attachments, " https://www.youtube.com/watch?v=pl-vHxRtXUQ, Apr. 5, 2017, 6 pages.

Longitudinal—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english longitudinal; retrieved Sep. 22, 2020 (8 pages).

Microchip MCP73833/4 Stand-Along Linear Li-Ion / Li-Polymer Charge Management Controller; 2009 Microchip Technology Inc. (32 pages).

NutriKlick Deep Tissue Massage Gun, Date Unknown.

Outer—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/outer; retrieved Sep. 22, 2020 (8 pages).

Perfomax 8 Volt Li-Ion Cordless Driver Owner's Manual, www.manualslib.com, Jul. 27, 2012, 19 pages.

Perimeter—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/perimeter; retrieved Aug. 20, 2020 (1 page).

Practical Electronics for Inventors by Paul Scherz, 2000; (3 pages: cover, copyright page and p. 200).

Rachel [family name unknown], "Jigsaw Massager," Aug. 28, 2007, 8 pages. Information available online from http://www.instructables.com/id/jigsaw-massager/.

Office Action for U.S. Appl. No. 16/107,587, mailed Dec. 26, 2018, 36 pages.

Synthes Battery Power Line, Jun. 2009, 6 pages.

Theragun Owners Manual G2PRO, 16 pages.

TIMTAM Power Massage 1.5, Aug. 7, 2020, 4 pages.

TOPiando Multifunctional Massage Gun, 19 pages, date unknown.

Within—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/within; retrieved Aug. 20, 2020 (3 pages).

Feb. 27, 2019 Office Action for U.S. Appl. No. 16/201,542.

Yu-Chung, C., "Electrolux Power Drill," www.design-inspiration.net/inspiration/yu-chung-chang-electrolux-power-drill/, Aug. 20, 2017, 4 pages.



FIG. 1

U.S. Patent

Nov. 5, 2024

Sheet 2 of 7

US 12,133,826 B1



**FIG. 2**



FIG. 3



FIG. 4



FIG. 5A

FIG. 5B

FIG. 6

FIG. 6A

FIG. 6B



**FIG. 7**

U.S. Patent

Nov. 5, 2024

Sheet 7 of 7

US 12,133,826 B1



FIG. 8

US 12,133,826 B1

1

## MASSAGE DEVICE WITH A RELEASABLE CONNECTION FOR A MASSAGING HEAD

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 18/466,702 filed on Sep. 13, 2023, which is a continuation of U.S. patent application Ser. No. 17/681,367 filed on Feb. 25, 2022, which is a continuation of U.S. patent application Ser. No. 15/892,665 filed on Feb. 9, 2018, and entitled "MASSAGE DEVICE HAVING VARIABLE STROKE LENGTH", (now U.S. Pat. No. 11,285,075 issued on Mar. 29, 2022), which is a continuation of U.S. patent application Ser. No. 14/317,573 filed on Jun. 27, 2014, and entitled "MASSAGING DEVICE HAVING A HEAT SINK" (now U.S. Pat. No. 9,889,066 issued on Feb. 13, 2018), which claims priority to and the benefits of U.S. Provisional Patent Application No. 61/841,693 filed on Jul. 1, 2013, and entitled "MASSAGING DEVICE", the entireties of which are incorporated herein by reference.

### BACKGROUND

This invention relates generally to medical devices, and more particularly, to a deep muscle-stimulating device used to increase muscle metabolism, increase the lactic acid cycle and relieve pain.

Vibrating massaging devices are available on the market today; however, those devices suffer from many deficiencies. Many of the prior art massaging devices are bulky, get very hot, are noisy and/or are difficult to use for extended periods of time.

### SUMMARY

Exemplary embodiments of massaging devices are disclosed herein. One exemplary embodiment includes a piston having a longitudinal axis and a massaging head connected to the piston. A motor is located on a first side of the longitudinal axis and a handle is located on a second side of the longitudinal axis. A drive mechanism for moving the piston and massage head is also included.

Another exemplary embodiment of a massaging device includes a handle, a piston, a massaging head attached to the piston, a motor, a drive mechanism for converting rotary motion of the motor to linear motion to drive the piston back and forth in a reciprocating motion, a processor, memory, a data connection in circuit communication with the processor and logic for transmitting data between the massaging device and a remote device.

Still another exemplary embodiment includes a massaging device that has a handle, a motor, a drive mechanism for converting rotary motion of the motor to reciprocating motion, a piston movable in a linear reciprocating motion connected to the drive mechanism and a massage head attached to the piston. The exemplary embodiment also includes a heat sink in thermal communication with the motor and drive mechanism, and a housing having two cavities. The first cavity at least partially surrounds the motor and the second cavity at least partially surrounds the heat sink. The cavities are separated from one another and the second cavity includes one or more openings for allowing air to flow over the heat sink to dissipate heat from the massager.

Another exemplary massaging device includes a housing, a handle extending outward from the housing and a piston

2

having a longitudinal axis extending substantially perpendicular to the handle. A massaging head is connected to the piston. In addition, the massaging device includes a motor, a drive mechanism for moving the piston and a control panel. The control panel is located on the housing above the handle.

In yet another exemplary embodiment, a massaging device includes a handle, a piston, a quick-connection mechanism and one or more massaging heads releasably connectable to the piston by the quick-connection mechanism. The massaging device further includes a motor and a drive mechanism for moving the piston.

Another exemplary massaging device includes a handle, a piston, a massaging head connected to the piston, a motor and a drive mechanism for moving the piston. The drive mechanism includes a crank bearing that has one or more spring bars.

Still yet, another exemplary massaging device includes a handle, a piston a massaging head connected to the piston, a drive mechanism for moving the piston in a back and forth motion and a lost motion mechanism located between the massaging head and the drive mechanism.

### BRIEF DESCRIPTION OF THE DRAWINGS

These and other features and advantages of the present invention will become better understood with regard to the following description and accompanying drawings in which:

FIG. **1** illustrates a perspective view of an exemplary embodiment of a massaging device;

FIG. **2** illustrates a first cross-section of the exemplary massaging device of FIG. **1**;

FIG. **3** illustrates a second cross-section of the exemplary massaging device of FIG. **1**;

FIG. **4** illustrates an exploded perspective view of an exemplary drive mechanism of the massaging device;

FIGS. **5**A and **5**B show enlarged side views of a crank bearing having spring bars for use in the exemplary drive mechanism of FIG. **4**;

FIGS. **6**, **6**A and **6**B illustrate an exemplary quick-disconnect mechanism for connecting one or more massaging heads to a massaging device;

FIG. **7** illustrates a schematic view of an exemplary lost motion control mechanism for varying the stroke of the piston driving a massaging head; and

FIG. **8** illustrates an exemplary embodiment of a simplified block circuit diagram for a massaging device.

### DETAILED DESCRIPTION

The Detailed Description merely describes exemplary embodiments of the invention and is not intended to limit the scope of the claims in any way. Indeed, the invention is broader than and unlimited by the exemplary embodiments, and unless specifically indicated otherwise, the terms used in the claims have their full ordinary meaning.

"Circuit communication" as used herein indicates a communicative relationship between devices. Direct electrical, electromagnetic and optical connections and indirect electrical, electromagnetic and optical connections are examples of circuit communication. Two devices are in circuit communication if a signal from one is received by the other, regardless of whether the signal is modified by some other device. For example, two devices separated by one or more of the following—amplifiers, filters, transformers, optoisolators, digital or analog buffers, analog integrators, other electronic circuitry, fiber optic transceivers or satellites—are

US 12,133,826 B1

3

in circuit communication if a signal from one is communicated to the other, even though the signal is modified by the intermediate device(s). As another example, an electromagnetic sensor is in circuit communication with a signal if it receives electromagnetic radiation from the signal. As a final example, two devices not directly connected to each other, but both capable of interfacing with a third device, such as, for example, a processor, are in circuit communication.

Also, as used herein, voltages and values representing digitized voltages are considered to be equivalent for the purposes of this application, and thus the term "voltage" as used herein refers to either a signal, or a value in a processor representing a signal, or a value in a processor determined from a value representing a signal.

"Signal," as used herein includes, but is not limited to one or more electrical signals, analog or digital signals, one or more computer instructions, a bit or bit stream, or the like.

"Logic," synonymous with "circuit" as used herein includes, but is not limited to hardware, firmware, software and/or combinations of each to perform a function(s) or an action(s). For example, based on a desired application or needs, logic may include a software-controlled processor, microprocessor or microcontroller, discrete logic, such as an application specific integrated circuit (ASIC) or other programmed logic device. Logic may also be fully embodied as software. The circuits identified and described herein may have many different configurations to perform the desired functions.

Any values identified in the detailed description are exemplary, and they are determined as needed for a particular massaging device. Accordingly, the inventive concepts disclosed and claimed herein are not limited to particular values or ranges of values used to describe the embodiments disclosed herein.

FIG. 1 is a perspective view of an exemplary embodiment of a hand-held massaging device 100. The exemplary massaging device 100 includes a main housing 102 that houses a motor and a drive unit and an upper housing 104 that includes a heat sink and a fan. In addition, massaging device 100 includes a first handle 106, and a second optional handle 108. Handle 106 has a longitudinal axis that extends away from the housing 102. The massaging device 100 also includes a massaging head 130. As discussed in more detail below, in some embodiments massaging head 130 includes a quick-release connection.

Massaging device 100 includes a control panel 124. In one embodiment, control panel 124 comprises a first momentary pushbutton 126 and a second momentary pushbutton 128. First and second pushbuttons 126, 128 may serve multiple purposes. In one embodiment, pushing the first pushbutton 126 once moves the massaging device 100 to a first preset speed. Pushing the first pushbutton 126 a second time moves the massaging device 100 to a second preset speed.

Accordingly, multiple preset speeds may be selected by pushing a single pushbutton. In addition, pushing pushbutton 126 and holding it down may increase the speed of the massaging head until the user releases the pushbutton 126.

In addition, if the massaging device 100 is turned off, pushing second pushbutton 128 once and holding it in for a period of time turns on the massaging device 100. Pushing the second pushbutton 128 in and holding it in for a period of time, such as, for example one second, causes massaging device 100 to turn off. While massaging device 100 is turned on, pushing and releasing second pushbutton 128 decreases the speed of the massaging device 100 to the next lowest preset speed. Pushing and releasing pushbutton 128 again

4

further reduces the speed of the massaging device 100. In some embodiments, the operating speed of the massaging device is generally between about 600 and 3600 strokes per minute.

The control panel 124 is located above handle 106 on upper housing 104. Control panel 124 is located off of the handle 106, which prevents accidental contact between a user's hand and the control panel 124 and allows a user to move her hand to any position on the handle 106 during operation. Preferably, control panel 124 is located so that it is reachable by a user's thumb without the user having to remove her hand from the handle 106. In addition, massaging device 100 includes a power cord 132 for providing power to the massaging device 100.

Although the exemplary control panel 124 illustrates two pushbuttons 126, 128, other controls may be used, such as dials and switches. In addition, visual or audible signals may be generated and displayed on control panel 124. To that extent, control panel 124 may include a visual display (not shown), an audible device (not shown) or the like, such as, for example a speaker, or the like. If a visual or audible device is used, the visual or audible device may be located proximate the pushbuttons or other controls, or may be located apart from such controls.

Upper housing 104 includes an air intake aperture covered by intake grate 120 and one or more air outlet apertures covered by outtake grate(s) 122. As described in more detail below, the heat-generating internal components of massaging device 100 are cooled by air passing through upper housing portion 104.

FIGS. 2 and 3 are cross-sections of massaging device 100. Located within handle 106 is control circuitry 260. Control circuitry 260 is in circuit communication with power cord 132, control panel 124, fan 222 and motor 210.

Motor 210 is located in housing 102 opposite handle 106. Motor 210 is a variable speed DC motor; however, motor 210 may be a constant speed motor, an AC motor or the like. In one embodiment, motor 210 has an operating speed of between about 600 and 3600 revolutions per minute (RPMs).

Motor 210 includes a shaft 211 that extends into a flywheel 212. Flywheel 212 includes a cylindrical projecting member or crank pin 213 positioned offset from the centerline 400 (FIG. 4) of the flywheel 212. Crank pin 213 is inserted in an aperture 404 (FIG. 4) of a crank bearing 214. Crank bearing 214 is inserted into a pocket 232 of a piston 230. The piston also has an elongated cutout 402 to receive part of the flywheel 212 for compactness while permitting piston reciprocation. Crank bearing 214 is cuboid in the exemplary embodiment, however, in some exemplary embodiments, crank bearing 214 may cylindrical.

FIG. 4 is an exploded perspective view of piston 230, flywheel 212 and crank bearing 214. Piston 230 may be made of any suitable material, and in some embodiments, piston 230 is made of aluminum. As illustrated in the drawings, in some embodiments, motor 210 is located on one side of the longitudinal axis of piston 230 and handle 106 is located on a second side of the longitudinal axis. Piston 230 includes a pocket 232 (or transverse slot) having a first wall 232A and a second wall 232B. In some embodiments, piston 230 is hollow on either side of pocket 232 to reduce weight.

Flywheel 212 includes a cylindrical projecting member 213. Crank pin 213 is off set from the centerline 400 of flywheel 212. Accordingly, as flywheel 212 rotates, crank pin 213 rotates in a circular path around the centerline 400 of the flywheel 212. Rotation of crank pin 213 causes crank

US 12,133,826 B1

5

bearing **214** to travel in a circular motion within piston pocket **232** causing reciprocal motion of piston **230**.

Piston **230** is restrained by two spaced apart bearings **310**, **311** (FIG. **3**). Bearing **310** is located on a first side of flywheel **212** and bearing **311** is located on a second side of flywheel **212**. Accordingly, piston **230** may only move in a back-and-forth motion along its longitudinal axis. The arrangement of the bearings **310**, **311** on both ends of the piston **230** provides for a very sturdy and robust drive mechanism. Because piston **230** is constrained to a linear back-and-forth motion, as crank bearing **214** rotates in a circular motion, it acts against side walls **232**A and **232**B of pocket **232**. This mechanism for converting rotary to linear motion is known as a "Scotch yoke."

In order to correctly assemble the components of a Scotch yoke drive, the pocket **232** (or walls of transverse slot) must be milled larger than the outside dimensions of the crank bearing **214**. The gap between the inside of pocket **232** and the outside of crank bearing **214** is typically 0.1 mm inches. Motor **210** rotates at between about 600 and 3600 RPMs and each time the crank bearing **214** switches from moving, for example, toward side wall **232**A of pocket **232** to moving toward the other side wall **232**B, the bearing block **214** travels the small gap and smacks or strikes the side wall, e.g., side **232**B, which causes a significant amount of noise and wear.

In one exemplary embodiment, crank bearing **214** is made with one spring bar **412**. FIG. **5**A is an enlarged elevation view of side **420** of crank bearing **214** and FIG. **5**B is an enlarged plan view showing top **422** of crank bearing **214**. The spring bars **412** are created by milling the outside of the spring block **214** proud by 0.4 mm in the area of the desired spring bar.

As illustrated in FIG. **5**A, the surface of spring bar **412** bows outward. The size of the bow is set to increase the width of the crank bearing **214** to be slightly larger (0.4 mm) than the width of the pocket **232**. In some embodiments, slots **502** and **504** are milled into the surfaces of side **420** and top **422** below the spring bar **412** to allow spring bar **412** to deflect inwards. In some embodiments, slots **502** and **504** intersect thereby leaving spring bar **412** supported only on each end.

Thus, when crank bearing **214** is inserted into pocket **232**, the spring bar **412** contacts the corresponding surface of the pocket **232** and deflects inward which causes crank bearing **214** to fit snuggly in pocket **232**. Accordingly, as crank bearing **214** changes directions from, for example, moving toward side wall **232**A to moving toward side wall **232**B, the spring bar **412** takes up the slack in the gap and prevent noise and wear that would otherwise be generated by the crank bearing **214** striking the side walls **232**A, **232**B of the pocket **232**.

Crank bearing **214** may be made of any suitable material; in some embodiments, crank bearing **214** is made of plastic. Although the exemplary embodiment is shown and described as having one spring bar, exemplary embodiments may have any number of spring bars.

Massaging device **100** includes a drive housing **218**. Drive housing **218** is made of a heat conducting material, such as, for example, aluminum and has a longitudinal bore **327** passing therethrough to receive piston **230**. As shown in FIG. **3**, drive housing **218** includes a first internal cylindrical groove **308** for holding bearing **310** and a second internal cylindrical groove **309** for holding bearing **311**. Spaced bearings **310** and **311** mount and guide the piston **230** relative to the drive housing **218**. Drive housing **318** surrounds piston **230** and flywheel **212**. In some embodiments,

6

drive housing **318** is made up of multiple components, such as an upper drive housing and a lower drive housing.

In addition, motor **210** includes a motor housing **209** that bolts onto drive housing **218**. Motor housing **209** is also made of a heat-conducting material, such as, for example, aluminum. Secured to drive housing **218** is heat sink **220**. Heat sink **220** includes a plurality of fins **221**. Heat sink **220** is made of a heat conducting-material, such as, for example, aluminum.

Main housing **102** contains a first cavity **281**. Upper housing **104** contains a second cavity **282**. First cavity **281** and second cavity **282** are separated by a barrier **280**. Motor housing **209** and drive housing **218** are located in the first cavity **281**. Heat sink **220** is located in second cavity **282**. The exemplary embodiment describes a main housing **102** and upper housing **104**. These may be portions made up of a single structure or multiple structures secured to each other.

Second cavity **282** includes an air inlet aperture **340** which is covered by grate **120** and one or more air outlet apertures **342** covered by one or more grates **122**. A fan **222** is located in second cavity **282**. When the fan **222** is activated, air enters second cavity **282** through air inlet aperture **340** and passes over cooling fins **221** of heat sink **220**, and the air then passes out of second cavity **282** through the one or more outlets **342**. The fan may be activated by a switch (not shown) on control panel **124**, activated automatically when the massaging device **100** is turned on, or may be activated by a thermostat (not shown). Thus, the cooling system for massaging device **100** is located in second cavity **282** and is isolated from the other components in the massaging device **100**.

In typical massaging devices, cooling air is blown over the motor. Because the massaging devices operate for long periods of time in an atmosphere that is subject to a significant amount of dust and lint because the massaging device is often used on a person wearing clothes, a towel or a robe. Over time, the dust and lint may build up on the motor and cause the prior art massaging devices to overheat. Locating the cooling system in a cavity **282** that is isolated from the rest of the internal components minimizes this type of failure. The air outlet grates **122** may be sized larger to allow any lint and dust to freely pass out of the cavity **282**. In addition, the surface of the heat sink **220** is smooth and thus, there will be few pockets for dust and lint to get trapped.

FIGS. **6** and **6**A illustrate an exemplary embodiment of a quick-connect system **600** for connecting a massaging head **620** to a piston **602**. When providing a deep tissue massage using a massaging device, such as, for example, massaging device **100**, it may be desirable to switch massaging heads to work on different muscles or different portions of muscles during the massage. The exemplary quick-connect system **600** allows a user to quickly switch massaging heads **620**. Moreover, the exemplary quick-connect system **600** may be used without turning off the massaging device **100**.

Quick-connect system **600** includes a piston **602** that has a hollow-end bore **608** for receiving the shaft **621** of a massaging head **620**. Located within the bore **608** of piston **602** is a cylindrical seat **604**. Cylindrical seat **604** retains a magnet **606**. Magnet **606** is illustrated with its north pole located flush with the seat and facing toward the opening in bore **608**. Massaging head **620** includes a shaft **621** having a cylindrical pocket **622** at the distal end. Located within the cylindrical pocket **622** is a magnet **624**. Magnet **624** is positioned so that its south pole is located at the distal end of shaft **621**. Accordingly, when the shaft **621** of massaging

US 12,133,826 B1

7

head **620** is slid into opening in bore **608**, the magnets **606** and **624** are attracted to one another and magnetically hold massaging head **620** firmly in place.

To remove massaging head **620**, a user need only apply a sufficient amount of force to separate the two magnets **606**, **624**. The strength of the magnets **606**, **624** are sized to prevent the massaging head **620** from separating from the piston **602** during normal use, and yet allow a user to quickly remove and replace the massaging head **620**. In some embodiments the end **626** of the massaging head **620** is rounded, pointed or tapered (not shown) to allow it to easily slip into the opening **608** even while the piston **608** is moving.

FIG. 6B illustrates another quick-connect massaging head **630**. Quick-connect massaging head **630** is substantially the same as massaging head **620** except that the head portion **639** has a different shape than head portion **629** of massaging head **620**.

In some instances, it may be desirable to adjust the throw or the stroke length of the massaging head to work on larger or smaller muscle groups, or deeper or shallower points of stress or soreness in the muscles. FIG. **7** illustrates an exemplary embodiment of a lost motion system **700**. Although lost motion system **700** is a hydraulic lost motion system, other mechanical lost motion devices may be used in accordance with embodiments of the present invention.

Lost motion system **700** is contained in housing **702**. Housing **702** may be similar to drive housing **218** described above except it may need to be larger to accommodate lost motion system **700**. Housing **702** includes a floating piston **720** located in first cylindrical bore **708**. Floating piston **720** includes a sealing member **722** for forming a seal between floating piston **720** and first cylindrical bore **708**. A cam **706** secured to housing **702** may be rotated to adjust the amount of travel that floating piston **720** may move. A passage **710** fluidically connects first cylindrical bore **708** to second cylindrical bore **704**.

A drive piston **730** is located in second cylindrical bore **704**. Drive piston **730** includes a sealing member **732** to seal between the drive piston **730** and second cylindrical bore **704**. Drive piston **730** may be driven in substantially the same way as described above with respect to piston **230**. A passage **705** fluidically connects second cylindrical bore **704** and passage **710** to third cylindrical bore **706**. Located within third cylindrical bore **706** is an output piston **740**.

Output piston **740** includes a sealing member **742**, such as, for example, an o-ring to form a seal between drive piston **730** and third cylindrical bore **706**. Hydraulic fluid **712** is located in passages **705**, **710** and portions of the first, second, and third cylindrical cavities **708**, **704** and **706** as illustrated. A massaging head (not shown) is connected to output piston **740**.

During operation, if cam **706** is set so that floating piston **720** is retained at the proximate end of first cylindrical bore **708** (as illustrated), movement of the drive piston **730** moves output piston **740** its maximum stroke length. If cam **706** is set so that floating piston **720** moves to adjacent the distal end of first cylindrical bore **708**, movement of the drive piston **730** moves output piston **740** its minimum stroke length. The cam may also be selectively rotated to intermediate positions to choose different magnitudes of floating piston movement resulting in different selected magnitudes of output piston movement.

In some embodiments, floating piston **720** is physically connected to the cam or other adjustment mechanism so that it is positioned in a predetermined position and remains

8

stationary during operation of the drive piston **730**. Thus, floating piston **720** does not float during operation of the massaging device.

In some embodiments, the lost motion system may be contained in the massaging head itself, or in an adaptor that connects between the piston and the massaging head. Thus, rather than having a cam in the housing of the massaging device, different applicator heads or adaptors having a set lost motion, or variable lost motion systems integral therein may be used. In some embodiments, such adaptors and massaging heads may be adapted with a quick-connect system similar to the ones described with respect to FIGS. 6 and 6A.

FIG. **8** illustrates a simplified exemplary electrical schematic diagram **800** of an embodiment of a massaging device. The components disclosed as being on a particular circuit board may be on multiple circuit boards or individually mounted and hardwired to one another. Circuit board **801** includes memory **804**, motor control circuitry **810** and fan control circuitry **816**, which are in circuit communication with processor **802**. Fan control circuitry **816** is in circuit communication with fan **817**.

Power circuitry **812** may be included on circuit board **801** or may be located on its own external to the massager. Power circuitry **812** includes the necessary power conditioning circuitry to provide power to both the electronics and the motors. In circuit communication with power circuitry **812** is plug **814**. Optionally two or more power circuits may be utilized. All of the connections between power circuitry **812** and the other components may not be shown in FIG. **8**; however, those skilled in the art have the required knowledge to provide power to the devices that require power. Motor control circuitry **810** is in circuit communication with drive motor **811**. Drive motor **811** is used to drive the piston and massaging head as described above.

Memory **804** is a processor readable media and includes the necessary logic to operate the massaging device. Examples of different processor readable media include Flash Memory, Read-Only Memory (ROM), Random-Access Memory (RAM), programmable read-only memory (PROM), electrically programmable read-only memory (EPROM), electrically erasable programmable read-only memory (EEPROM), magnetic disk, and optically readable mediums, and others. Still further, the processes and logic described herein can be merged into one large process flow or divided into many sub-process flows. The order in which the process flows herein have been described is not critical and can be rearranged while still accomplishing the same results. Indeed, the process flows described herein may be rearranged, consolidated and/or reorganized in their implementation as warranted or desired.

In addition, processor **802** is in circuit communication with control panel **806**. Control panel **806** includes any desired pushbuttons, dials, displays or the like. Control panel **806** provides the operator interface to operate and control the massaging device.

Processor **802** is also in circuit communication with data connection **820**. Representative data connections **820** include an Ethernet wire, Bluetooth, WiFi, optical transmitter/reader, an IR reader and the like. Combinations of two or more different data connections **820** may be used. Data connection **820** may be used to transmit data to an outside device, such as, for example, a computer or hand-held portable device. Various uses for transmitting such data are described below.

In some embodiments, processor **802** includes logic to collect and store data related to use of the massaging device.

US 12,133,826 B1

9

Exemplary types of data may include usage rates, operating times or the like. In some embodiments, different massaging heads include an RFID chip and when inserted into the massaging device, an RFID reader (not shown) identifies and stores the type of massaging head utilized. In some embodiments, a customer number may be associated with the data. This data may be used to determine lease rates of the massaging device, for calculating cost/benefit analysis, or for setting up customized massages.

In some embodiments, data may be uploaded from a computer or hand-held portable device to the massaging device. Such data may include customized massaging programs tailored for individual needs. In some embodiments, the customized massaging program may be reflective of prior massages given to a customer that were particularly well-received by the customer.

In some embodiments, the customized massaging program may indicate to the user on a display on the control panel **806** massage times, locations, type of massage head to use or the like to ensure covering the desired locations with the customized massage.

While various inventive aspects, concepts and features of the inventions may be described and illustrated herein as embodied in combination in the exemplary embodiments, these various aspects, concepts and features may be used in many alternative embodiments, either individually or in various combinations and sub-combinations thereof. Unless expressly excluded herein all such combinations and sub-combinations are intended to be within the scope of the present inventions. Still further, while various alternative embodiments as to the various aspects, concepts and features of the inventions—such as alternative materials, structures, configurations, methods, circuits, devices and components, software, hardware, control logic, alternatives as to form, fit and function, and so on—may be described herein, such descriptions are not intended to be a complete or exhaustive list of available alternative embodiments, whether presently known or later developed. Those skilled in the art may readily adopt one or more of the inventive aspects, concepts or features into additional embodiments and uses within the scope of the present inventions even if such embodiments are not expressly disclosed herein. Additionally, even though some features, concepts or aspects of the inventions may be described herein as being a preferred arrangement or method, such description is not intended to suggest that such feature is required or necessary unless expressly so stated. Still further, exemplary or representative values and ranges may be included to assist in understanding the present disclosure; however, such values and ranges are not to be construed in a limiting sense and are intended to be critical values or ranges only if so expressly stated. Moreover, while various aspects, features and concepts may be expressly identified herein as being inventive or forming part of an invention, such identification is not intended to be exclusive, but rather there may be inventive aspects, concepts and features that are fully described herein without being expressly identified as such or as part of a specific invention. Descriptions of exemplary methods or processes are not limited to inclusion of all steps as being required in all cases, nor is the order that the steps are presented to be construed as required or necessary unless expressly so stated.

10

What is claimed is:

1. A percussive massager comprising:
a housing;
a piston having a proximal end and a distal end, the distal end of the piston having a bore;
a motor operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed, and wherein the motor has an output shaft that is configured to rotate about a rotation axis;
a drive mechanism that determines a predetermined stroke length of the piston, wherein the drive mechanism comprises a flywheel operatively connected to the output shaft of the motor to rotate about a flywheel axis, the output shaft extending into the flywheel along the flywheel axis; and
a quick-connect system comprising the distal end of the piston and a first messaging head, wherein the quick-connect system allows a first massaging head to be connected or removed while the piston reciprocates the predetermined stroke length at the first speed.

2. The percussive massager of claim **1**, wherein the motor is configured to cause the piston to reciprocate at a second speed.

3. The percussive massager of claim **1**, further comprising:
a control panel positioned on an exterior of the housing.

4. The percussive massager of claim **3**, wherein the control panel is configured to display one or more visual indicators.

5. The percussive massager of claim **1**, further comprising a handle portion on the housing, wherein the handle portion is on an opposite side of the flywheel with respect to the motor.

6. The percussive massager of claim **1**, wherein the drive mechanism further comprises:
a crank pin extending from the flywheel, the crank pin being operatively connected to the piston.

7. The percussive massager of claim **6**, wherein an offset between the flywheel axis and an axis of the crank pin determines the predetermined stroke length of the piston.

8. The percussive massager of claim **6**, wherein the motor is directly connected to the flywheel, and wherein the crank pin is directly connected to the flywheel.

9. The percussive massager of claim **1**, further comprising a handle portion on the housing, wherein the motor and the handle portion are on opposite sides of a plane perpendicular to the flywheel axis that extends through the flywheel.

10. The percussive massager of claim **1**, further comprising a handle portion on the housing, wherein the motor and the handle portion are on a same side of a plane perpendicular to the flywheel axis that extends through the flywheel.

11. The percussive massager of claim **1**, wherein the motor is configured to cause the piston to reciprocate at the first speed along a longitudinal axis.

12. The percussive massager of claim **1**, wherein the bore comprises a substantially cylindrical bore.

13. The percussive massager of claim **1**, further comprising a substantially cylindrical structure within the bore.

14. The percussive massager of claim **13**, wherein the substantially cylindrical structure comprises a cylindrical seat.

15. The percussive massager of claim **13**, wherein the substantially cylindrical structure comprises a magnet.

* * * * *